UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD R. FURSTENAU, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 6143 |
| | ) | |
| v. | ) | Judge Charles R. Norgle |
| | ) | |
| CITY OF NAPERVILLE, a municipal Corporation; MICHAEL HULL, in his individual and official capacity; DAVID DIAL, in his official and individual capacity; MICHAEL CROSS; in his individual and official capacity; PETER BURCHARD, in his official and individual capacity; MARGO L. ELY, in her individual and official capacity; and JOE MATCHETT, in his individual an official capacity, | ) ) ) ) ) ) ) ) ) ) ) ) | Magistrate Judge Geraldine Soat Brown |
| Defendants. | ) | |

**DEFENDANT CITY OF NAPERVILLE'S
MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS**

Defendant, CITY OF NAPERVILLE, by and through its attorneys, Freeborn & Peters LLP, as its Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, states:

**I.**

**INTRODUCTION**

Plaintiff has brought a four-count First Amended Complaint ("Complaint") against the City of Naperville ("City"), the Chief of Police, two police officers and other City officials. Although Plaintiff claims that all of the defendants participated in a campaign to politically destroy him, the gist of his claim is that he was wrongfully arrested on January 1, 2006 by defendant, police officer Michael Hull, and prosecuted for battery without probable cause and in retaliation for exercise of First Amendment rights.

1

In Counts I, II and III, Plaintiff seeks to impose *Monell* liability on the City. The Complaint against the City, however, is replete with pleading deficiencies that warrant dismissal of those Counts. First, the Complaint does not name an express policy that purportedly caused the Plaintiff a constitutional deprivation. Second, Plaintiff's Complaint does not name a supposed widespread practice that is so permanent and well-settled that it constitutes a city custom or practice. Third, Plaintiff's complaint does not allege that any "official policy" was the "moving force" behind his purported constitutional violation. Fourth, the Plaintiff fails to identify a specific policymaker that caused his alleged constitutional injury. Indeed, the instant complaint asserts nothing more than innuendo, speculation, and conclusion as a basis for Plaintiff's *Monell* claim. Therefore, Plaintiff's §1983 claims in Counts I, II, and III must be dismissed as a matter of law. In addition, Plaintiff's First Amendment claims in Count III must be dismissed because Plaintiff cannot credibly allege that his "speech" is protected under the First Amendment. Indeed, Plaintiff affirmatively pleads that his speech was that of a public official about official duties, which is not protected under *Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006). Moreover, Plaintiff's Equal Protection claim fails because he does not identify similarly situated persons, who were allegedly treated differently. Finally, Plaintiff's erroneous attempts to assert punitive damage claims against the City are barred under federal law and the Illinois Tort Immunity Act.

## II.

## RULE 12(b)(6) STANDARD FOR DISMISSAL.

Rule 12(b)(6) permits motions to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "the complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Equal Employment Opportunity Comm'n v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). This requirement imposes two hurdles. First, the complaint

must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must **plausibly** suggest that the plaintiff has a right to relief, raising that possibility above a '**speculative level**;' if they do not, the plaintiff pleads himself out of court. *Montgomery v. City of Harvey*, No. 07-CV-4117, 2007 WL 4232729, at *1 (N.D. Ill. Nov. 28, 2007); *Killingsworth v. HSBC Bank Nevada, N.A.*, No. 06-1616, 2007 WL 3307084, at *3 (7th Cir. Nov. 9, 2007).

The United States Supreme Court states the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Although this does 'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964, (2007). Indeed, a complaint should be dismissed if the factual detail is so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).). Furthermore, a court may also take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994), citing *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

In the instant litigation, Plaintiff has failed to meet this minimal notice pleading bar. Plaintiff has neither provided fair notice of his *Monell* claim, nor does Plaintiff's bare-bones Complaint articulate a right to relief as to the City that rises above the level of rank implausible speculation. Accordingly, Counts I, II and III of his Complaint must be dismissed for failure to state a claim.

