**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD R. FURSTENAU, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 07-CV-6143 |
| | ) | |
| v. | ) | Judge Norgle |
| | ) | Magistrate Judge Brown |
| CITY OF NAPERVILLE, a municipal | ) | |
| Corporation; MICHAEL HULL, in his | ) | |
| individual and official capacity; DAVID | ) | JURY TRIAL DEMANDED |
| DIAL, in his official and individual | ) | |
| capacity; MICHAEL CROSS, in his | ) | |
| individual and official capacity; | ) | |
| PETER BURCHARD, in his official and | ) | |
| individual capacity; MARGO ELY, | ) | |
| in her individual and official capacity, | ) | |
| and JOE MATCHETT, in his individual | ) | |
| and official capacity. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS MARGO ELY, JOE MATCHETT, AND PETER BURCHARD'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**JOINT MOTION TO DISMISS PURSUANT TO F.R.C.P 12(b)(6)**

**BACKGROUND**

**I.     PLAINTIFF'S ORIGINAL SUIT AGAINST THE NAPERVILLE POLICE**

Plaintiff, an elected councilman for the City of Naperville, Illinois, filed a four (4) count

complaint on October 31, 2007 against Defendants Naperville Police Chief David Dial, Detective

Michael Cross, and Police Officer Michael Hull (hereinafter the "Police Defendants"), stemming

from a confrontation between Plaintiff and Officer Hull which occurred on January 1, 2006

shortly prior to the beginning of a New Year's Day parade in downtown Naperville (*See* Pltf.'s

Compl., p. 11, para. 27).  According to Plaintiff, Officer Hull falsely alleged that Plaintiff struck

1

him in the chest when Plaintiff confronted him as to his authority for having cars towed that were

parked near the route of the parade (*See Id.*, pp. 10-12, paras. 26-33). Plaintiff further alleged

that Officer Hull conspired with Chief Dial and Detective Cross to have Plaintiff falsely charged

with felony aggravated battery for striking Officer Hull (*See Id.*, pp. 12-15, paras. 34-48).[1]

Plaintiff was acquitted of battery after a stipulated bench trial (*See Id.*, pp. 3-4, p. 16,

para. 44, 48),[2] Plaintiff alleged in his original complaint that the Police Defendants conspired to

have Plaintiff falsely charged and convicted of this crime in retaliation for Plaintiff's outspoken

public stances against the police department on a variety of issues including abuse of overtime,

use of tasers, and "double dipping", which allows police officers to retire from the police force

with a pension, and then accept other paid positions with Naperville (*See* Pltf.'s Compl., pp. 6-

10, paras. 10-24).

## II.    PLAINTIFF'S SUIT AGAINST NAPERVILLE EMPLOYEES WHO CRITICIZED HIM

Six weeks after filing his original complaint, Plaintiff filed a four (4) count amended

complaint (Am. Compl.) on December 13, 2007, naming as additional defendants (movants

herein) Naperville City Attorney Margo Ely, former Naperville City Manager Peter Burchard,

and Naperville Police Officer Joe Matchett, who is also the President of the Naperville Fraternal

Order of Police (*See* Am. Compl., pp. 6-7, paras. 6-8). The amended complaint alleges that, in

---

[1]  Plaintiff was ultimately charged with misdemeanor battery after the DuPage County State's Attorney's office declined felony charges (*See* Am. Compl., pp. 16-17, para. 41).

[2]  Though not pertinent to the instant motion to dismiss, Defendants point out that, in announcing the acquittal, the presiding judge stated that "[t]here's no wrong or inappropriate behavior shown by Officer Hull. In fact, he probably demonstrated restraint", and "I think what occurred was embarrassing, inappropriate" (*See* Transcript of Proceedings of May 27, 2007 hearing in 06 CM 302, pp. 35-36, attached as Ex. A).

retaliation for Plaintiff's lawsuit against the Police Defendants, Defendant Burchard authored a

public "open letter" to local media outlets in connection with his formal resignation on or about

November 30, 2007, which included false and disparaging statements against Plaintiff (*See Id.*, p.

