UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **RICHARD R. FURSTENAU,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 6143 |
| | ) | |
| **CITY OF NAPERVILLE**, a municipal | ) | The Honorable Charles R. Norgle |
| corporation; **MICHAEL HULL,** | ) | |
| in his individual and official capacity; | ) | Magistrate Judge Geraldine Soat Brown |
| **DAVID DIAL,** in his individual and official | ) | |
| capacity; **MICHAEL CROSS**, in his | ) | |
| individual and official capacity; | ) | JURY TRIAL DEMANDED |
| **PETER BURCHARD**, in his individual | ) | |
| and official capacity; **MARGO L. ELY,** | ) | |
| in her individual and official capacity, | ) | |
| and **JOE MATCHETT**, in his individual | ) | |
| and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**THIRD AMENDED COMPLAINT**

As ordered by this Court, RICHARD R. FURSTENAU, by and through his attorneys, Shawn M. Collins, John A. Sopuch III, Edward J. Manzke and Aaron W. Rapier of The Collins Law Firm, P.C., for his Third Amended Complaint against CITY OF NAPERVILLE, OFFICER MICHAEL HULL, POLICE CHIEF DAVID DIAL, DETECTIVE MICHAEL CROSS, PETER BURCHARD, MARGO L. ELY and OFFICER JOE MATCHETT, states and alleges as follows:

I.

**PARTIES**

1. Plaintiff Richard R. Furstenau (hereinafter, "Plaintiff" or "Furstenau") is 63 years old, a resident of the State of Illinois, and a long-time resident of the City of Naperville. Since 1999, Plaintiff has been a Naperville City Councilmember.

2. Defendant City of Naperville is, and at all times relevant to the allegations in this Third Amended Complaint has been, a municipal corporation; the City of Naperville Police Department is a department within the municipal corporate structure of the City of Naperville.

3. Defendant Michael Hull is, and at all times relevant to the allegations in this Third Amended Complaint has been, acting under color of state law as an officer for the Police Department of the City of Naperville.

4. Defendant David Dial is, and at all times relevant to the allegations in this Third Amended Complaint has been, acting under color of state law as the Chief of Police for the City of Naperville.

5. Defendant Michael Cross is, and at all times relevant to the allegations in this Third Amended Complaint has been, acting under color of state law as an officer for the Police Department of the City of Naperville.

6. Defendant Peter Burchard was the City Manager of the City of Naperville until approximately December 7, 2007, who thereafter served–and continues to serve–as a consultant to the City, who took the actions complained of herein while he acted under the color of state law as the City Manager of Naperville.

7. Defendant Margo Ely is counsel to the City of Naperville. Ely took the actions complained of herein while she acted under color of state law as counsel to the City and in concert with other state actors to deprive Furstenau of his constitutional rights.

8. Defendant Joe Matchett is, and at all times relevant to the allegations in this Third Amended Complaint has been, acting under color of state law as an officer for the Police Department of the City of Naperville.

## II.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1331 because this case arises under the laws of the United States of America, and specifically alleges violations of the Fourth and Fourteenth Amendments to the United States Constitution, brought pursuant to 42 U.S.C. § 1983.

10. This Court has supplemental jurisdiction over the Illinois state law claim set forth in Count IV, pursuant to 28 U.S.C. § 1367, as that claim involves substantially overlapping evidence and witnesses, involves the same events or connected series of events, and is otherwise so related to the Plaintiff's federal question claims that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this case arises out of actions that occurred within this Judicial District.

## III.

## ALLEGATIONS UPON WHICH CLAIMS ARE BASED

### The False Arrest

12. On January 18, 2006, the City of Naperville, through its Police and as described more fully below, arrested Furstenau, in the absence of probable cause, and based upon fabricated charges. Specifically, the arrest was based upon the false accusation that, on January 1, 2006, Furstenau hit, punched or slapped Defendant Hull in the chest, while the two men stood on a public street in Downtown Naperville.

