UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD R. FURSTENAU, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 07-CV-6143 |
| | ) | |
| v. | ) | Judge Norgle |
| | ) | Magistrate Judge Brown |
| CITY OF NAPERVILLE, a municipal | ) | |
| Corporation; MICHAEL HULL, in his | ) | |
| individual and official capacity; DAVID | ) | JURY TRIAL DEMANDED |
| DIAL, in his official and individual | ) | |
| capacity; and MICHAEL CROSS, in his | ) | |
| individual and official capacity; PETER | ) | |
| BURCHARD, in his official and individual | ) | |
| capacity; MARGO ELY, in her individual | ) | |
| and official capacity, and JOE | ) | |
| MATCHETT, in his individual and official | ) | |
| capacity. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT MICHAEL CROSS' ANSWER TO PLAINTIFF'S THIRD AMENDED COMPLAINT

Defendant, MICHAEL CROSS, by and through his attorneys, JAMES G. SOTOS and

JOHN J. TIMBO of JAMES G. SOTOS & ASSOCIATES, LTD., in answer to Plaintiff's Third

Amended Complaint states the following unto this Honorable Court:

## I.

## PARTIES

1.    Plaintiff Richard R. Furstenau (hereinafter, "Plaintiff" or "Furstenau") is 63 years

old, a resident of the State of Illinois, and a long-time resident of the City of Naperville.  Since

1999, Plaintiff has been a Naperville City Councilmember.

**ANSWER:**    Defendant admits the allegations contained in paragraph 1.

2.    Defendant City of Naperville is, and at all times relevant to the allegations in this Third Amended Complaint has been, a municipal corporation; the City of Naperville Police Department is a department within the municipal corporate structure of the City of Naperville.

**ANSWER:**    Defendant admits the allegations contained in paragraph 2.

3.    Defendant Michael Hull is, and at all times relevant to the allegations in this Third Amended Complaint has been, acting under color of state law as an officer for the Police Department of the City of Naperville.

**ANSWER:**    Defendant admits Defendant Hull is a Naperville police officer, but makes no response to the remaining legal conclusion contained in paragraph 3.

4.    Defendant David Dial is, and at all times relevant to the allegations in this Third Amended Complaint has been, acting under color of state law as the Chief of Police for the City of Naperville.

**ANSWER:**    Defendant admits Defendant Dial is the Naperville Chief of Police, but makes no response to the remaining legal conclusion contained in paragraph 4.

5.    Defendant Michael Cross is, and at all times relevant to the allegations in this Third Amended Complaint has been, acting under color of state law as an officer for the Police Department of the City of Naperville.

**ANSWER:**    Defendant admits the allegations contained in paragraph 5.

6.    Defendant Peter Burchard was the City Manager of the City of Naperville until approximately December 7, 2007, who thereafter served-and continues to serve-as a consultant to the City, who took the actions complained of herein while he acted under the color of state law as the City Manager of Naperville.

2

**ANSWER:**    Defendant admits Defendant Burchard is the former City Manager for Naperville, and admits that Burchard has stated that he would continue to serve as a consultant for the City for a limited time, but makes no response to the remaining legal conclusions contained in paragraph 6.

7.    Defendant Margo Ely is counsel to the City of Naperville.  Ely took the actions complained of herein while she acted under color of state law as counsel to the City and in concert with other state actors to deprive Furstenau of his constitutional rights.

**ANSWER:**    Defendant admits Defendant Ely is the Naperville City Attorney, but makes no response to the remaining legal conclusion contained in paragraph 7.

8.    Defendant Joe Matchett is, and at all times relevant to the allegations in this Third Amended Compliant has been, acting under color of state law as an officer for the Police Department of the City of Naperville.

**ANSWER:**    Defendant admits Defendant Matchett is a Naperville police officer, but makes no response to the remaining legal conclusion contained in paragraph 8.

## II.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. § 1331 because this case arises under the laws of the United States of America, and specifically alleges violations of the Fourth and Fourteenth Amendments to the United States Constitution, brought pursuant to 42 U.S.C. § 1983.

