UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD R. FURSTENAU, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF NAPERVILLE, a municipal ) <br> Corporation; MICHAEL HULL, in his individual ) <br> and official capacity; DAVID DIAL, in his ) <br> official and individual capacity; MICHAEL ) <br> CROSS; in his individual and official capacity; ) <br> PETER BURCHARD, in his official and ) <br> individual capacity; MARGO L. ELY, in her ) <br> individual and official capacity; and JOE ) <br> MATCHETT, in his individual an official ) <br> capacity, ) <br> ) <br> Defendants. ) | No. 07 C 6143 <br><br> Judge Charles R. Norgle <br><br> Magistrate Judge Geraldine Soat Brown |

**DEFENDANT CITY OF NAPERVILLE'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT**

Defendant, CITY OF NAPERVILLE, by and through its attorneys, Freeborn & Peters LLP, as its Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Third Amended Complaint ("Complaint") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, states:

**I.**

**INTRODUCTION**

Plaintiff has brought a four-count Third Amended Complaint ("Complaint") against the City of Naperville ("City"), the City Chief of Police, three police officers, the City Attorney, and the former City Manager. Although Plaintiff claims that all of the defendants participated in a campaign to politically destroy him, the gist of his claim is that he was wrongfully arrested on January 18, 2006 by defendant, police officer Michael Hull, and prosecuted for battery without probable cause and in retaliation for exercising his First Amendment rights.

1

In Counts I, II and III, Plaintiff seeks to impose municipal liability on the City pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Despite the fact that this Complaint represents Plaintiff's fourth attempt to plead a *Monell* claim against the City, the Complaint continues to be replete with false statements, misleading citations to ordinances and other pleading deficiencies that warrant dismissal of those Counts. First, the Complaint does not identify an express policy that purportedly caused Plaintiff a constitutional deprivation. Second, the Complaint does not identify a supposed widespread practice that is so permanent and well settled that it constitutes an unconstitutional city custom or practice. Third, the Complaint does not allege that any "official policy" was the "moving force" behind his purported constitutional violations. Fourth, the Complaint fails to identify a specific individual – with actual policymaking authority – who caused his alleged constitutional injuries. Indeed, the instant Complaint asserts nothing more than innuendo, speculation, and conclusion as the basis for Plaintiff's *Monell* claims. Therefore, as a matter of law, Plaintiff's §1983 claims in Counts I, II, and III must be dismissed with prejudice. Moreover, Count II (the Equal Protection claim) fails in its entirety because Plaintiff fails to identify similarly situated persons who were allegedly treated differently. Finally, the Court should dismiss Plaintiff's punitive damage claims against the City because they are barred under federal law and the Illinois Tort Immunity Act.

## II.

## RULE 12(b)(6) STANDARD FOR DISMISSAL

Rule 12(b)(6) permits motions to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "the complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Equal Employment Opportunity Comm'n v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). This requirement imposes two hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is

and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level;' if they do not, the plaintiff pleads himself out of court. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 614, 619 (7th Cir. 2007); *Montgomery v. City of Harvey*, No. 07 C 4117, 2007 WL 4232729, at *1 (N.D. Ill. Nov. 28, 2007).

The United States Supreme Court states the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . Although this does 'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). Indeed, a complaint should be dismissed if the factual detail is so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007)). Furthermore, a court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

Moreover, a plaintiff can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint. *Holman v. State of Indiana*, 211 F.3d 399, 406 (7th Cir. 2000), *cert. denied*, 531 U.S. 880 (2000); *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). For example, in *Jackson v. Marion County*, 66 F.3d 151, 153-54 (7th Cir. 1995), a plaintiff pled himself out of court by alleging additional facts showing that a conclusory allegation was not true. *See also, Tregenza v. Great Am. Commc'ns Co.*, 12 F. 3d 717, 718 (7th Cir. 1993), *cert. denied*, 511 U.S. 1085 (1994); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992). In the instant case, Plaintiff has similarly pled himself out of court with

respect to his *Monell* liability claims. Plaintiff avers that Chief David Dial is a policymaker for purposes of *Monell* liability. But applicable state laws and local ordinances demonstrated that this averment is not sustainable. Therefore, pursuant to 12(b)(6), Plaintiff's Complaint against the City must be dismissed.