Importantly, while this Court must assume that all well-pled allegations in a complaint are true, this Court need not strain to find favorable inferences which are not apparent on the face of the complaint. *Coates v. Illinois State Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir. 1977). At the same time, this Court should also not accept as true any unsupported conclusions of fact or assertions involving mixed allegations of fact and law. *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002); *Young v. Murphy*, 90 F.3d 1225, 1233 (7th Cir. 1996).

Moreover, a plaintiff can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint. *Holman v. State of Indiana*, 211 F.3d 399, 406 (7th Cir. 2000), *cert. denied*, 531 U.S. 880 (2000); *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). For example, in *Jackson v. Marion County*, 66 F.3d 151, 153-54 97th Cir. 1995), a plaintiff pled himself out of court by alleging additional facts showing that a conclusory allegation was not true. *See also Tregenza v. Great Am. Commc'ns Co.*, 12 F. 3d 717, 718 (7th Cir. 1993), *cert. denied*, 511 U.S. 1085 (1994); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992). In the instant case, the Plaintiff has similarly pled himself out of court. Plaintiff's Complaint is replete with facts that undermine the allegations set forth in his complaint. Therefore, pursuant to 12(b)(6), Plaintiff's Complaint must be dismissed.

### III.

### PERTINENT FACTUAL AVERMENTS

Plaintiff fails to aver any facts to support his *Monell* policy claims. At the same time, he pleads himself out of his court on claims that his First Amendment rights were violated by affirmatively averring that his "speech" was that of a public employee on public issues. As soon as one cuts through twenty-five pages of Plaintiff's "man-against-the-world" averments, all that is left is a single, isolated incident where Plaintiff avers that he was wrongfully arrested and prosecuted for battery. (Complaint, Dock. No. 17 at ¶¶ 41-42, 85.) There are no real factual

4

averments that establish that this isolated incident was caused, even in part, by an express or tacit City policy; or that it was the work of a City policy maker. Indeed, the only basis for Plaintiffs' *Monell* claim is the following conclusory language:

> Defendant City of Naperville acted pursuant to an official policy, custom, or decision of an individual with final policy-making authority, and proximately caused the deprivation of Furstenau's Fourth (and First) Amendment rights.

(Complaint at ¶¶ 64, 72, 83.) Plaintiff never identifies any specific custom or the policy maker. As to the First Amendment claims, Plaintiff affirmatively establishes that his "speech" was made by him as a city councilman on public issues.

Plaintiff Richard "Dick" Furstenau is a single member of the Naperville City Council composed of a total of nine individuals. The Naperville City Council is a deliberative and collaborative legislative body that requires a majority vote to enact any municipal ordinance or resolution. (*See 65 ILCS 5/3.1-40-20.*) Plaintiff has served in his capacity as Councilman for eight and a half years. (Complaint at ¶ 12.) Plaintiff alleges, that "during the 8 ½ year tenure" of his career as Councilman, he has sought to regularly "inflame" and antagonize the City's "Police Department." Plaintiff never gives the name or rank of individual police officers, but instead speculates that he inflamed the entire department. (*Id.*) Plaintiff's Complaint further alleges an array of initiatives undertaken by the Plaintiff as a councilman expressly to "inflame" the "Police Department." (*Id.* at ¶ 12 – 27.)

In each instance of his inflammatory conduct the Plaintiff refers to himself individually and singularly (*e.g.* Furstenau "learned", "noticed", "demanded"). *Id.* Importantly, Plaintiff never alleges that his anti-police conduct represented a position taken by a majority of the City Council.

Plaintiff further alleges that his interpretation of overtime pay has annually been examined and lobbied for by the Plaintiff and rejected by the City Council on a yearly basis since May 1999. (Complaint at ¶¶ 13 – 16.) Similarly, Plaintiff alleges that he has lobbied the City

5

Council "on numerous occasions" and "objected" to what Plaintiff perceives as "double dipping." (Complaint at ¶ 17.) On each of these "numerous occasions," the City Council has rejected Plaintiff's position.[1] Moreover, Plaintiff's Complaint readily concedes that he "lost" his dispute over taser guns. (Complaint at. ¶ 19.)