19, paras. 51-52).  Specifically, Plaintiff claims this letter "blasted Plaintiff for events as old as

2003", and, with respect to Plaintiff's allegations against the Police Defendants, falsely claimed

"that Plaintiff had admitted to Burchard that he (Plaintiff) may have tapped Officer Hull." *Id.*

Plaintiff has similarly alleged that Defendant Joe Matchett, the President of the Naperville

Fraternal Order of Police union, also authored an open letter to the media which defamed

Plaintiff "by, *inter alia*, falsely claiming that Plaintiff battered Officer Hull." (*See Id.*, p. 20, para.

57).

Finally, Plaintiff has alleged that Defendant Margo Ely also penned an "open letter" to the

media where "she falsely stated that the allegations against Plaintiff contained in Defendant

Burchard's "open letter" were undisputed by Plaintiff." (*See Id.*, p. 20, para. 56). [3]  Plaintiff has

also alleged that Defendant Ely approached individuals whom she perceived as sympathetic to

Plaintiff and who have projects which require City Council approval, and told these business

people that if they continued to support Plaintiff, they would not get City Council approval for

--------

[3]  The letters authored by Defendants Burchard, Matchett, and Ely are attached hereto as
Group Exhibit B, and, having been referenced in Plaintiff's Complaint, do not convert this
motion to dismiss into a motion for summary judgment (*See Venture Associates Corp. v. Zenith
Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).  Moreover, Plaintiff failed to mention that
Ely's letter specifically states that it was written in response to Plaintiff's counsel's own letter to
Ely of December 5, 2007 which demanded a prompt reply and was itself copied to "local media"
(See Exhibit C, Plaintiff's counsel's letter of December 5, 2007).

their projects (*See Id.*, p. 20, para. 55).[4]

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted (Fed.R.Civ.Pro.12(b)(6)).  In considering a motion to dismiss under Rule 12(b)(6), the court accepts all facts in the complaint as true and draws all reasonable inferences in plaintiffs' favor. *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7th Cir. 2007); *Zimmerman v. Paulsen*, 2007 WL 4162812 (N.D.Ill. Nov. 19, 2007)(J. Castillo).  However, to survive a Rule 12(b)(6) motion to dismiss, the complaint must describe the claim in sufficient detail to give the defendant fair notice of the claim and to suggest plausibly that the plaintiff has a right to relief above the speculative level. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. Aug. 3, 2007), *interpreting Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007)("[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").  Although this standard does "not require heightened fact pleading of specifics," it does require the complaint to contain "enough facts to state a claim to relief that is plausible on its face." *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. Nov. 9, 2007), *citing Bell Atlantic Corp.*, 127 S.Ct. at 1974.

---

[4] Defendant Ely vehemently denies that she ever engaged in such conduct, but accepts the allegation as true solely for purposes of Defendants' motion to dismiss.

## ARGUMENT

### I.   THE LETTERS AUTHORED BY MOVANTS CANNOT SERVE AS A BASIS FOR PLAINTIFF'S FIRST AMENDMENT CLAIM

Plaintiff contends that movants' letters were authored in retaliation against Plaintiff's exercise of his First Amendment right to pursue litigation on matters of public concern. However, the federal courts have consistently recognized that not every action by a public official allegedly taken in retaliation for an individual's exercise of First Amendment rights is actionable under Section 1983. *See Kelly v. Chambers, et al.*, 2007 WL 4293633 (N.D.Ill. December 6, 2007)(J.Aspen)(attached hereto as Exhibit D); *see also Rees v. Dahl*, 24 Fed. Appx. 907, 911 (10th Cir. 2001); *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686-88 (4th Cir. 2000); *Mnyofu v. Bd. of Education*, 2007 WL 1308523, at *3 (N.D.Ill. Apr. 27, 2007); *Villagrana v. Village of Oswego*, 2005 WL 2322808, at *6 (N.D.Ill. Sept. 22, 2005). The determination as to whether a particular retaliatory act can give rise to an actionable First Amendment claim "is a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Suarez*, 202 F.3d at 686. "The nature of the alleged retaliatory acts has particular significance where the public official's acts are in the form of speech. Not only is there an interest in having public officials fulfill their duties, a public official's own First Amendment speech rights are implicated." *Id*. at 687.