13. Furstenau never hit, punched or slapped Defendant Hull.

14. Despite the fact there were no reasonable grounds to believe that Furstenau had committed any crime, Defendants Hull, Cross, Matchett, Dial and the City of Naperville worked in concert to procure Furstenau's arrest, as set forth below.

15. Defendant Hull, knowing of the falsity of his statement, caused the arrest of Furstenau, *inter alia,* by signing a statement alleging that Furstenau had hit him.

16. Defendant Cross unlawfully directed, instigated, assisted in, participated in, and/or encouraged the false arrest of Furstenau, *inter alia*, by conducting an "investigation" of Furstenau which not only did not yield reasonable grounds to believe that Furstenau had committed any crime, but, to the contrary, yielded evidence proving Furstenau's innocence. The "investigation" as conducted by Cross was used to justify the arrest of Furstenau, not truly investigate it, as Defendants had, in fact, pre-determined to falsely charge Furstenau with a crime, even before Cross had even gathered any "evidence." Given that the outcome of the "investigation" was already pre-determined, Cross, accordingly, followed those pre-determined plans, and deliberately ignored evidence proving Furstenau's innocence.

17. Defendant Matchett unlawfully directed, instigated, assisted in, participated in, and/or encouraged the false arrest of Furstenau because, *inter alia*, Matchett, in his capacity as head of the Naperville Police Union and thus with no legitimate role to play in the "investigation" of Furstenau or the decision as to whether or not Furstenau should be arrested, and, upon information and belief, knowing that there were no reasonable grounds to believe that Furstenau had committed a crime, nonetheless encouraged Defendant Hull to sign the complaint that initiated the false arrest of Furstenau.

18. Defendant Dial unlawfully directed, instigated, assisted in and/or encouraged the false arrest of Furstenau, because, *inter alia*, Dial instigated, directed, remained in charge of, and

provided "witnesses" for, the "investigation" that was pre-determined to bring false charges against Furstenau. Further, Dial insisted that charges be brought against Furstenau, despite, upon information and belief, his knowledge that there were no reasonable grounds to believe that Furstenau had committed any crime.

19. City of Naperville Municipal Code Section 1-8A-2 states, "The chief shall be responsible for the performance of the police department, and all persons who are members of the department shall serve subject to his orders." As a result, *inter alia*, of this ordinance, Defendant Dial is the individual at the City of Naperville with final policymaking authority with respect to the initiation and maintenance of the "investigation" into Furstenau's encounter with Defendant Hull, and with respect to the false arrest of Furstenau.

20. The acts of Defendants Hull, Cross and Matchett, as set forth herein, were performed at the behest of Defendant Dial, or with final policymaking authority delegated to them by Defendant Dial, pursuant to, *inter alia*, City of Naperville Municipal Code Section 1-8A-2.

21. In May of 2007, Furstenau was acquitted of all charges that had been brought against him.

22. Prior to January of 2006, in substantial part as a private citizen and long-time Naperville resident, Furstenau had on many occasions:

    (a)    accused the Naperville City Police of abusive pay (particularly overtime pay) practices, including by expressing complaints that nearly one-half of the City's highest-paid employees were members of the Police Department;

    (b)    criticized "double-dipping" (the practice where a police officer is allowed to retire and receive a pension, while immediately returning to work and drawing another salary in addition to his or her municipal pension) for retired City police officers, and other pension-related practices involving the City's police;

...
...

(c)  opposed the Police's handling of cases of alleged Police misconduct; and

(d)  criticized positions taken by the Police on other matters important to the Police, such as the use of "taser" guns; the City's towing contract; and mandating seat belt usage laws.

The Naperville Police were aware of, and disapproved of, this speech and activity of Furstenau.

23.  Furstenau's speech and activity described in Paragraph 22 are matters of public concern and Constitutionally-protected, specifically, protected by the First Amendment to the United States Constitution.

24.  In 2005, Furstenau announced that he was running as a candidate in the Republican primary for the office of Illinois State Senator.