**ANSWER:**    Defendant admits that jurisdiction is proper in this Court.

10.    This Court has supplemental jurisdiction over the Illinois state law claim set forth in Count IV, pursuant to 28 U.S.C. § 1367, as that claim involves substantially overlapping evidence and witnesses, involves the same events or connected series of events, and is otherwise

so related to the Plaintiff's federal question claims that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:**    Defendant admits that supplemental jurisdiction over Plaintiff's state law claim set forth in Count IV is proper in this Court.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this case arises out of actions that occurred within this Judicial District.

**ANSWER:**    Defendant admits that venue is proper in the Northern District of Illinois, Eastern Division.

### III.

### ALLEGATIONS UPON WHICH CLAIMS ARE BASED

**The False Arrest**

12.    On January 18, 2006, the City of Naperville, through its Police and as described more fully below, arrested Furstenau, in the absence of probable cause, and based upon fabricated charges. Specifically, the arrest was based upon the false accusation that, on January 1, 2006, Furstenau hit, punched or slapped Defendant Hull in the chest, while the two men stood on a public street in Downtown Naperville.

**ANSWER:**    Defendant admits that Plaintiff was arrested on January 18, 2006 but denies the remaining allegations contained in paragraph 12.

13.    Furstenau never hit, punched or slapped Defendant Hull.

**ANSWER:**    Defendant denies the allegations contained in paragraph 13.

14.    Despite the fact there were no reasonable grounds to believe that Furstenau had committed any crime, Defendants Hull, Cross, Matchett, Dial and the City of Naperville worked in concert to procure Furstenau's arrest, as set forth below.

**ANSWER:**    Defendant denies the allegations contained in paragraph 14.

15.    Defendant Hull, knowing of the falsity of his statement, caused the arrest of
Furstenau, *inter alia*, by signing a statement alleging that Furstenau had hit him.

**ANSWER:**    Defendant denies the allegations contained in paragraph 15.

16.    Defendant Cross unlawfully directed, instigated, assisted in, participated in, and/or
encouraged the false arrest of Furstenau, *inter alia*, by conducting an "investigation" of Furstenau
which not only did not yield reasonable grounds to believe that Furstenau had committed any
crime, but, to the contrary, yielded evidence proving Furstenau's innocence. The "investigation"
as conducted by Cross was used to justify the arrest of Furstenau, not truly investigate it, as
Defendants had, in fact, pre-determined to falsely charge Furstenau with a crime, even before
Cross had even gathered any "evidence." Given that the outcome of the "investigation" was
already pre-determined, Cross, accordingly, followed those pre-determined plans, and
deliberately ignored evidence proving Furstenau's innocence.

**ANSWER:**    Defendant admits that he performed an investigation into Officer Hull's claim
                against Plaintiff, but denies the remaining allegations contained in paragraph 16.

17.    Defendant Matchett unlawfully directed, instigated, assisted in, participated in,
and/or encouraged the false arrest of Furstenau because, *inter alia*, Matchett, in his capacity as
head of the Naperville Police Union and thus with no legitimate role to play in the
"investigation" of Furstenau or the decision as to whether or not Furstenau should be arrested,
and, upon information and belief, knowing that there were no reasonable grounds to believe that
Furstenau had committed a crime, nonetheless encouraged Defendant Hull to sign the complaint
that initiated the false arrest of Furstenau.

**ANSWER:**    Defendant denies that Officer Matchett unlawfully directed, instigated, assisted in, participated in, and/or encouraged the arrest of Plaintiff as Officer Matchett had no communication with Defendant during the course of the investigation into Officer Hull's claims, and denies that Officer Matchett played any role in the investigation of Plaintiff. Defendant lacks sufficient information to either admit or deny the allegation that Officer Matchett encouraged Officer Hull to sign the complaint against Plaintiff.