### III.

### PERTINENT FACTUAL AVERMENTS

Plaintiff fails to aver any operative facts that would support a *Monell* policy claim against the City. Plaintiff's Complaint centers around a single, isolated incident where Plaintiff avers that he was wrongfully arrested and prosecuted for battery. (Complaint, Dkt. # 42 at ¶¶ 12-21.) There are no real factual averments that establish that this isolated incident, or any alleged constitutional deprivation, was caused, even in part, by an express or tacit City policy; or that any deprivation was the work of an actual City policymaker. Indeed, the only basis for Plaintiff's *Monell* claim is (i) a misstatement of fact that Police Chief Dial is a policymaker for the City, and (ii) the following conclusory language:

> Defendant City of Naperville acted pursuant to an official policy, custom, or decision of an individual (*i.e.*, Chief Dial and/or those to whom he delegated his authority) with final policy-making authority, when it proximately caused the deprivation of Furstenau's Fourth (Fourteenth and First) Amendment rights.

(Complaint at ¶¶ 19, 36, 44, 53.) In sum, Plaintiff completely fails to allege a factual basis to support *Monell* liability.

Plaintiff Richard "Dick" Furstenau has served as a Naperville City Councilmember since 1999. (Complaint at ¶ 1.) Plaintiff alleges that on January 18, 2006, he was arrested by Naperville police "in the absence of probable cause, and based upon fabricated charges." (*Id.* at ¶ 12.) This arrest was based upon what Plaintiff alleges to be a "false accusation that, on January 1, 2006, [Plaintiff] hit, punched or slapped Defendant Hull in the chest, while the two men stood on a public street in downtown Naperville." (*Id.*) Plaintiff alleges that there were no reasonable

4

grounds to arrest him and that the arrest was the product of grand conspiracy between Defendants Hull, Cross, Dial, and the City of Naperville. (*Id.* at ¶¶ 14-20.)

Plaintiff's allegation that "the City of Naperville worked in concert to procure Furstenau's arrest" is based on the notion that "Defendant Dial is the individual at the City of Naperville with final policymaking authority."[1] (*Id.* at ¶¶ 14, 19.) As the basis for this statement, Plaintiff cites a ***portion*** of a municipal ordinance. (*Id.*) As explained below in Section IV.A.4., Plaintiff's citation is not only incomplete and misleading, but the entire averment is factually inaccurate because Defendant Dial, as a matter of law, is not a policymaker for the City. Undaunted though, Plaintiff alleges that Defendants Hull, Cross and Matchett acted with policymaking authority "delegated" to them by Dial. (*Id.* at ¶ 20.)

Additionally, Plaintiff alleges in this iteration of his Complaint (unlike in the previous versions) that, in his role as a "private citizen," rather than as is a City Councilman, he engaged in various forms of constitutionally-protected, anti-police speech. (*Id.* at ¶ 22.) Specifically, he alleges that as the proverbial "everyday citizen" he criticized police for abuses of overtime pay, double dipping (receiving a pension and drawing another salary), mishandling cases of police misconduct, and other matters allegedly important to police including use of taser guns, City towing contracts, and seat belt usage laws. (*Id.* at ¶¶ 22(a-d).)

Plaintiff never gives the name or rank of individual police officers, but instead speculates that the entire Naperville Police Department was "aware of, and disapproved of, this speech and activity." (*Id.*) Apparently, Plaintiff believes that certain individuals' disapproval was so overwhelming, that they were willing to work in concert to violate his constitutional rights. Specifically, Plaintiff alleges that Defendants Dial, Hull, Cross, Matchett and the City of Naperville – motivated in part to retaliate against Furstenau for his purported criticism – caused Furstenau to be arrested without probable cause. (*Id.* at ¶ 25.)