As such, not only do the self-defeating averments of plaintiffs Complaint themselves strain credulity; more importantly, they fail to establishes any reasonable basis for a *Monell* claim against the City.

IV.

**ARGUMENT**

A. **Defendant City of Naperville's Motion to Dismiss Must Be Granted Because Plaintiff Fails To Allege a *Monell* Claim.**

Plaintiff's Complaint is filled with speculation and lacks any connection between Plaintiff's allegations and a City policy, custom, or practice, and/or a City policy maker. Therefore, as a matter of law, Plaintiff's Complaint must be dismissed.

Plaintiff's § 1983 claims against the City (Counts I-III) must be evaluated under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny. Section 1983 does not recognize the theory of *respondeat superior* as a basis for liability. *See, e.g., Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007), *citing Monell*, 436 U.S. at 694. Therefore, to survive the City's Rule 12(b)(6) motion, Plaintiff "must allege that an official policy or custom not only caused the purported constitutional violation, but was '**the moving force**' behind it." *Estate of Sims v. County of Bureau,* No. 01-2884, 2007 WL 3036752, at *3 (7th Cir. Oct.19, 2007). This

---

[1] It may be also relevant to note that Plaintiff's perception of double-dipping as a Naperville Police Department phenomenon is neither accurate nor compelling. Indeed, the so-called "double dipping" Plaintiff refers to is available to both Fire Department and Police Department personnel for every municipality in the State. Further, the Illinois State Constitution provides that "Membership in any pension or retirement system of the State, any unit of local government or school district, or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." 1970 Ill. Const. art. XIII, § 5. Plaintiff's efforts to bar a retired police officer from further municipal service does not comport with this constitutional provision. Moreover, Plaintiff's objection to "double-dipping" would prevent a retired officer from assuming a hirer ranking position in another police force and obtaining pension benefits for the subsequent service.

6

requirement serves to "distinguish acts of the municipality from acts of employees of the municipality, and thereby makes it clear that municipal liability is limited to actions for which the municipality is actually responsible." *Id.*

A Plaintiff may demonstrate an official policy through: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Id.; Montgomery*, 2007 WL 4232729, at *3. Plaintiff, however, fails to assert a *Monell* claim under any of these avenues. Indeed, Plaintiff's *Monell* claim itself is set forth in a singular, conclusory line repeated three times in the Complaint, but is never explained or supported by assertion of fact. That conclusory line reads as follows:

> . . . Defendant City of Naperville acted pursuant to an official policy, custom, or decision of an individual with final policy-making authority, and proximately caused the deprivation of Furstenau's Fourth Amendment rights.

(Complaint at ¶ 64, 72, 83.) This single line is utterly devoid of a single critical detail asserting a *Monell* claim. This failure is therefore fatal to Plaintiff's *Monell* claims. Indeed, this conclusory statement reveals that Plaintiff has not alleged even minimal facts that could lead the Court to conclude the City possessed an unconstitutional policy and practice of condoning a retaliatory arrest against the Plaintiff. Therefore, Plaintiff's complaint does not state a claim under any of the avenues available to make a policy and procedure claim against a municipality.

**B.     Plaintiffs' Complaint Is Legally Insufficient And Must Be Dismissed Because It Does Not Name An Express Policy That <u>Caused Him A Constitutional Deprivation.</u>**

As the *Bell Atlantic* Court explained, a Plaintiff's complaint must actually *suggest* that the plaintiff has a right to relief, by providing allegations that "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964 (2007). Indeed, what is needed to establish a *Monell* policy claim is some allegation "that there is a true municipal

7

policy at issue, not a random event." *Phelan v. Cook County,* 463 F.3d 773, 790 (7th Cir. 2006) (quoting *Calhoun v. Ramsey,* 408 F.3d 375, 380 (7th Cir. 2005).  In the instant case, Plaintiff seeks to improperly manufacture a *Monell* Policy from a single random event.  This attempt is unconvincing, improper and, most important, it defies the *Bell Atlantic* standard, in that it never raises the claim of a right to relief above the level of rank speculation.