The court in *Suarez* further found that "courts have declined to find that a [defendant's] actions have adversely affected a [plaintiff's] exercise of [her] First Amendment rights where the [defendant's] alleged retaliatory acts were criticism, false accusations, or verbal reprimands." *Id*.

at 686. Moreover, "where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion or intimidation intimating that punishment, sanction or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory." *Id.* at 687; *Villagrana*, 2005 WL 2322808, at 3-4. The basis for this rule is recognition "that a balance must be struck between the citizen's right to exercise his First Amendment rights and the public official's personal First Amendment rights, as well as [the public official's] duty to the public to speak out about matters of public concern." *Suarez*, 202 F.3d at 688 n.13.

In *Rees v. Dahl*, 24 Fed. Appx. 907 (10th Cir. 2001), the plaintiff, an attorney and former counsel to a local radioactive waste board, was publicly critical of the board regarding internal management and other issues related to superfund sites. The plaintiff maintained that the Board retaliated against his First Amendment right to criticize the Board on matters of public concern by filing a state court action seeking the return of certain files and property that he had in his possession while counsel to the Board. In affirming the dismissal of the Complaint, the appeals court held that one key element of the cause of action was not satisfied - "that the defendant's action caused the plaintiff 'to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity.'" *Id.* at 911. The Court, applying an objective standard, found that a person of ordinary firmness would not refrain from exercising his First Amendment rights as a result of the filing of a state court replevin action.

Similarly, in *Mnyofu v. Board of Ed.*, 2007 WL 1308523 (N.D.Ill. 2007), Judge Grady relied upon the objective standard articulated in *Suarez* in dismissing a First Amendment retaliation claim under Section 1983. The plaintiff, a parent of a student of the defendant school

6

district, claimed that as a result of his vocal criticisms advanced at various board meetings, board

members retaliated against him in various ways. Nonetheless, Judge Grady held that expressed

hostility by the board members, instituting policies to restrict citizen participation at board

meetings, and failing to stop other members of the public from heckling the plaintiff, was

insufficient under *Suarez* to give rise to a Section 1983 First Amendment retaliation claim.

Moreover, in *Villagrana v. Village of Oswego*, 2005 WL 2322808 (N.D.Ill. 2005)(J.

Lefkow), the plaintiff, a Kendall County Sheriff's Department officer, had alleged that members

of the Oswego Police Department retaliated against her after she accused them of improper

conduct. The alleged retaliation took the form of false and disparaging statements about the

plaintiff to her employer, the Sheriff's Department. In dismissing the plaintiff's First

Amendment retaliation complaint, Judge Lefkow observed that even if the Court were to infer

"that the Village police officers advocated that the [sheriff's department] sanctioned or dismissed

[plaintiff], absent a threat, intimidation or coercion, their advocacy is constitutionally protected."

*Id.* at p. 4.

And, just last month, Judge Aspen dismissed a strikingly similar claim in *Kelly v.

Chambers, et al.*, 2007 WL 4293633 (N.D.Ill. December 6, 2007)(J.Aspen) (*See* Exhibit D). In

*Kelly*, the plaintiff, also an elected trustee in a suburban municipality, alleged that the police

chief, other board members, and the town President, retaliated against her for her vocal criticism

of the local police department's treatment of citizens and increasing cost to the taxpayers. The

alleged acts of retaliation included the untimely writing of a police report implicating the plaintiff

in obstructing a police officer, initiation of an investigation into the police officer's allegations

against the plaintiff, and a letter from a public safety committee directing the plaintiff to respond

to the officer's allegations *Id.* at 2-3. In dismissing the claim of retaliation which was premised upon the demand that plaintiff respond to the officer's allegations of obstruction, Judge Aspen explained that because the speech contained in the Committee's demand "was at least of the same magnitude as [p]laintiff's speech criticizing Oakwood Hills and the [police] Department (*Id.* at 8), in the absence of a "threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action will imminently follow, such speech does not affect a citizen's First Amendment rights, even if defamatory". *Id., citing Villagrana, supra,* 2005 WL 2322808 at 3-4. Similarly, Judge Aspen concluded that the police chief's participation in the initiation of a fact-finding probe by allegedly slandering the plaintiff at a Village Board meeting "[amounted] to pure speech, and under *Villagrana,* entitles him to qualified immunity."[5]