25.  Motivated at least in part to retaliate against Furstenau for his exercise of the Constitutionally-protected speech as identified in Paragraph 22, and concerned that his criticisms of the Police might reach an even larger audience, Defendants Dial, Hull, Cross, Matchett and City of Naperville caused Furstenau to be falsely arrested, without probable cause, on or about January 18, 2006, as set forth above.

**Retaliation**

26.  Between June and November, 2007, as a private citizen and not pursuant to his duties as a City councilman, Furstenau:

(a)  requested that Officer Hull and Detective Cross be disciplined for their involvement in his false arrest;

(b)  requested that he be issued an apology, and reimbursed $129,500, for having been falsely arrested;

(c)  after his requests were ignored and rejected, filed this civil rights lawsuit, alleging serious misconduct against the City and its police officers relating to his false arrest;

6

 (d)  held a press conference, to announce the filing of this lawsuit, and to criticize police and the City's behavior involved in his false arrest; and

 (e)  otherwise criticized the conduct of the police and the City in orchestrating his false arrest.

27. Furstenau's speech and activity described in Paragraph 26 (collectively, the "Protected Speech") are of matters of public concern and Constitutionally-protected, specifically, protected by the First Amendment to the United States Constitution.

28. Motivated at least in part to retaliate against Furstenau for his exercise of the Protected Speech, Defendants Burchard, Ely, Matchett and City of Naperville undertook the following actions, which are independently actionable, as well as actionable as a campaign of petty harassment. These actions were selectively directed toward Furstenau, as they were not undertaken as to any other City Council member, or any other citizen. These actions included, *inter alia*:

 (a)  In concert with others, Defendants Ely and City of Naperville orchestrated and participated in meetings on important public issues that unlawfully excluded Furstenau and the public, in direct violation of their First Amendment rights, and in violation of the Illinois Open Meetings Act and the City's own ordinances.

 (b)  In concert with others, Defendants Burchard, Ely and City of Naperville investigated Furstenau's conduct—as both a private citizen and councilmember—over (at least) the last five years, with the intent that this investigation would produce, without adequate regard to their truth, allegations that were specifically intended to intimidate, threaten, punish, embarrass and discredit Furstenau, and that such allegations would then be publicly disseminated.

 (c)  In concert with others, Defendants Burchard, Ely and City of Naperville and, upon information and belief, Defendant Matchett, searched Naperville Police files for any complaints concerning Furstenau, and then publicly disseminated such records, in order to intimidate, threaten, punish, embarrass and discredit Furstenau.

 (d)  In concert with others, Defendants Burchard, Ely and City of Naperville, with the intent to publicly humiliate, harass, embarrass and punish

7

        Furstenau, directed the submission by City staff of complaints containing allegations of Furstenau's conduct, some of which allegedly had occurred months and years earlier. Many of the allegations in these memos are false and no, or an inadequate, effort was made by Defendants to determine the veracity of the complaints before Ely and Burchard publicly disseminated them or their contents.

(e)      In concert with others, Defendants Burchard, Ely and City of Naperville directed and pursued the preparation and submission by City staff of complaints concerning Furstenau's conduct at meetings which he attended in November and December of 2007, with the intent that such memos—if they described Furstenau's conduct deemed by Defendants to be sufficiently embarrassing and discrediting to Furstenau—would be publicly disseminated. Many of the allegations in these complaints are false and no, or an inadequate, effort was made by Defendants to determine the veracity of the memos before Burchard and Ely publicly disseminated them.

(f)      In concert with others, Defendants Burchard, Ely and City of Naperville ordered and personally implemented the public dissemination of complaints and other documents—including Naperville Police records—containing allegations deemed to be intimidating, threatening, embarrassing and/or discrediting to Furstenau, without adequate regard as to whether those allegations were true (and, indeed, many of the allegations were false).

(g)      In concert with others, Defendants Burchard, Ely and City of Naperville orchestrated the censure of Furstenau for allegations of misconduct that were false and otherwise unproven, and for conduct which, even if true, was not forbidden by the City's new censure ordinance, but also without even affording Furstenau the opportunity to meaningfully confront the allegations against him.