18.    Defendant Dial unlawfully directed, instigated, assisted in and/or encouraged the

false arrest of Furstenau, because, *inter alia*, Dial instigated, directed, remained in charge of, and

provided "witnesses" for, the "investigation" that was pre-determined to bring false charges

against Furstenau. Further, Dial insisted that charges be brought against Furstenau, despite, upon

information and belief, his knowledge that there were no reasonable grounds to believe that

Furstenau had committed any crime.

**ANSWER:**    Defendant admits that Chief Dial provided the name of one possible witness to the January 1, 2006 incident to Defendant. Defendant denies that Chief Dial directed, instigated, assisted in and/or encouraged the arrest of Plaintiff, denies that the investigation was pre-determined to bring charges against Plaintiff, and denies that Chief Dial insisted that charges be brought against Plaintiff. Defendant further denies that Chief Dial remained in charge of the investigation, but admits that Chief Dial was provided updates regarding the investigation as it progressed. Defendant denies that Officer Hull's complaint against Plaintiff was false.

19.    City of Naperville Municipal Code Section 1-8A-2 states, "The chief shall be

responsible for the performance of the police department, and all persons who are members of

the department shall serve subject to his orders." As a result, *inter alia,* of this ordinance,

Defendant Dial is the individual at the City of Naperville with final policymaking authority with

respect to the initiation and maintenance of the "investigation" into Furstenau's encounter with

Defendant Hull, and with respect to the false arrest of Furstenau.

**ANSWER:**    Defendant admits the allegations contained in the first sentence, but makes no response to the remaining legal conclusions contained in paragraph 19.

6

20.    The acts of Defendants Hull, Cross and Matchett, as set forth herein, were performed at the behest of Defendant Dial, or with final policymaking authority delegated to them by Defendant Dial, pursuant to, *inter alia*, City of Naperville Municipal Code Section 1-8A-2.

**ANSWER:**    Defendant denies that he performed any illegal or wrongful acts at the behest of Defendant Dial, but makes no response to the remaining legal conclusion contained in paragraph 20.

21.    In May of 2007, Furstenau was acquitted of all charges that had been brought against him.

**ANSWER:**    Defendant admits that Plaintiff was acquitted of all charges that had been brought against him in May, 2007.

22.    Prior to January of 2006, in substantial part as a private citizen and long-time Naperville resident, Furstenau had on many occasions:

(a)    accused the Naperville City Police of abusive pay (particularly overtime pay) practices, including by expressing complaints that nearly one-half of the City's highest-paid employees were members of the Police Department;

(b)    criticized "double-dipping" (the practice where a police officer is allowed to retire and receive a pension, while immediately returning to work and drawing another salary in addition to his or her municipal pension) for retired City police officers, and other pension-related practices involving the City's police;

(c)    opposed the Police's handling of cases of alleged Police misconduct, and

7

(d)     criticized positions taken by the Police on other matters important to the

Police, such as the use of "taser" guns; the City's towing contract; and

mandating seat belt usage laws.

The Naperville Police were aware of, and disapproved of, this speech and activity of

Furstenau.

**ANSWER:**    Defendant states that he lacks sufficient information to form a belief as to the truth
or falsity of the allegation that Plaintiff criticized or opposed the Naperville Police
Department on the cited issues (a) through (d). Defendant denies that he
disapproved of this speech and activity of Plaintiff.

23.     Furstenau's speech and activity described in Paragraph 22 are matters of public

concern and Constitutionally-protected, specifically, protected by the First Amendment to the

United States Constitution.

**ANSWER:**    Defendant makes no response to Plaintiff's legal conclusion that his speech and
activity described in paragraph 22 is Constitutionally protected speech protected
by the First Amendment.

24.     In 2005, Furstenau announced that he was running as a candidate in the

Republican primary for the office of Illinois State Senator.

**ANSWER:**    Defendant admits the allegations contained in paragraph 24.

25.     Motivated at least in part to retaliate against Furstenau for his exercise of the

Constitutionally-protected speech as identified in Paragraph 22, and concerned that his criticisms

of the Police might reach an even larger audience, Defendants Dial, Hull, Cross, Matchett and

City of Naperville caused Furstenau to be falsely arrested, without probable cause, on or about

January 18, 2006, as set forth above.