---

[1] Notably, the Complaint does not identify any other individual or individuals who allegedly possess final policymaking authority in any respect.

5

Finally, Plaintiff sweeps the City Manager and the City Attorney into the fray. Plaintiff alleges that Defendant Burchard, the City Manager, and Defendant Ely, the City Attorney, joined with Matchett and the ubiquitous City of Naperville in a "campaign of petty harassment" that allegedly constitutes actionable retaliation against Furstenau for his supposed exercise of protected speech. (*Id.* at ¶ 28(a-k).) In the end, Plaintiff's self-defeating averments fail to establish any reasonable basis for a *Monell* claim against the City.

## IV.

## ARGUMENT

A.   **Defendant City of Naperville's Motion to Dismiss Must Be Granted Because Plaintiff Fails To Allege a *Monell* Claim in Counts I-III.**

Plaintiff's § 1983 claims against the City (Counts I-III) must be evaluated under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and its progeny. Section 1983 does not recognize the theory of *respondeat superior* as a basis for liability. *See, e.g., Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007), citing *Monell*, 436 U.S. at 694. Therefore, to survive the City's Rule 12(b)(6) motion, Plaintiff "must allege that an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Estate of Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). This requirement serves to "distinguish acts of the municipality from acts of employees of the municipality, and thereby makes it clear that municipal liability is limited to actions for which the municipality is actually responsible." *Id.* at 515.

A Plaintiff may demonstrate an official policy through: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Id.* Plaintiff, however, fails to properly assert a *Monell* claim under any of these avenues. The entire basis for the Monell claim is predicated on (i) Defendant Dial being a policymaker for the City, and (ii) a singular,

conclusory line repeated three times in the Complaint, but never explained or supported by any assertion of fact. That conclusory line reads as follows:

> Defendant City of Naperville acted pursuant to an official policy, custom, or decision of an individual (i.e., Chief Dial and/or those to whom he delegated his authority) with final policy-making authority, when it proximately caused the deprivation of Furstenau's Fourth (Fourteenth and First) Amendment rights.

(Complaint at ¶¶ 19, 36, 44, 53.) Both of these bases fail because Defendant Dial is not a policymaker and the thrice-repeated conclusory statement is utterly devoid of a single critical detail asserting a *Monell* claim. These failures are therefore fatal to Plaintiff's *Monell* claims.[2] As a result, Plaintiff's Complaint does not state a claim under any of the avenues available to sustain a policy and procedure claim against a municipality.

1.  **Plaintiff's Complaint Is Legally Insufficient And Must Be Dismissed Because It Does Not Name An Express Policy That Caused Him A Constitutional Deprivation.**

As the *Bell Atlantic* Court explained, a Plaintiff's complaint must actually *suggest* that the plaintiff has a right to relief, by providing allegations that "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 1964 (2007). Indeed, what is needed to establish a *Monell* policy claim is some allegation "that there is a true municipal policy at issue, not a random event." *Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006) (quoting *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005)). In the instant case, Plaintiff seeks to improperly manufacture a *Monell* policy from a single random event. This attempt is unconvincing, improper and, most important, it defies the *Bell Atlantic* standard, in that it never raises the claim of a right to relief above the level of rank speculation.

The Complaint does not name an express policy that caused Plaintiff a constitutional deprivation, which alone warrants dismissal. For example, in *Valdez v. Printiss*, No. 07 C 1223, 2007 WL 3333269 (S.D. Ind. Nov. 7, 2007), the district court recognized that complaints are

---

[2] The Court should note that Individual Defendants Ely, Matchett and Burchard filed a Motion to Dismiss concurrent with the instant City's Motion to Dismiss. In an effort to avoid duplication of facts and arguments, the City incorporates herein the entirety of the Individual Defendants' Motion to Dismiss.