The Complaint does not name an express policy that caused Plaintiff a constitutional deprivation.  In *Valdez*, the Seventh Circuit recognized that complaints are properly dismissed as legally insufficient for failure to name a policy or custom concerning any constitutional violations.  *See*: *Valdez v. Printiss*, No. 1:07-cv-1223-SEB-JMS, 2007 WL 3333269 (S.D. Ind. Nov. 7, 2007); *Monell*, 436 U.S. at 690; *Wagner v. Washington County,* 493 F.3d 833, 836 (7th Cir. 2007).  This deficiency deprives the City of "'fair notice of what the ... claim is and the grounds upon which it rests.'"  *Concentra Health Servs., Inc.,* 496 F.3d at 776 (citations omitted).  Specifically, Plaintiff's complaint leaves the court, the defendants, and the public to ponder the scope, nature, and origins of the purported express policy.  Indeed, Plaintiff has failed to even characterize his unspecified policy as rooted in a purported "failure to train," or perhaps an alleged "failure to hire," "supervise," or "discipline."  Because Plaintiff has failed to identify a policy concerning his constitution violations his Complaint must be dismissed as legally insufficient pursuant to the holding in *Valdez*.

    C.    **Plaintiff's Complaint Is Legally Insufficient Because It Fails to Allege That a City Policy Was the "Moving Force" Behind His Constitutional Deprivation.**

Plaintiff's Complaint is also legally insufficient because it does not allege that any "official policies" were the "moving force" behind his supposed constitutional violation. *See Killingsworth,* 2007 WL 3307084, at *3; *Concentra Health Servs.,* 496 F.3d at 776; *Estate of Sims,* 2007 WL 3036752, at *3-*4.  When determining whether Plaintiff has satisfied his pleading burden, the Court looks to see if the complaint alleges a direct causal link between a

policy or custom of the defendant and the alleged constitutional violations. The court will dismisses a Complaint for failure to establish a causal link. *Montgomery*, 2007 WL 4232729, *4.

### D. Plaintiff's Complaint Is Legally Insufficient Because It Fails to Allege That A City Custom Caused His Constitutional Deprivation.

A §1983 complaint that does not allege a direct causal link between a policy or custom of the City and the alleged constitutional violations will be dismissed. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). In the instant case the Plaintiff has failed not only to allege a causal link between his injury and a City custom, but the instant Plaintiff has failed to even name the custom. A custom is a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled that it applies with the force of law. *See Monell*, 436 U.S. at 690-691 (customs, in contrast to official policies, do not receive "formal approval through ... official decision making channels"). In accord with this definition, a custom cannot be established through a single unconstitutional act by a municipal employee. *See Jones v. City of Chicago*, 787 F.2d 200, 204 (7th Cir.1986) ( "The word 'custom' generally implies a habitual practice or a course of action that characteristically is repeated under like circumstances").[2] Plaintiffs' only allegation of a municipal custom comes from his cryptic conclusions contained in paragraphs 64, 72, 83. These insubstantial allegations, however, are to vague to sustain a legally sufficient *Monell* claim.