*Suarez* and its progeny illustrate the inherent irony in recognizing a cause of action in favor of a public official seeking to use the First Amendment as a sword to silence his detractors. Yet, that is precisely what Plaintiff, an elected councilman for the city of Naperville, seeks to accomplish by suing city employees who have dared to publicly challenge him on his treatment of staff workers. As in *Kelly* and the authorities cited above, none of the three "open letters" Plaintiff describes in his amended complaint can even remotely be considered to contain a threat, coercion or intimidation. Indeed, Plaintiff fails to describe any of the letters as such, and a

---

[5] The only retaliation claim that Judge Aspen declined to dismiss was based on the allegation that a police officer generated an untimely false police report concerning plaintiff more than two months after her encounter with the officer, and on the same day in which the plaintiff's criticisms of the police department appeared in a local newspaper *See Kelly,* 2007 WL 4293633 at 9-10. In compliance with *Kelly,* the Naperville police defendants in this matter have filed an Answer to the Plaintiff's allegations that he was arrested, charged, and prosecuted in retaliation for his criticism of the police department.

review of the three letters (*See* Group Ex. B) reveals that they are incapable of any such characterization.

Viewed against that backdrop, Plaintiff can hardly be heard to contend that the letters authored by movants are of a type that would cause a plaintiff 'to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity."*See Rees v. Dahl, supra*, 24 Fed. Appx at 911. Indeed, the letter authored by Defendant Ely was in response to Plaintiff's counsel's own open letter to the media which was authored one day earlier (*See* Ex. C, Plaintiff's counsel's letter to Ely of December 5, 2007). As such, any suggestion by Plaintiff that Ely's invited letter would deter a person of ordinary firmness from continuing with his lawsuit is sanctionable hyperbole.[6]

Similarly, local police union president Matchett's letter simply provided his view of an ongoing public controversy, which, as described by Plaintiff himself, was "the story of the year" in Naperville in 2006 (Am. Compl., p. 17, para. 43). As such, it is equally sanctionable for Plaintiff to contend that, in the face of this ongoing public debate, Officer Matchett's weighing in on the issue on behalf of the police union might somehow cause Plaintiff to abandon his lawsuit.

Finally, Defendant Burchard's letter provided his view of Plaintiff's mistreatment of several Naperville staff employees over the course of several years, and of the City's failure to redress the employees' plethora of complaints about Plaintiff (*See* Group Ex. B, Burchard's letter of November 30, 2007). The letter contained no threat to or intimidation of Plaintiff, and

---

[6] Defendants are serving Plaintiff with a motion for sanctions pursuant to Fed. R. Civ.P.. 11, which will only be filed with this Honorable Court later this month in the event Plaintiff fails to voluntarily dismiss his claims against Defendants Ely, Burchard and Matchett within 21 days of receipt of the motion.

similarly cannot be said to be the kind of speech which would deter a person of ordinary firmness from pursuing his lawsuit against the police Defendants. Indeed, Plaintiff's multitude of public comments since the letters were authored denouncing virtually everyone in Naperville City Government, announcing plans to sue additional defendants who disagree with him, and confirming his commitment to this litigation, speak volumes as to whether any of movants' letters had any impact whatsoever on his plans to continue forward with this case (*See* Special online section to Naperville Sun Newspaper at www.suburbanchicagonews.com/napervillesun/index, e.g., December 14, 2007 article *Naperville Officials Added to Furstenau's Suit*).