(h)      In concert with others, Defendants Burchard, Ely and City of Naperville orchestrated the making of false accusations against Furstenau that he was using his councilmember's position for "personal gain" and to "promote his private enterprise."

(i)      In concert with others, Defendants Ely and City of Naperville have researched and taken other steps to implement the recall of Furstenau from public office.

(j)      In concert with others, and with the intent to intimidate and threaten Furstenau, Defendant Matchett published a letter from the local union of more than 100 Naperville Police—which included two of those officers (Defendants Hull and Cross) who orchestrated the false arrest of

8

        Furstenau, and the records of which were searched in Defendants' above-described investigation into Furstenau—which falsely stated that Furstenau had been arrested in 2006 for "contact" with a police officer, and falsely accused Furstenau of misconduct with Police in other incidents.

    (k)    Defendants Burchard and Ely, and others at the City, created an atmosphere such that those who needed to do business at the City, but who also had expressed support for Furstenau in connection with his lawsuit, would be "outed," with the consequence that their business matters would receive less favorable attention, and they would be thereby disadvantaged. These actions were reasonably perceived as threatening by at least one Furstenau supporter with business before the City. These actions and this atmosphere contributed to and continued the campaign of petty harassment Defendants waged against Furstenau.

29.    Defendants' retaliatory actions were intentional, punitive, deliberate, malicious, calculated and undertaken in bad faith.

    (a)    As intended, Defendants' retaliatory actions have resulted in the direct deprivation of Furstenau's First Amendment rights to speak on matters of public significance, and to participate meaningfully in City government.

    (b)    As intended, Defendants' retaliatory actions have unlawfully intimidated Furstenau in the exercise of his First Amendment rights, *inter alia,* in that he is now reasonably concerned that: the Naperville police – who orchestrated his "false arrest" in 2006 – will do so again; that his political opinions will continue to result in the filing of false complaints against him; that Defendants will continue to selectively use City resources to investigate him, and selectively enforce City ordinances against him; and that he is reluctant to invoke in this litigation all of the rights available to him.

30.    Further, Defendants' retaliatory acts are likely to chill a person of ordinary firmness from exercising his First Amendment rights and, as shown above and as intended, have in fact so chilled Furstenau.

## Count I

### 42 U.S.C. § 1983 – U.S. Const., Amend. IV Violation

31. Plaintiff, repeats, re-alleges, and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

32. Defendants Michael Hull, Detective Michael Cross, Chief David Dial, Joe Matchett and the City of Naperville are "persons" as that term is used in 42 U.S.C. § 1983.

33. Furstenau was arrested and detained by Defendants without probable cause, in violation of his Fourth and Fourteenth Amendment rights.

34. Defendants, acting under color of state law, proximately caused the deprivation of Furstenau's Fourth Amendment rights.

35. Defendants' actions were undertaken in bad faith and either with the intent to deprive Furstenau of his rights, or with reckless and callous disregard for, and deliberate indifference to, Furstenau's constitutional rights.

36. Defendant City of Naperville acted pursuant to an official policy, custom, or decision of an individual with final policy-making authority, and proximately caused the deprivation of Furstenau's Fourth Amendment rights.

## Count II

### 42 U.S.C. § 1983 – U.S. Const., Amend. XIV Violation

37. Furstenau, repeats, re-alleges, and incorporates by reference paragraphs 1 through 36 as if fully set forth herein.

38. Defendants Michael Hull, Detective Michael Cross, Chief David Dial, Joe Matchett and the City of Naperville are "persons" as that term is used in 42 U.S.C. § 1983.

39. Furstenau was arrested by Defendants without probable cause.

40. In arresting Furstenau without probable cause, Defendants intentionally treated Furstenau differently from others similarly situated, in violation of Furstenau's Fourteenth Amendment right to equal protection under the law.

41. Defendants' differential treatment of Furstenau was without rational basis, or based upon Defendants' wholly illegitimate animus toward Furstenau.

42. Defendants, acting under color of state law, proximately caused the deprivation of Furstenau's Fourteenth Amendment rights.