**ANSWER:**    Defendant denies the allegations contained in paragraph 25.

### Retaliation

26.    Between June and November, 2007, as a private citizen and not pursuant to his

duties as a City councilman, Furstenau:

> (a)    requested that Officer Hull and Detective Cross be disciplined for their
> involvement in his false arrest;

> (b)    requested that he be issued an apology, and reimbursed $129,500, for
> having been falsely arrested;

> (c)    after his requests were ignored and rejected, filed this civil rights lawsuit,
> alleging serious misconduct against the City and its police officers relating
> to his false arrest;

> (d)    held a press conference, to announce the filing of this lawsuit, and to
> criticize police and the City's behavior involved in his false arrest; and

> (e)    otherwise criticized the conduct of the police and the City in orchestrating
> his false arrest.

**ANSWER:**    Defendant admits that Plaintiff requested that he and Officer Hull be disciplined
for their involvement in Plaintiff's arrest, but denies that such arrest was premised
on false charges. Defendant admits that Plaintiff requested that he be issued an
apology and reimbursed $129,500 for his alleged false arrest. Defendant admits
that Plaintiff filed his lawsuit after his demand was rejected, and held a press
conference subsequent to the filing of the lawsuit. Defendant further admits that
Plaintiff has subsequently been quoted in local news media criticizing the police
and the City based upon the false accusation that he was falsely arrested.

27.    Furstenau's speech and activity described in Paragraph 26 (collectively, the

"Protected Speech") are of matters of public concern and Constitutionally-protected, specifically,

protected by the First Amendment to the United States Constitution.

**ANSWER:**    Defendant makes no response to Plaintiff's legal conclusion that his speech and
activity described in paragraph 26 is Constitutionally protected speech protected
by the First Amendment.

9

28.    Motivated at least in part to retaliate against Furstenau for his exercise of the

Protected Speech, Defendants Burchard, Ely, Matchett and City of Naperville undertook the

following actions, which are independently actionable, as well as actionable as a campaign of

petty harassment.  These actions were selectively directed toward Furstenau, as they were not

undertaken as to any other City Council member, or any other citizen.  These actions included,

*inter alia*:

(a)    In concert with others, Defendants Ely and City of Naperville orchestrated and participated in meetings on important public issues that unlawfully excluded Furstenau and the public, in direct violation of their First Amendment rights, an in violation of the Illinois Open Meetings Act and the City's own ordinances.

(b)    In concert with others, Defendants Burchard, Ely and City of Naperville investigated Furstenau's conduct-as both a private citizen and councilmember-over (at least) the last five years, with the intent that this investigation would produce, without adequate regard to their truth, allegations that were specifically intended to intimidate, threaten, punish, embarrass and discredit Furstenau, and that such allegations would then be publicly disseminated.

(c)    In concert with others, Defendants Burchard, Ely and City of Naperville and, upon information and belief, Defendant Matchett, searched Naperville Police files for any complaints concerning Furstenau, and then publicly disseminated such records, in order to intimidate, threaten, punish, embarrass and discredit Furstenau.

(d)    In concert with others, Defendants Burchard, Ely and City of Naperville with the intent to publicly humiliate, harass, embarrass, and punish Furstenau, directed the submission by City staff of complaints containing allegations of Furstenau's conduct, some of which allegedly had occurred months and years earlier.  Many of the allegations in these memos are false and no, or an inadequate, effort was made by Defendants to determine the veracity of the complaints before Ely and Burchard publicly disseminated them or their contents.

(e)    In concert with others, Defendants Burchard, Ely and City of Naperville directed and pursued the preparation and submission by City staff of

10

complaints concerning Furstenau's conduct at meetings which he attended in November and December of 2007, with the intent that such memos-if they described Furstenau's conduct deemed by Defendants to be sufficiently embarrassing and discrediting to Furstenau-would be publicly disseminated. Many of the allegations in these complaints are false and no, or an inadequate, effort was made by Defendants to determine the veracity of the memos before Burchard and Ely publicly disseminated them.