7

properly dismissed as legally insufficient for failure to name a policy or custom concerning any constitutional violations. *See also, Monell,* 436 U.S. at 690; *Wagner v. Washington County,* 493 F.3d 833, 836 (7th Cir. 2007). This deficiency deprives the City of "'fair notice of what the ... claim is and the grounds upon which it rests.'" *Concentra Health Servs., Inc.,* 496 F.3d at 776 (citations omitted). Specifically, Plaintiff's Complaint leaves this Court, the Defendants, and the public to ponder the scope, nature, and origins of the purported express policy. Indeed, Plaintiff has failed to even characterize his unspecified policy as rooted in a purported "failure to train," or perhaps an alleged "failure to hire," "supervise," or "discipline." The Complaint must be dismissed as legally insufficient because, just as in *Valdez,* Plaintiff failed to identify a policy concerning his alleged constitution violations.

2. **Plaintiff's Complaint Is Legally Insufficient Because It Fails to Allege That a City Policy Was the "Moving Force" Behind His Constitutional Deprivation.**

Plaintiff's Complaint also is legally insufficient because it does not allege that any "official policies" were the "moving force" behind his supposed constitutional violation. *See, Estate of Sims,* 507 F.3d at 515-16; *Concentra Health Servs.,* 496 F.3d at 776. When determining whether Plaintiff has satisfied his pleading burden, the Court looks to see if the complaint alleges a direct causal link between a policy or custom of the defendant and the alleged constitutional violations. Courts will dismiss a complaint, where, as here, a plaintiff fails to establish a causal link. *Montgomery,* 2007 WL 4232729, at *4.

3. **Plaintiff's Complaint Is Legally Insufficient Because It Fails to Allege That A City Custom Caused His Constitutional Deprivation.**

A §1983 complaint that does not allege a direct causal link between a policy or custom of the City and the alleged constitutional violations will be dismissed. *City of Canton v. Harris,* 489 U.S. 378, 385 (1989). In the instant case, Plaintiff failed not only to allege a causal link between his alleged injuries and a City custom, but Plaintiff also failed to even identify the custom. A

custom is a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled that it applies with the force of law. *See Monell,* 436 U.S. at 690-691 (customs, in contrast to official policies, do not receive "formal approval through ... official decision making channels"). In accord with this definition, a custom cannot be established through a single unconstitutional act by a municipal employee. *See Jones v. City of Chicago,* 787 F.2d 200, 204 (7th Cir.1986) ( "The word 'custom' generally implies a habitual practice or a course of action that characteristically is repeated under like circumstances").[3] Plaintiff's only allegation of a municipal custom comes from his cryptic conclusions contained in paragraphs 36, 44, and 53. These insubstantial allegations, however, are too vague to sustain a legally sufficient *Monell* claim.

Courts have defined a custom as a practice that is "persistent," "widespread," "habitual," "permanent," "well-settled" and "entrenched." *Monell,* 436 U.S. at 691; *McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir. 1995); *Gray v. Dane County,* 854 F.2d 179, 183 (7th Cir.1988); *Jones,* 787 F.2d at 204. These terms are inconsistent with finding a custom based upon events that occurred on just one day. Next, a custom creates municipal liability because a municipality fairly may be at fault for its employees' actions that it has countenanced or approved. *See, City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* ... considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation"); *Powe v. City of*

---

[3] Indeed, the Seventh Circuit has previously ruled that several incidents do not constitute a custom. *See, Cornfield v. Consoli High Sch. Dist. No. 230,* 991 F.2d 1316, 1326 (7th Cir.1993) (single incident does not establish widespread practice); *see also, Delapaz v. City of Chicago,* No. 07-C-1224, 2007 WL 3052959, *3 (N.D.Ill. Oct. 16, 2007) (The Court fails to see how four incidents involving three individuals constitutes a "widespread practice that ... is so permanent and well settled as to constitute a custom or usage with the force of law."); *Levin v. Bd. of Educ. of Chicago.,* 470 F. Supp. 2d 835, 843 (N.D.Ill.2007) (dismissing § 1983 claim because "two instances of unconstitutional conduct ... 'does not suggest a widespread, enduring practice that violates constitutional rights in a systemic manner.'").