Courts have defined a custom as a practice that is "persistent," "widespread," "habitual," "permanent," "well-settled" and "entrenched." *Monell*, 436 U.S. at 691; *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995); *Gray v. Dane County*, 854 F.2d 179, 183 (7th

---

[2] Indeed, the Seventh Circuit has previously ruled that several incidents do not constitute a custom. See, *Delapaz v. City of Chicago*, No. 07-C-1224, 2007 WL 3052959, *3 (N.D.Ill. Oct. 16, 2007) (The Court fails to see how four incidents involving three individuals constitutes a "widespread practice that ... is so permanent and well settled as to constitute a custom or usage with the force of law.") *See also Cornfield v. Consoli High Sch. Dist. No. 230*, 991 F.2d 1316, 1326 (7th Cir.1993) (single incident does not establish widespread practice); *Levin v. Bd. of Educ. of Chicago.*, 470 F. Supp .2d 835, 843 (N.D.Ill.2007) (dismissing § 1983 claim because "two instances of unconstitutional conduct ... 'does not suggest a widespread, enduring practice that violates constitutional rights in a systemic manner.'")

9

Cir.1988); *Jones,* 787 F.2d at 204. These terms are inconsistent with finding a custom based upon events that occurred on just one day. Next, a custom creates municipal liability because a municipality fairly may be at fault for its employees' actions that it has countenanced or approved. *See City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* ... considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation"); *Powe v. City of Chicago,* 664 F.2d 639, 649 (7th Cir.1981) ("[A] municipality may be cast in damages only for its own acts or omissions, and a municipality 'acts' by establishing or countenancing policies or practices which its employees are expected to follow in performing their duties"). When the unconstitutional acts all occur on one day, a municipality cannot be seen as having countenanced or approved the practice.

Moreover, "[o]nly where a municipality's alleged failure evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Canton,* 489 U.S. at 389. And "a single instance of allegedly unconstitutional conduct does not demonstrate a municipality's deliberate indifference to the constitutional rights of its inhabitants." *Estate of Novack ex rel. Turbin v. County of Wood,* 226 F.3d 525, 531 (7th Cir.2000). The arrest of Councilman Furstenau's, as a single instance, does not demonstrate the City's deliberate indifference. Consequently, Plaintiff has failed to demonstrate that the City had a custom that resulted in a violation of his constitutional rights.

E.  **Plaintiff's Complaint Is Legally Insufficient Because It Fails to Allege That a City Policy Maker Caused His Constitutional Deprivation.**

Unlike the practices of a municipality's lower-level employees, the acts of high-level policy makers can render a local government liable under § 1983. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 470, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("Municipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances"). Plaintiff does not allege that police command personnel had policymaking authority. Whether an official has "final policymaking authority" over a certain issue is a question answered by state or local law. *See: St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988); *Kujawski v. Bd. of Comm'rs of Bartholomew County,* 183 F.3d 734, 738 (7th Cir.1999) ("[O]ur task is to determine whether the official in question was a final policymaker for the local government 'in a particular area, or on a particular issue'", quoting *McMillian v. Monroe County,* 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997).). Generally speaking, the City Council sets municipal policy for the Naperville Police Department. *See Auriemma v. Rice,* 957 F.2d 397, 399-400 (7th Cir.1992). Plaintiff, however, has not alleged a single fact that would suggest the City Council knew of or participated in his constitutional harm. Accordingly, Plaintiff's municipal liability theory fails because he has not identified any involvement of a Naperville municipal policymaker. *See Killinger v. Johnson,* 389 F.3d 765, 772 (7th Cir. 2004).

F.  **Plaintiff Fails to Allege An Equal Protection Claim (Count II).**

In Count II of the complaint, Plaintiff alleges that defendants violated the equal protection clause of the Fourteenth Amendment. However, Plaintiff has totally failed to allege a proper claim. Even under the "class of one" theory, Plaintiff is required to allege that "the government is treating unequally those individuals who are prima facie identical in all relevant respects, and that the cause of the different treatment is a totally illegitimate animus toward the plaintiff by the defendant." *Levenstein v. Salafsky,* 414 F.3d 767, 775-76 (7th Cir. 2005).