It is important that the federal courts stand ready to protect the First Amendment rights of individuals who are punished by way of police action, adverse employment decisions, threats, and other serious consequences in retaliation against citizens exercising their First Amendment rights to expose corruption, speak on unpopular causes, or publicly challenge those in positions of authority. However, the Constitution is undoubtedly trivialized when public officials attempt to use the First Amendment as a sword to sue and silence all those who publicly oppose them on public controversies, and then threaten to sue others who might follow suit (*See, e.g.*, December 14, 2007 Naperville Sun online article).[7]

The state of Illinois recently enacted the Citizen Participation Act, which is an anti-

---

[7] In a recent decision, the District Court for the Eastern District of Wisconsin dismissed a similar First Amendment retaliation claim by holding that, as plaintiff was an elected official, whether the conduct of the individual defendants was retaliatory or not was irrelevant. *See Footit v. Van De Hey*, 2005 WL 1563334, at 3 (E.D.Wis. 2005). The Court further held that defendants' act of reporting possible illegal conduct by plaintiff to the district attorney could not be considered actionable adverse conduct giving rise to a retaliation claim. *Id.* at 6.

SLAPP[8] statute designed to prevent deep pocketed litigants from suing citizens in order to discourage citizen participation in government. (*See* 735 ILCS sec. 110). Federal decisions such as *Suarez, supra,* and its progeny similarly ensure that litigants do not misuse the First Amendment as a sword to silence their opponents from speaking their minds. Movants' criticism of Plaintiff on issues of public concern was undertaken in a public forum which Plaintiff, as an elected Councilman, not only enjoys, but has made liberal use of. Under the above cited authorities, Plaintiff's allegations against movants based on their expression of views do not state a cause of action. As a result, Defendants Matchett and Burchard, who were sued solely for their authoring of letters, should be dismissed from Plaintiff's Amended Complaint with prejudice, and Plaintiff's allegations against Defendant Ely, to the extent they are based on her authoring of a letter in response to Plaintiff's demand for same, must likewise be dismissed.

## II.    MOVANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR HAVING WRITTEN THE OPEN LETTERS

Under the doctrine of qualified immunity, public officials who are performing discretionary functions are shielded from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known. *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 2515 (2002); *Wernsing v. Thompson*, 423 F.3d 732, 742 (7th Cir. 2005). Whether a defendant is entitled to qualified immunity is a question of law for the court. *Rakovich v. Wade*, 850 F.2d 1180, 1202 (7th Cir. 1988). Such defense can appropriately be considered in a motion to dismiss. *See Kelly, supra,*

---

[8] SLAPP stands for Strategic Lawsuits Against Public Participation and references lawsuits in which a corporation or developer sues an organization or individual to scare or force them into dropping protests against a corporate initiative.

2007 WL 4293633 (N.D.Ill. Dec. 6, 2007).

The qualified immunity analysis involves a two part equation: whether the plaintiff has alleged the deprivation of an actual constitutional right, and, if so, whether the right was clearly established. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 692, 1697 (1999). The latter inquiry is fact specific and "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 537 U.S. 194, 201-02, 121 S.Ct. 2151, 2156 (2001).

Qualified immunity occupies a prominent place in First Amendment retaliation litigation. While it is clearly established that retaliation against citizens for exercising their free speech rights can violate the First Amendment, a determination as to whether a particular form of conduct can give rise to a First Amendment claim is often far from clear. For example, the Seventh Circuit has observed that in First Amendment employment cases, there must be a factually similar published case in existence in order to put a supervisor on notice that his actions are unlawful. *Gregorich v. Lund*, 54 F.3d 410, 414-15 (7th Cir. 1995):

> " Differences in the nature of the competing interests from case to case make it difficult for a government official to determine in the absence of case law that is very closely analogous whether the balance that he strikes is an appropriate accommodation of the competing individual and governmental interests. We must remember that government officials are not expected to be prescient and are not liable for damages simply because they legitimately but mistakenly believed that the balancing of interests tipped in the State's favor. .... Thus, in such circumstances, 'the facts of the existing case law must closely correspond to the contested action before the defendant official is subject to liability'"

Against that backdrop, movants' authoring of letters expressing their views on various matters of public concern regarding Plaintiff are undeniably protected under the umbrella of qualified immunity. Indeed, research has uncovered not a single analogous case which could even arguably be read to support the proposition that Defendants' authoring of the subject letters

12

might subject them to liability for a civil rights violation. To the contrary, the plethora of analogous case law cited above at pp. 5-10, *supra,* sends the unmistakable message that such letters cannot form the basis of an actionable First Amendment claim.