43. Defendants' actions were undertaken in bad faith and either with the intent to deprive Furstenau of his rights, or with reckless and callous disregard for, and deliberate indifference to, Furstenau's constitutional rights.

44. Defendant City of Naperville acted pursuant to an official policy, custom, or decision of an individual (*i.e.*, Chief Dial and/or those to whom he delegated his authority) with final policy-making authority, when it proximately caused the deprivation of Furstenau's Fourteenth Amendment rights.

## Count III
### 42 U.S.C. § 1983 – U.S. Const., Amend. I Violation

45. Furstenau, repeats, re-alleges, and incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

46. Defendants Michael Hull, Detective Michael Cross, Chief David Dial, Peter Burchard, Margo Ely, Joe Matchett and the City of Naperville are "persons" as that term is used in 42 U.S.C. § 1983.

47. Furstenau was arrested by Defendants City of Naperville, Dial, Cross, Hull and Matchett without probable cause.

48. In arresting Furstenau without probable cause, these Defendants were motivated by disapproval of Furstenau's long established history of vocal criticism of, and opposition to, the Naperville Police Department's base pay rates, overtime abuses, pension manipulation, and other behavior and practices, as identified in Paragraph 22.

49. The Defendants' arrest of Furstenau in the absence of probable cause and based upon fabricated charges was an effort to silence Furstenau's political viewpoints and vocal opinions.

50. Motivated at least in part to retaliate against Furstenau for his exercise of the Protected Speech, Defendant City of Naperville and Defendants Burchard, Ely and Matchett took those unlawful actions outlined in Paragraph 28.

51. Defendants, acting under color of state law, proximately caused the deprivation of Furstenau's First Amendment rights, and will continue to so deter his free speech in the future.

52. Defendants' actions were without justification, and motivated either to punish Furstenau with the intent to deprive Furstenau of his rights, or undertaken in bad faith and with reckless and callous disregard for and deliberate indifference to, Furstenau's constitutional rights.

53. Defendant City of Naperville acted pursuant to an official policy, custom, or decision of an individual with final policy-making authority, when it proximately caused the deprivation of Furstenau's First Amendment rights.

### Count IV

**Malicious Prosecution**

54. Furstenau, repeats, re-alleges, and incorporates by reference paragraphs 1 through 53 as if fully set forth herein.

55. Defendants City of Naperville, Dial, Cross, Hull and Matchett commenced or caused the continuation of a criminal legal proceeding against Furstenau.

56. Defendants, through their charges and arrest of Furstenau, actively instigated the criminal proceeding against Furstenau.

57. The criminal proceedings Defendants instigated were resolved in Furstenau's favor, on or about May 21, 2007, when he was found "not guilty," nearly two years after Furstenau announced he would be running for State Senator.

58. Defendants lacked probable caused for the instigation of the criminal proceedings against Furstenau.

59. Defendants acted with bad faith and malice in instigating, commencing, and continuing the legal proceedings against Furstenau.

60. Furstenau suffered damages as a result of the criminal proceeding commenced by Defendants. Furstenau's damages included, *inter alia*, criminal attorney's fees, humiliation, financial loss, and damage to his personal reputation and that of his family.

WHEREFORE, Plaintiff, Richard Furstenau, respectfully requests that this Court:

(a) Enter an order in Plaintiff's favor;

(b) Award Plaintiff compensatory damages in an amount to be determined by the trier of fact;

(c) Award Plaintiff punitive damages, as allowed by law, and in an amount to be determined by the trier of fact; and

(d) Award Plaintiff his reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1985; and grant Plaintiff such other and further relief as the Court deems appropriate.

Dated: February 11, 2008

Respectfully submitted,
**RICHARD R. FURSTENAU**

By: s/ Shawn M. Collins
One of the Plaintiff's Attorneys

Shawn M. Collins
John A. Sopuch III
Edward J. Manzke
Aaron W. Rapier
THE COLLINS LAW FIRM, P.C.
1770 N. Park Street, Suite 200
Naperville, Illinois 60563
(630) 527-1595
(630) 527-1193 – Fax