(f)     In concert with others, Defendants Burchard, Ely and City of Naperville ordered and personally implemented the public dissemination of complaints and other documents-including Naperville Police records-containing allegations deemed to be intimidating, threatening, embarrassing and/or discrediting to Furstenau, without adequate regard as to whether those allegations were true (and, indeed, many of the allegations were false).

(g)     In concert with others, Defendants Burchard, Ely and City of Naperville orchestrated the censure of Furstenau for allegations of misconduct that were false and otherwise unproven, and for conduct which, even if true, was not forbidden by the City's new censure ordinance, but also without even affording Furstenau the opportunity to meaningfully confront the allegations against him.

(h)     In concert with others, Defendants Burchard, Ely and City of Naperville orchestrated the making of false accusations against Furstenau that he was using his councilmember's position for "personal gain" and to "promote his private enterprise."

(i)     In concert with others, Defendants Ely and City of Naperville have researched and taken other steps to implement the recall of Furstenau from public office.

(j)     In concert with others, and with the intent to intimidate and threaten Furstenau, Defendant Matchett published a letter from the local union of more than 100 Naperville Police-which included two of those officers (Defendants Hull and Cross) who orchestrated the false arrest of Furstenau, and the records of which were searched in Defendants' above-described investigation into Furstenau-which falsely stated that Furstenau had been arrested in 2006 for "contact" with a police officer, and falsely accused Furstenau of misconduct with Police in other incidents.

11

(k)     Defendants Burchard and Ely, and others at the City, created an atmosphere such that those who needed to do business at the City, but who also had expressed support for Furstenau in connection with his lawsuit, would be "outed," with the consequence that their business matters would receive less favorable attention, and they would be thereby disadvantaged. These actions were reasonably perceived as threatening by at least one Furstenau supporter with business before the City. These actions and this atmosphere contributed to and continued the campaign of petty harassment Defendants waged against Furstenau.

**ANSWER:**     Defendant makes no response to the allegations contained in paragraph 28 or subparagraphs (a) through (k) as said allegations are directed toward other Defendants. Defendant denies all allegations which may indirectly identify him by Plaintiff's assertion of the word "others" without such persons being specifically identified.

29.     Defendants' retaliatory actions were intentional, punitive, deliberate, malicious, calculated and undertaken in bad faith.

(a)     As intended, Defendants' retaliatory actions have resulted in the direct deprivation of Furstenau's First Amendment rights to speak on matters of public significance, and to participate meaningfully in City government.

(b)     As intended, Defendants' retaliatory actions have unlawfully intimidated Furstenau in the exercise of his First Amendment rights, *inter alia*, in that he is now reasonably concerned that: the Naperville police - who orchestrated his "false arrest" in 2006 - will do so again; that his political opinions will continue to result in the filing of false complaints against him; that Defendants will continue to selectively use City resources to investigate him, and selectively enforce City ordinances against him; and that he is reluctant to invoke in this litigation all of the rights available to him.

**ANSWER:**     Defendant denies the allegations contained in paragraph 29 to the extent such allegations are directed toward him.

30.     Further, Defendants' retaliatory acts are likely to chill a person of ordinary firmness from exercising his First Amendment rights and, as shown above and as intended, have in fact so chilled Furstenau.

**ANSWER:**     Defendant denies the allegations contained in paragraph 30.

## Count I

### 42 U.S.C. § 1983 - U.S. Const., Amend. IV Violation

31.     Plaintiff, repeats, re-alleges, and incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

**ANSWER:**     Defendant repeats, re-affirms, and incorporates by reference his answers to paragraphs 1 through 30 as if fully set forth herein.

32.     Defendants Michael Hull, Detective Michael Cross, Chief David Dial, Joe Matchett and the City of Naperville are "persons" as that term is used in 42 U.S.C. § 1983.