9

*Chicago,* 664 F.2d 639, 649 (7th Cir.1981) ("[A] municipality may be cast in damages only for its own acts or omissions, and a municipality 'acts' by establishing or countenancing policies or practices which its employees are expected to follow in performing their duties"). When the unconstitutional acts all occur on one day, a municipality cannot be seen as having countenanced or approved the practice.

Moreover, "[o]nly where a municipality's alleged failure evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Canton,* 489 U.S. at 389. And "a single instance of allegedly unconstitutional conduct does not demonstrate a municipality's deliberate indifference to the constitutional rights of its inhabitants." *Estate of Novack ex rel. Turbin v. County of Wood,* 226 F.3d 525, 531 (7th Cir. 2000). The arrest of Councilman Furstenau, as a single instance, does not demonstrate the City's deliberate indifference to his constitutional rights. Consequently, Plaintiff failed to demonstrate that the City had a custom that resulted in a violation of his constitutional rights.

4. **Plaintiff's Complaint Is Legally Insufficient Because It Fails to Allege That An Individual With Actual Policymaking Authority Caused His Constitutional Deprivation.**

Unlike the practices of a municipality's lower-level employees, the acts of high-level policymakers can render a local government liable under § 1983. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 470, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("Municipal liability may be imposed for a single decision by municipal policy makers under appropriate circumstances."). Whether an official has "final policymaking authority" over a certain issue is a question answered by state or local law. *See, St. Louis v. Praprotnik,* 485 U.S. 112, 123 108 S.Ct. 915 (1988); *McMillian v. Monroe County,* 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) (holding the task is to determine whether the official in question was a final policymaker for the local government "in a particular area, or on a particular issue."). This Court can take judicial

notice of Illinois state law and the City's local ordinances to determine the identity of a final policymaker.[4]

Plaintiff specifically avers that Chief Dial is a final policymaker. (Complaint at ¶ 19.) In support of this averment, Plaintiff cites a portion of Section 1-8A-2 of the City of Naperville Municipal Code. (*Id.*) As noted above, Plaintiff selectively quoted, and purposely omitted, the operative language of this ordinance, because when read in whole, this ordinance tells a different tale. In fact, this ordinance – when analyzed in the proper context – establishes as a matter of law that Chief Dial is not a final policymaker for the City.

Generally speaking, the Naperville City Council is the policymaker for the City of Naperville. *See, Auriemma v. Rice,* 957 F.2d 397, 399-400 (7th Cir.1992) (holding the Chicago City Council, not the Superintendent of Police, is the policymaker for the City). This is so because Illinois state law provides that the corporate authority of a municipality is its "mayor and aldermen or similar body." 65 ILCS 5/1-1-2(2) (West 2006); *Auriemma v. City of Chicago,* 747 F.Supp. 465, 470 (N.D.Ill. 1990) (citing Ill.Rev.Stat. ch. 24 ¶ 1-1-2(2), the predecessor to 65 ILCS 5/1-1-2). State law further provides that "[t]he corporate authorities of each municipality may pass all ordinances and make all rules and regulations proper and necessary, to carry into effect the powers granted to municipalities...." 65 ILCS 5/1-2-1 (West 2006). That power includes the authority to "pass and enforce all necessary police ordinances."[5] 65 ILCS 5/11-1-1. (West 2006).

---

[4] *See, Toney v. Burris,* 829 F.2d 622, 626-27 (7th Cir. 1987) ("Federal courts must take judicial notice of the statutory and common law of any state of the union without pleading or proof. This is especially true of the laws of the state in which the district court sits. The rule applies with equal force to matters of public record such as state statutes, city charters, and city ordinances.) (internal quotations and citations omitted); *see also, Wyrick v. City of Chicago,* No. 99 C 4777, 2001 WL 293082 at *2 (N.D.Ill. March 26, 2001) (taking judicial notice of Municipal Code of Chicago in dismissing *Monell* claim).