Plaintiff only alleges that he was arrested without probable cause and, thus, treated differently from others similarly situated. (Complaint at ¶68.) Plaintiff does not identify the "similarly situated" group to which he refers. The City is not put on notice regarding the group to whom he is comparing himself. Without such operative facts, Plaintiff fails to allege the grounds of his entitlement to relief. As such, Plaintiff failed to state an equal protection claim, and thus, Count II of the Complaint must be dismissed in its entirety.

> G. **Even if the Court Declines to Dismiss the City for Failure to Plead a *Monell* Claim; in the Alternative, Plaintiff's § 1983 Claim Under the First Amendment (Count III) Should Be Dismissed Pursuant to *Garcetti*.**

In Count III, Plaintiff pleads himself out of Court by averring that his "speech," which was the alleged object of retaliation, was that of a public official concerning his official duties. Plaintiff thus alleges "speech" that is clearly not protected under the controlling case law of *Garcetti v. Ceballos*, ___ U.S. ___, 126 S. Ct. 1951 (2006).

For example, Plaintiff alleges that his arrest was "motivated by disapproval of the Plaintiff's long established history of vocal criticism of an opposition to the Naperville Police Department's base pay rates, overtime abuses, pension manipulation, and other behavior and practices." (Complaint at ¶ 62.) He alleges that the arrest was an effort to silence his political viewpoints and vocal opinions which violated his First Amendment rights. (*Id.* at ¶ 63-65.)

To make out a prima facie case of first amendment retaliation, a public employee must present evidence that: (1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and, (3) his speech was at least a motivating factor in the employer's action. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). Thus, the threshold inquiry this Court must make is whether Plaintiff's speech is "protected" speech under the First Amendment. And the "inquiry into the protected status of speech is one of law, not fact." *Spiegla v. Hull*, 481 F.3d 961, 965, (7th Cir. 2007).

12

Recently, the United States Supreme Court articulated a clear and bright-line rule regarding treatment of a public employees' speech for First Amendment purposes in *Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006). In *Garcetti*, the Court unequivocally held that "[w]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications." *Id.*, 126 S.Ct. at 1960. And the Seventh Circuit has rigorously held public employees to the *Garcetti* standard. *See, e.g., Vose v. Kliment*, No. 07-1792, 2007 WL 3120091, (7th Cir. Oct. 26, 2007) (holding no First Amendment protection for public employee's speech); *Salas v. Wisconsin Dept. of Corrections*, 493 F.3d 913 (7th Cir. 2007) (same); *Morales v. Jones*, 494 F.3d 590 (7th Cir. 2007) (same); *Sigworth v. City of Aurora*, 487 F.3d 506 (7th Cir. 2007) (same).

Plaintiff cannot show that any of his statements were protected because they were made pursuant to his official duties. City Council members throughout the country are elected to be responsible stewards of the public's trust. The duties of these elected officials are quite broad, and citizens expect these officials to take action and formulate policy positions in their official capacities. Sometimes their decisions may be popular and other times they may be unpopular. Indeed, the United States Supreme Court has acknowledged public officials "to be a breed from whom hardiness to exposure to charges, innuendoes, and criticisms might be demanded and who voluntarily assumed the risk of such things by entry into the public arena." *Time Inc., v. Hill*, 385 U.S. 384, 408 (1967) (citing *New York Times Co. v. Sullivan* 376 U.S. 254, 273 (1964).).

It is self-evident that City Council members, as part of their duties, are expected to make public comments on the management of the affairs of the various departments within the City. Simply put – that is their job and that is what is expected from them. Therefore, Plaintiff has no basis to deny that all of his speech cited in the Complaint is speech that was made pursuant to his

position as a public employee.[3] *See, e.g., Garcetti*, 126 S.Ct. at 1960 (holding district attorney was not speaking as a citizen because he was merely discharging is professional responsibilities); *Vose*, 2007 WL 3120091, at *6 ("A public employee's more general responsibilities are not beyond the scope of official duties for First Amendment purposes."); *Sigworth*, 487 F.3d at 508 (holding plaintiff was not speaking as a citizen when he reported to his supervisors his suspicions of misconduct by his colleagues because he "was merely doing what was expected of him"). Moreover, the plain language of the complaint supports the fact that Plaintiff's speech was made in his capacity as a public official and "[d]uring his eight and a half year tenure as a Naperville City Councilman," not as a private citizen. (Complaint at ¶ 9.) Consequently, Count III fails under *Garcetti* because Plaintiff's comments were not protected speech under the First Amendment.