As set forth in section I, Plaintiff cannot establish that an actual constitutional right was violated, as movants' speech alone, absent coercion, threat, or intimidation, cannot serve as the basis for a First Amendment retaliation claim. Movants are thus entitled to qualified immunity on this basis alone.

Moreover, given Judge Aspen's analysis in the *Kelly* decision rejecting plaintiff's First Amendment retaliation claim based upon certain defendants' speech alone, it cannot be concluded that, by authoring their "open letters", movants violated clearly established statutory or constitutional rights of which a reasonable person would have known. Movants are thus also entitled to qualified immunity on this additional basis.

### III.    PLAINTIFF HAS NO STANDING TO SUE CITY ATTORNEY ELY FOR ALLEGEDLY THREATENING LOCAL BUSINESS PEOPLE WHO SUPPORT PLAINTIFF

Plaintiff has also alleged that Defendant Ely approached unidentified individuals whom she perceived as sympathetic to Plaintiff and who have projects which require City Council approval, and told these businesspeople that if they continue to support Plaintiff, they would not get City Council approval for their projects (*See* Am. Compl., p. 20, para. 55).

Assuming, arguendo, that such allegations are true, (and they are accepted as such solely for purposes of this motion to dismiss), Plaintiff clearly does not have standing to present such allegation as a basis for a First Amendment retaliation claim. Standing jurisprudence, as the Supreme Court has explained, contains two strands: Article III standing, which enforces the

13

Constitution's case-or-controversy requirement, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555,

559-62, 112 S.Ct. 2130 (1992); and prudential standing, which embodies " 'judicially

self-imposed limits on the exercise of federal jurisdiction'". *Allen v. Wright*, 468 U.S. 737, 751,

104 S.Ct. 3315 (1984); *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11-12, 124 S.Ct.

2301 (2004).  As the *Lujan* Court put it, there are three elements of Article III standing: injury in

fact, a causal connection between the injury and the defendant's conduct, and likely redressability

through a favorable decision. 504 U.S. at 560-61.  Prudential standing is somewhat harder to

define, but the Court in *Newdow* "explained that prudential standing encompasses '*the general*

*prohibition on a litigant's raising another person's legal rights*, the rule barring adjudication of

generalized grievances more appropriately addressed in the representative branches, and the

requirement that a plaintiff's complaint fall within the zone of interests protected by the law

invoked.'". (emphasis added) 542 U.S. at 12. *See also, Warth v. Seldin*, 422 U.S. 490, 508-10, 95

S.Ct. 2197 (1975); *Massey v. Helman*, 196 F.3d 727, 740-42 (7th. Cir. 1999).

　　In other words, the plaintiff must allege an actual or threatened injury to himself that is

likely to be redressed by a favorable decision. *See Simon v. Eastern Kentucky Welfare Rights*

*Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). One generally cannot sue,

other than in a representative capacity, to enforce a right that belongs to someone else. *Leftkovitz*

*v. Wagner*,  395 F.3d 773, 776 (7th Cir. 2005).  If individual rights cannot be vindicated, the right

to claim relief rests only on the rights of third parties, or the decision will merely address the

generalized interests of concerned bystanders, the plaintiff lacks standing to sue. *See Whisby-*

*Meyers v. Kiekenapp*,  293 F.Supp.2d 845, 853 (N.D.Ill. 2003)(J.Kennelly)(plaintiffs must have

actual injury to themselves under Section 1982 to bring a claim for violation of minority property

14

rights statute ). This also means that mere indignation does not suffice to establish standing. *See Baaske v. City of Rolling Meadows*, 191 F.Supp.2d 1009, 1014 (N.D.Ill. 2002).