**ANSWER:**     Defendant admits the allegations contained in paragraph 32.

33.     Furstenau was arrested and detained by Defendants without probable cause, in violation of his Fourth and Fourteenth Amendment rights.

**ANSWER:**     Defendant denies the allegations contained in paragraph 33.

34.     Defendants, acting under color of state law, proximately caused the deprivation of Furstenau's Fourth Amendment rights.

**ANSWER:**     Defendant denies the allegations contained in paragraph 34.

35.     Defendants' actions were undertaken in bad faith and either with the intent to deprive Furstenau of his rights, or with reckless and callous disregard for, and deliberate indifference to, Furstenau's constitutional rights.

**ANSWER:**     Defendant denies the allegations contained in paragraph 35.

36.     Defendant City of Naperville acted pursuant to an official policy, custom, or decision of an individual with final policy-making authority, and proximately caused the deprivation of Furstenau's Fourth Amendment rights.

**ANSWER:**    Defendant makes no response to the allegations contained in paragraph 36 as said allegations are directed toward a separate Defendant.

WHEREFORE, the Defendant denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court will enter judgment in his favor and allow for the costs of defending this lawsuit.

## Count II

### 42 U.S.C. § 1983 - U.S. Const., Amend. XIV Violation

37.    Furstenau, repeats, re-alleges, and incorporates by reference paragraphs 1 though 36 as if fully set forth herein.

**ANSWER:**    Defendant repeats, re-affirms, and incorporates by reference his answers to paragraphs 1 through 36 as if fully set forth herein.

38.    Defendants Michael Hull, Detective Michael Cross, Chief David Dial, Joe Matchett and the City of Naperville are "persons" as that term is used in 42 U.S.C. § 1983.

**ANSWER:**    Defendant admits the allegations contained in paragraph 38.

39.    Furstenau was arrested by Defendants without probable cause.

**ANSWER:**    Defendant denies the allegations contained in paragraph 39.

40.    In arresting Furstenau without probable cause, Defendants intentionally treated Furstenau differently from others similarly situated, in violation of Furstenau's Fourteenth Amendment right to equal protection under the law.

**ANSWER:**    Defendant denies the allegations contained in paragraph 40.

41.    Defendants' differential treatment of Furstenau was without rational basis, or based upon Defendants' wholly illegitimate animus toward Furstenau.

**ANSWER:**    Defendant denies the allegations contained in paragraph 41.

14

42.    Defendants, acting under color of state law, proximately caused the deprivation of Furstenau's Fourteenth Amendment rights.

**ANSWER:**    Defendant denies the allegations contained in paragraph 42.

43.    Defendants' actions were undertaken in bad faith and either with the intent to deprive Furstenau of his rights, or with reckless and callous disregard for, and deliberate indifference to, Furstenau's constitutional rights.

**ANSWER:**    Defendant denies the allegations contained in paragraph 43.

44.    Defendant City of Naperville acted pursuant to an official policy, custom, or decision of an individual (*i.e.,* Chief Dial and/or those to whom he delegated his authority) with final policy-making authority, when it proximately caused the deprivation of Furstenau's Fourteenth Amendment rights.

**ANSWER:**    Defendant makes no response to the allegations contained in paragraph 44 as said allegations are directed toward a separate Defendant.

WHEREFORE, the Defendant denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court will enter judgment in his favor and allow for the costs of defending this lawsuit.

### Count III

### 42 U.S.C. § 1983 - U.S. Const., Amend. I Violation

45.    Furstenau, repeats, re-alleges, and incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

**ANSWER:**    Defendant repeats, re-affirms, and incorporates by reference his answers to paragraphs 1 through 44 as if fully set forth herein.

15

46.    Defendants Michael Hull, Detective Michael Cross, Chief David Dial, Peter Burchard, Margo Ely, Joe Matchett and the City of Naperville are "persons" as that term is used in 42 U.S.C. § 1983.