[5] Illinois state law grants to police officers the power "to arrest or cause to be arrested, with or without process, all persons who break the peace or are found violating any municipal ordinance or any criminal law of the State" and to make an arrest if the officer "has reasonable grounds to believe that the person is committing or has committed an offense." (*See,* 65 ILCS 5/11-1-2(a) and 725 ILCS 5/107-2(1)(c)). But the authority to make an arresting decision is not equivalent to possessing final policymaking authority.

It is important to review the City's governing structure to establish how the City wields the power granted by state law. The City operates under the council-manager form of government. (*See, generally,* 65 ILCS 5/1-1-1 (West 2006); *see also,* Naperville Municipal Code, Section 1-5-1, attached hereto as Exhibit 1.) Under this governing model, the City Council is "the governing body of the city and shall have the powers and duties prescribed by statute and by ordinance of this city." (Naperville Municipal Code at Section 1-5-1(1).) As a result, under both state law and local ordinance, the Naperville City Council is the policymaker for the City of Naperville.

In certain instances, a policymaker may delegate or abdicate its authority in a particular area to an individual who would not otherwise have such authority. However, where a final policy maker delegates this authority, this delegation must be the authority to set policy, not a mere delegation of final authority to make a decision. *Auriemma,* 957 F.2d at 400-01. Here, the City Council has delegated the authority to set policy for the Police Department not to Chief Dial, but to the City Manager. In fact, this delegation of authority is specifically codified in the City ordinance that details the duties of the Chief of Police. Section 1-8A-2(2) of the Code, which is entitled "Authority To Develop Standard Operating Procedures And Rules And Regulations" states as follows:

> The chief of police shall develop standard operating procedures and establish rules and regulations for the conduct and guidance of police department personnel as he deems advisable; ***such procedures and rules, when approved by the city manager, shall be binding on such personnel.***

*See,* Naperville Municipal Code at 1-8A-2(2), attached as Exhibit 2 (emphasis added).

This ordinance makes is clear that Chief Dial is not the final policymaker for the Naperville Police Department because all of the Department's procedures, rules and regulations

---

*See, e.g., Lyttle v. Killackey et al.,* 2007 WL 4162811 at * 8 (N.D.Ill. Nov. 20, 2007) (holding that plaintiff's bare "conclusion" that police officers who arrest plaintiff were delegated final policymaking authority fails because "[d]elegation under *Monell* liability is delegation of final policymaking authority, not the authority to make final, even unreviewed decisions").

12

first must be approved by the City Manager before they can take effect. Thus, as a matter of law, the City Manager, not Chief Dial, has the final policymaking authority regarding operating procedures and rules and regulations of the Police Department.

The Seventh Circuit succinctly instructed that "[s]tate or local law will 'always direct a court to some official or body that has the responsibility for making law or setting policy in any giving area of a local government's business.'" *Eversole v. Steele*, 59 F.3d 710, 716 (7th Cir. 1995) (quoting *Praprotnik*, 485 U.S. at 125). Here, state laws and local ordinances establish that the City Manager, not Chief Dial, is the final policymaker for the City with respect to setting the policies and practices of the Naperville Police Department. As a result, Plaintiff's averment that Defendant Dial is the "final policymaking authority" fails as a matter of law. Likewise, any alleged conduct by Defendant Dial outlined in the Complaint cannot be imputed to the City for purposes of *Monell* liability. In sum, Plaintiff's municipal liability theory fails in Counts I-III because Plaintiff has not, and cannot, assert a cognizable *Monell* claim.