### H. All Claims for Punitive Damages Against the City Should be Stricken

Plaintiff is seeking punitive damages against the defendants in this matter. (Complaint at Prayer for Relief, p. 25.) However, even a cursory review of well-established law demonstrates that Plaintiff is barred from seeking punitive damages against the City on both his federal and state law claims. First, with respect to the federal claims (Count I-III), municipal corporations such as the City are "immune from punitive damage awards in civil rights actions." *Planned Parenthood v. Chicago Transit Auth.*, 767 F.2d 1225, 1233-1234 (7th Cir. 1985); *See also, Erwin v. County of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989).

---

[3] Paragraph twenty-five of the Complaint contains the only speech that Plaintiff *arguably* can allege is protected under the First Amendment. (Complaint at ¶ 25.) In that paragraph Plaintiff states that one of the "platforms" of his ill-fated Senate campaign was police pension reform. (*Id.*) He alleges that had he been successful, he would pursue legislation to prevent double-dipping. (*Id.*) In the light most favorable to the Plaintiff, presumably he would argue that these statements are protected by the First Amendment because they were made as a citizen running for State Senate, rather than as a public employee. But other allegations in that paragraph doom his First Amendment claim. Plaintiff specifically acknowledged that this "speech" was not new, distinct speech, but simply a regurgitation of his previously uttered unprotected speech. (*Id.*) ("Furstenau publicly stated that he fully intended to pursue legislation which would prevent the previously-discussed "double dipping"")

14

Second, with respect to Count IV for malicious prosecution, punitive damages against the City are barred by the Illinois Tort Immunity Act. This statute states:

> Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party. In addition, no public official is liable to pay punitive or exemplary damages in any action arising out of an act or omission made by the public official while serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity, brought directly or indirectly against him by the injured party or a third party.

745 ILCS 10/2-102. S*ee also*, *Harris v. City of West Chicago*, No. 01-C-7527, 2002 WL 31001888 at * 9, (N.D. Ill. Sept. 3, 2002) (holding that although motions to strike are disfavored, it is appropriate to strike Plaintiff's prayer for punitive damages against the City of West Chicago). Accordingly, if the Court declines to dismiss the complaint against the City in its entirety, the prayer for punitive damages nevertheless should be stricken against the City.

## V.

## CONCLUSION

WHEREFORE, for all the above stated reasons, Defendant, City of Naperville, respectfully requests this Honorable Court grant its Motion to Dismiss Plaintiff's Complaint with prejudice and any further relief this Court deems just and proper.

Respectfully Submitted,

**CITY OF NAPERVILLE**

By:   /s/ Richard T. Sikes, Jr.
One of Its Attorneys

Richard T. Sikes, Jr.
Terrence J. Sheahan
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606
Telephone: 312/360-6000

1454527v1

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2007, I electronically filed the **Notice of Motion, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and Memorandum in Support of Same**, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Shawn M. Collins | James G. Sotos |
| John A. Sopuch, III | John J. Timbo |
| The Collins Law Firm, P.C. | James G. Sotos & Associates, Ltd. |
| 1770 N. Park Street | 550 East Devon |
| Suite 200 | Suite 150 |
| Naperville, Illinois 60563 | Itasca, IL 60143 |
| Phone: 630-527-1595 | Phone: 630-735-3300 |
| Fax: 630-527-1193 | Fax: 630-773-0980 |

/s/ Richard T. Sikes, Jr.
Richard T. Sikes, Jr.