The Supreme Court has held that there is only a very narrow basis for a party to be able to assert the rights of an absent party to the litigation. In *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364 (1991), the Supreme Court set forth the two-part test that determines whether one party may assert the rights of an absent party. First, the litigant must have suffered an "injury in fact." Second, prudential considerations must favor permitting the litigant to assert the other party's rights. *Id.*, at 411. These considerations include how close the litigant's relationship is to the missing party, and whether a hindrance has prevented the missing party from asserting its rights itself. *Id. See also Rubin v. Islamic Republic of Iran*, 436 F.Supp.2d 938 (N.D.Ill. 2006)(J. Manning); *In re: African American Slave Descendants Litigation*, 375 F.Supp.2d 721 (N.D.Ill. July 6, 2005)(J. Norgle).

In the present matter, Plaintiff does not allege that he is acting in a representative capacity on behalf of the unidentified alleged local businesspeople whom he claims Defendant Ely has threatened. This deficiency alone should have put Plaintiff's counsel on notice that he did not have a viable claim, as there is no allegation that these businesspeople are unable to bring a claim against Ely themselves if they truly thought Ely had engaged in any conduct which threatened their projects as a result of any alleged support of Plaintiff. Moreover, Plaintiff cannot, and indeed does not, allege any particular injury to himself which is attributable to Defendant Ely's alleged statements. Accordingly, Paragraph 55 of Plaintiff's amended complaint should be stricken, and Defendant Ely should also be dismissed with prejudice from this litigation.

**CONCLUSION**

For the foregoing reasons, Defendants Ely, Matchett, and Burchard respectfully request

that this Honorable Court enter an Order dismissing them from Plaintiff's Amended Complaint

with prejudice and with costs assessed.


Dated: January 9, 2008                    s/James G. Sotos
                                          James G. Sotos, one of the attorneys for the
                                          Defendants
                                          JAMES G. SOTOS & ASSOCIATES
                                          550 East Devon, Suite 150
                                          Itasca, Illinois 60143
                                          (630) 735-3300
                                          (630) 773-0980 (fax)
                                          jsotos@jsotoslaw.com

## CERTIFICATE OF SERVICE

The undersigned having first been duly sworn under oath, states that he electronically filed a complete copy of the foregoing **Defendants Margo Ely, Joe Matchett, and Peter Burchard's Memorandum of Law in Support of Their Joint Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6)** with the Clerk of the Court on **January 9, 2008,** using the CM/ECF system, which will send notification of such filing to the following counsel of record: see attached Service List.

s/James G. Sotos
James G. Sotos, Attorney No. 06191975
One of the attorneys for Defendants
JAMES G. SOTOS & ASSOCIATES
550 East Devon, Suite 150
Itasca, Illinois 60143
(630) 735-3300
(630) 773-0980 (fax)
jsotos@jsotoslaw.com

## SERVICE LIST

### RICHARD FURSTENAU V. CITY OF NAPERVILLE, ET AL.
### CASE NO.: 07-CV-6143

**ATTORNEYS FOR PLAINTIFF:**

**John A. Sopuch**
The Collins Law Firm
1770 N. Park Street, Suite 200
Naperville, IL 60563
(630) 527-1595
E-mail: jsopuch@collinslaw.com

**Edward John Manzke**
The Collins Law Firm
1770 N. Park Street, Suite 200
Naperville, IL 60563
(630) 527-1595
E-mail: ejmanzke@collinslaw.com

**Shawn Michael Collins**
The Collins Law Firm
1770 N. Park Street, Suite 200
Naperville, IL 60563
(630) 527-1595
E-mail: smc@collinslaw.com

**ATTORNEYS FOR DEFENDANTS:**

**Richard Thomas Sikes, Jr.**
Freeborn & Peters
311 South Wacker Drive, Suite 300
Chicago, IL 60606
(312) 360-6000
E-mail: rsikes@freebornpeters.com

**Terrence J. Sheahan**
Freeborn & Peters
311 South Wacker Drive, Suite 300
Chicago, IL 60606
(312) 360-6000
E-mail: tsheahan@freebornpeters.com

**Terry A. Ekl**
Ekl Williams PLLC
115 W. 55th St., Suite 400
Clarendon Hills, IL 60514
(630) 654-1624
E-mail: tekl@eklwilliams.com