**ANSWER:**    Defendant admits the allegations contained in paragraph 46.

47.    Furstenau was arrested by Defendants City of Naperville, Dial, Cross, Hull and Matchett without probable cause.

**ANSWER:**    Defendant denies the allegations contained in paragraph 47.

48.    In arresting Furstenau without probable cause, these Defendants were motivated by disapproval of Furstenau's long established history of vocal criticism of, and opposition to, the Naperville Police Department's base pay rates, overtime abuses, pension manipulation, and other behavior and practices, as identified in Paragraph 22.

**ANSWER:**    Defendant denies the allegations contained in paragraph 48.

49.    The Defendants' arrest of Furstenau in the absence of probable cause and based upon fabricated charges was an effort to silence Furstenau's political viewpoints and vocal opinions.

**ANSWER:**    Defendant denies the allegations contained in paragraph 49.

50:    Motivated at least in part to retaliate against Furstenau for his exercise of the Protected Speech, Defendant City of Naperville and Defendants Burchard, Ely and Matchett took those unlawful actions outlined in Paragraph 28.

**ANSWER:**    Defendant makes no response to the allegations contained in paragraph 50 as said allegations are directed toward separate Defendants.

16

51.    Defendants, acting under color of state law, proximately caused the deprivation of Furstenau's First Amendment rights, and will continue to so deter his free speech in the future.

**ANSWER:**    Defendant denies the allegations contained in paragraph 51.

52.    Defendants' actions were without justification, and motivated either to punish Furstenau with the intent to deprive Furstenau of his rights, or undertaken in bad faith and with reckless and callous disregard for and deliberate indifference to, Furstenau's constitutional rights.

**ANSWER:**    Defendant denies the allegations contained in paragraph 52.

53.    Defendant City of Naperville acted pursuant to an official policy, custom, or decision of an individual with final policy-making authority, when it proximately caused the deprivation of Furstenau's First Amendment rights.

**ANSWER:**    Defendant makes no response to the allegations contained in paragraph 53 as said allegations are directed toward a separate Defendant.

WHEREFORE, the Defendant denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court will enter judgment in his favor and allow for the costs of defending this lawsuit.

### Count IV

### Malicious Prosecution

54.    Furstenau, repeats, re-alleges, and incorporates by reference paragraphs 1 through 53 as if fully set forth herein.

**ANSWER:**    Defendant repeats, re-affirms, and incorporates by reference his answers to paragraphs 1 through 53 as if fully set forth herein.

55.    Defendants City of Naperville, Dial, Cross, Hull and Matchett commenced or caused the continuation of a criminal legal proceeding against Furstenau.

**ANSWER:**    Defendant denies that he either commenced or caused the continuation of the criminal legal proceeding against Plaintiff.

56.    Defendants, through their charges and arrest of Furstenau, actively instigated the criminal proceeding against Furstenau.

**ANSWER:**    Defendant denies that he instigated the criminal legal proceeding against Plaintiff.

57.    The criminal proceedings Defendants instigated were resolved in Furstenau's favor, on or about May 21, 2007, when he was found "not guilty," nearly two years after Furstenau announced he would be running for State Senator.

**ANSWER:**    Defendant denies that he instigated criminal proceedings against Plaintiff, but admits that Plaintiff was found not guilty of the criminal charges in May, 2007, although the trial judge specifically stated that "[T]here's no wrong or inappropriate behavior shown by Officer Hull. In fact, he probably demonstrated restraint", and "I think what occurred was embarrassing, inappropriate."

58.    Defendants lacked probable caused (sic) for the instigation of the criminal proceedings against Furstenau.

**ANSWER:**    Defendant denies the allegations contained in paragraph 58, and specifically denies that he instigated any criminal proceeding against Plaintiff.

59.    Defendants acted with bad faith and malice in instigating, commencing, and continuing the legal proceedings against Furstenau.

**ANSWER:**    Defendant denies the allegations contained in paragraph 59.

60.    Furstenau suffered damages as a result of the criminal proceeding commenced by Defendants. Furstenau's damages included, *inter alia*, criminal attorney's fees, humiliation, financial loss, and damage to his personal reputation and that of his family.