**B.     Plaintiff Fails to Allege An Equal Protection Claim (Count II).**

In Count II of the Complaint, Plaintiff alleges that Defendants violated the Equal Protection clause of the Fourteenth Amendment. However, Plaintiff has totally failed to allege a proper claim. Plaintiff's allegations on this issue are so sparse that it is difficult to discern the basis for the claim. Since Plaintiff has not alleged that he is a member of a protected class, apparently he is proceeding under the "class of one" equal protection theory. But even under this theory, Plaintiff is required to allege that "the government is treating unequally those individuals who are *prima facie* identical in all relevant respects, and that the cause of the different treatment is a totally illegitimate animus toward the plaintiff by the defendant." *See, Levenstein v. Salafsky*, 414 F.3d 767, 775-76 (7th Cir. 2005).

Plaintiff merely alleges that he was arrested without probable cause and, thus, treated differently from others similarly situated. (Complaint at ¶39-40.) Plaintiff does not identify the

13

"similarly situated" group to which he refers. Moreover, he has not alleged how he was treated differently than those similarly situated. Simply put, dismissal is warranted because defendants are not put on notice regarding the group to whom Plaintiff is comparing himself. *See, e.g., Messner v. Calderone*, No. 07 C 0893, 2007 WL 1832116 (N.D.Ill. June 25, 2007) (dismissing "class of one" equal protection claim where complaint was "devoid of facts that he was treated differently than those similarly situated").

Without such operative facts, Plaintiff fails to allege the grounds of his entitlement to relief. *See, Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078-79 (7th Cir. 2005) (affirming dismissal of equal protection claim where plaintiff failed to allege he was treated differently than someone who was *prima facie* identical in all relevant respects). As such, Plaintiff failed to state an equal protection claim, and thus, Count II of the Complaint must be dismissed in its entirety.

## C.     All Claims for Punitive Damages Against the City Should be Stricken.

Plaintiff is seeking punitive damages against the Defendants in this matter. (Complaint at Prayer for Relief, p. 13.) However, even a cursory review of well-established law demonstrates that Plaintiff is barred from seeking punitive damages against the City on both his federal and state law claims. First, with respect to the federal claims (Count I-III), municipal corporations such as the City are "immune from punitive damage awards in civil rights actions." *Planned Parenthood v. Chicago Transit Auth.*, 767 F.2d 1225, 1233-1234 (7th Cir. 1985); *See also, Erwin v. County of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989).

Second, with respect to Count IV for malicious prosecution, punitive damages against the City are barred by the Illinois Tort Immunity Act. This statute states:

> Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party. In addition, no public official is liable to pay punitive or exemplary damages in any action arising out of an act or omission made by the public official while serving in an official executive, legislative, quasi-legislative or quasi-judicial capacity, brought directly or indirectly against him by the injured party or a third party.

745 ILCS 10/2-102. S*ee also*, *Justice v. Town of Cicero*, No. 06 C 1108, 2007 WL 2973851 at *8 (N.D.Ill. Oct. 10, 2007) (granting Town of Cicero's motion to dismiss punitive damages request); *Harris v. City of West Chicago*, No. 01-C-7527, 2002 WL 31001888 at * 9, (N.D. Ill. Sept. 3, 2002) (holding that although motions to strike are disfavored, it is appropriate to strike Plaintiff's prayer for punitive damages against the City of West Chicago). Accordingly, if the Court declines to dismiss the Complaint against the City in its entirety, the prayer for punitive damages nevertheless should be stricken against the City.

## V.

## CONCLUSION

WHEREFORE, for all the above stated reasons, Defendant, City of Naperville, respectfully requests this Honorable Court grant its Motion to Dismiss Plaintiff's Complaint with prejudice and any further relief this Court deems just and proper.

Respectfully Submitted,

**CITY OF NAPERVILLE**

By:   /s/ Terrence J. Sheahan
      One of Its Attorneys

Richard T. Sikes, Jr.
Terrence J. Sheahan
Audrey L. Brodrick
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606
Telephone: (312) 360-6000

Date:  March 4, 2008