**ANSWER:**    Defendant denies the allegations contained in paragraph 60.

WHEREFORE, the Defendant denies that the Plaintiff is entitled to any judgment whatsoever against him and prays this Honorable Court will enter judgment in his favor and allow for the costs of defending this lawsuit.

s/John J. Timbo
John J. Timbo, Attorney No. 06238251
Attorney for Defendant David Dial
JAMES G. SOTOS & ASSOCIATES
550 East Devon, Suite 150
Itasca, Illinois 60143
(630) 735-3300
(630) 773-0980 (fax)
jtimbo@jsotoslaw.com

## FIRST AFFIRMATIVE DEFENSE

NOW COMES Defendant MICHAEL CROSS, by and through his attorneys JAMES G. SOTOS and JOHN J. TIMBO of JAMES G. SOTOS & ASSOCIATES, LTD., and for his First Affirmative Defense to Plaintiff's Third Amended Complaint states the following:

Detective Michael Cross was a police officer performing discretionary functions. At all relevant times, a reasonable police officer objectively viewing the facts and circumstances that confronted Detective Cross would have believed his actions to be lawful in light of clearly established law and the information he possessed. Detective Cross is therefore entitled to qualified immunity.

## SECOND AFFIRMATIVE DEFENSE

NOW COMES Defendant MICHAEL CROSS, by and through his attorneys JAMES G. SOTOS and JOHN J. TIMBO of JAMES G. SOTOS & ASSOCIATES, LTD., and for his Second Affirmative Defense to Plaintiff's Third Amended Complaint states the following:

Probable cause existed for Plaintiff's arrest, and thus Counts I, II, III, and IV must fail as a matter of law.

### THIRD AFFIRMATIVE DEFENSE

NOW COMES Defendant MICHAEL CROSS, by and through his attorneys JAMES G. SOTOS and JOHN J. TIMBO of JAMES G. SOTOS & ASSOCIATES, LTD., and for his Third Affirmative Defense to Plaintiff's Third Amended Complaint states the following:

With regard to Plaintiff's state law malicious prosecution claim contained in Count IV, Defendant is entitled to immunity pursuant to §2-204 of the Illinois Tort Immunity Act, 745 ILCS 2-204, for liability for injury arising out of the arrest and prosecution of Plaintiff in that a public employee acting within the scope of his or her employment cannot be liable for an injury caused by the act or omission of another person.

### FOURTH AFFIRMATIVE DEFENSE

NOW COMES Defendant MICHAEL CROSS, by and through his attorneys JAMES G. SOTOS and JOHN J. TIMBO of JAMES G. SOTOS & ASSOCIATES, LTD., and for his Fourth Affirmative Defense to Plaintiff's Third Amended Complaint states the following:

With regard to Plaintiff's state law malicious prosecution claim contained in Count IV, Defendant is entitled to immunity pursuant to §2-201 of the Illinois Tort Immunity Act, 745 ILCS 2-201, in that the acts complained of against Defendant involved the determination of policy or the exercise of discretion.

20

## CERTIFICATE OF SERVICE

The undersigned having first been duly sworn under oath, states that he electronically filed a complete copy of the foregoing **Defendant Michael Cross' Answer to Plaintiff's Third Amended Complaint** with the Clerk of the Court on February 21, 2008 using the CM/ECF system, which will send notification of such filing to the following counsel of record: John A. Sopuch, Aaron W. Rapier, Edward John Manzke, Shawn Michael Collins, Richard Thomas Sikes, Jr., Audrey Lane Brodrick and Terrence J. Sheahan.

s/John J. Timbo
John J. Timbo, Attorney No. 06238251
Attorney for Defendants
JAMES G. SOTOS & ASSOCIATES
550 East Devon, Suite 150
Itasca, Illinois 60143
(630) 735-3300
(630) 773-0980 (fax)
jtimbo@jsotoslaw.com

21