# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD R. FURSTENAU, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 07-CV-6143 |
| | ) | |
| v. | ) | Judge Norgle |
| | ) | Magistrate Judge Brown |
| CITY OF NAPERVILLE, a municipal | ) | |
| Corporation; MICHAEL HULL, in his | ) | |
| individual and official capacity; DAVID | ) | JURY TRIAL DEMANDED |
| DIAL, in his official and individual | ) | |
| capacity; MICHAEL CROSS, in his | ) | |
| individual and official capacity; | ) | |
| PETER BURCHARD, in his official and | ) | |
| individual capacity; MARGO ELY, | ) | |
| in her individual and official capacity, | ) | |
| and JOE MATCHETT, in his individual | ) | |
| and official capacity. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS MARGO ELY, JOE MATCHETT, AND PETER BURCHARD'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFF'S**
**THIRD AMENDED COMPLAINT PURSUANT TO F.R.C.P 12(b)(6)**

Dated: March 4, 2008

s/James G. Sotos
James G. Sotos, One of the Attys for the Defendants
JAMES G. SOTOS & ASSOCIATES
550 East Devon, Suite 150
Itasca, Illinois 60143
(630) 735-3300
(630) 773-0980 (fax)
jsotos@jsotoslaw.com

## Table of Contents

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-iii

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.      PLAINTIFF'S ORIGINAL SUIT AGAINST THE NAPERVILLE POLICE. . . . 1

    II.     PLAINTIFF'S AMENDED COMPLAINT AGAINST HIS DETRACTORS . . . 2

    III.    PLAINTIFF ATTEMPTS TO WITHDRAW HIS FIRST AMENDED
          COMPLAINT AND FILE A SECOND AMENDED COMPLAINT . . . . . . . . . 3

    IV.    PLAINTIFF'S THIRD AMENDED COMPLAINT . . . . . . . . . . . . . . . . . . . . . . 4

MOTION TO DISMISS STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.      PLAINTIFF'S ALLEGATIONS THAT ELY, BURCHARD AND MATCHETT
          PUBLICLY CRITICIZED HIM CANNOT SUPPORT PLAINTIFF'S FIRST
          AMENDMENT CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    II.     DEFENDANTS ELY, BURCHARD AND MATCHETT ARE ENTITLED TO
          QUALIFIED IMMUNITY FOR HAVING DISSEMINATED ACCUSATIONS
          AGAINST PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    III.    ALTERNATIVELY, ELY AND BURCHARD ENJOY LEGISLATIVE
          IMMUNITY FOR ANY ALLEGED INVESTIGATION OF PLAINTIFF. . . . . 14

    IV.    DEFENDANTS ELY AND BURCHARD ARE ENTITLED TO DISMISSAL OF
          PLAINTIFF'S CLAIM THAT DEFENDANTS PARTICIPATED IN CLOSED
          MEETINGS WHICH EXCLUDED PLAINTIFF . . . . . . . . . . . . . . . . . . . . . 17

    V.     PLAINTIFF LACKS STANDING TO SUE ELY OR BURCHARD FOR
          ALLEGEDLY CREATING A THREATENING ATMOSPHERE FOR LOCAL
          BUSINESS PEOPLE WHO SUPPORT PLAINTIFF . . . . . . . . . . . . . . . . . . . 19

    VI.    PLAINTIFF'S ALLEGATION THAT OFFICER MATCHETT
          "ENCOURAGED" OFFICER HULL TO FILE A COMPLAINT AGAINST HIM
          CANNOT SUPPORT ANY OF PLAINTIFF'S CLAIMS . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Table of Authorities**

**Cases**                                                                                                                          **Page**

*Allen v. Wright*, 468 U.S. 737, 104 S. Ct. 3315 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009 (N.D. Ill. 2002) . . . . . . . . . . . . . . . 20

*Baghadadilian v. Libby*, 1994 WL 282292 (N.D. Ill. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bakalich v. Village of Bellwood*, 2006 WL 1444893 (N.D. Ill. 2006) . . . . . . . . . . . . . . . . . . . . 15

*Balcerzak v. City of Milwaukee*, 980 F. Supp. 983 (E.D. Wis. 1997) . . . . . . . . . . . . . . . . . . . . 15

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Biblia Abierta v. Banks*, 129 F.3d 899 (7th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Bogan v. Scott-Harris*, 523 U.S. 44, 118 S. Ct. 966 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 14-16

*Campbell v. Louisiana*, 523 U.S. 392, 118 S. Ct. 1419 (1998) . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Christensen v. County of Boone, Illinois*, 483 F.3d 454 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . 6

*Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. Aug. 3, 2007) . . . . . . . . . . . . 6

*Eastland v. United States Serviceman's Fund*, 421 U.S. 491, 95 S. Ct. 1813 (1975) . . . . . . . . 15

*Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 124 S. Ct. 2301 (2004) . . . . . . . . 19, 20

*Ellis v. Coffee County Board of Registrars*, 981 F.2d 1185 (11th Cir. 1993) . . . . . . . . . . . . . . . 15

*Footit v. Van De Hey*, 2005 WL 1563334 (E.D. Wis. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gregorich v. Lund*, 54 F.3d 410 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Henderson v. Morris*, 2006 WL 3328036 (W.D. Wis. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

### Table of Authorities Continued

**Cases**                                                            **Page**

*In re: African American Slave Descendants Litigation*, 375 F. Supp. 2d 721 (N.D. Ill. July 6, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Joseph Metz & Son, Inc. v. The Village of Lyons*, 2002 WL 243437 (N.D. Ill. 2002) . . . . . . . . 18

*Kelly v. Chambers, et al.*, 2007 WL 4293633 (N.D. Ill. December 6, 2007)(J.Aspen)     *passim*

*Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614 (7th Cir. Nov. 9, 2007) . . . . . . . . . . . 7

*Kiswani v. Phoenix Security Agency, Inc.*, 2008 WL 80756 (N.D. Ill., Jan. 2, 2008) . . . . . . . . 22

*Leftkovitz v. Wagner,* 395 F.3d 773 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130 (1992) . . . . . . . . . . . . . . . . 19, 20

*Mattox v. City of Forest Park*, 183 F.3d 515 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*McCalley v. City of Belvidere*, 1996 WL 734623 (N.D. Ill. 1996) . . . . . . . . . . . . . . . . . . . . . . . 18

*Mnyofu v. Bd. of Education*, 2007 WL 1308523 (N.D. Ill. Apr. 27, 2007) . . . . . . . . . . . . . . 7, 10

*Rakovich v. Wade*, 850 F.2d 1180 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Rascon v. Hardiman*, 803 F.2d 269 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Rateree v. Rockett*, 852 F.2d 946 (7th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Reed v. Village of Shorewood*, 704 F.2d 943 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rees v. Dahl*, 24 Fed. Appx. 907 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 11

*Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . 14

*Sangirardi v. Village of Stickney*, 1999 WL 1045223 (N.D. Ill. 1999) . . . . . . . . . . . . . . . . . . . 18

*Saucier v. Katz*, 537 U.S. 194, 121 S. Ct. 2151 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S. Ct. 1917, 48 L.Ed.2d 450 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## Table of Authorities Continued

**Cases**                                                                                 **Page**

*Suarez Corp. Indus. v. McGraw*, 202 F.3d 676 (4th Cir. 2000) . . . . . . . . . . . . . . . . . . 7, 8, 10, 12

*Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719,
    100 S. Ct. 1967 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Talley v. City of Chicago*, 2001 WL 1159241 (N.D. Ill. 2001) . . . . . . . . . . . . . . . . . . . . . . 8

*Tenney v. Brandhove*, 341 U.S. 367, 71 S. Ct. 783 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Villagrana v. Village of Oswego*, 2005 WL 2322808 (N.D. Ill. Sept. 22, 2005) . . . . . . . . . 8, 10

*Warth v. Seldin*, 422 U.S. 490, 95 S. Ct. 2197 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Wernsing v. Thompson*, 423 F.3d 732 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Whisby-Meyers v. Kiekenapp*, 293 F. Supp.2d 845 (N.D. Ill. 2003) . . . . . . . . . . . . . . . . . . 20

*Whitener v. McWatters*, 112 F.3d 740 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wilson v. Layne*, 526 U.S. 603, 119 S. Ct. 692 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Zisis v. St. Joseph Township of Allen County*, 979 F. Supp. 806 (N.D. Ind. 1997) . . . . . . . . . . 23


**Statutory Provisions**

735 ILCS sec. 110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Fed. R. Civ. P. 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Section 1982 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Section 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 14, 22, 23

iii

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICHARD R. FURSTENAU,                    )
                                         )
          Plaintiff,                     )    Case No.: 07-CV-6143
                                         )
     v.                                  )    Judge Norgle
                                         )    Magistrate Judge Brown
CITY OF NAPERVILLE, a municipal          )
Corporation; MICHAEL HULL, in his        )
individual and official capacity; DAVID  )    JURY TRIAL DEMANDED
DIAL, in his official and individual     )
capacity; MICHAEL CROSS, in his          )
individual and official capacity;        )
PETER BURCHARD, in his official and      )
individual capacity; MARGO ELY,          )
in her individual and official capacity, )
and JOE MATCHETT, in his individual      )
and official capacity.                   )
                                         )
          Defendants.                    )

**DEFENDANTS MARGO ELY, JOE MATCHETT, AND PETER BURCHARD'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S
THIRD AMENDED COMPLAINT PURSUANT TO F.R.C.P 12(b)(6)**

**BACKGROUND**

**I.     PLAINTIFF'S ORIGINAL SUIT AGAINST THE NAPERVILLE POLICE**

Plaintiff, an elected councilman for the City of Naperville, filed a four (4) count

complaint on October 31, 2007 against Naperville Police Chief David Dial, Detective Michael

Cross, and Police Officer Michael Hull (hereinafter "Police Defendants"), stemming from a

confrontation between Plaintiff and Officer Hull which occurred on January 1, 2006 shortly prior

to a New Year's Day parade in downtown Naperville (*See* Docket No. 1, Compl., p. 11, ¶ 27).

1

According to Plaintiff, Officer Hull falsely alleged that Plaintiff struck him in the chest when Plaintiff confronted him as to his authority for having cars towed that were parked near the parade route (*Id.*, pp. 10-12, ¶¶ 26-33). Plaintiff further alleged that Officer Hull conspired with Chief Dial and Detective Cross to have Plaintiff falsely charged with felony aggravated battery for striking Officer Hull (*Id.*, pp. 12-15, ¶¶ 34-48).[1]

Plaintiff was acquitted of battery after a stipulated bench trial (*Id.*, pp. 3-4, p. 16, ¶¶ 44, 48),[2] Plaintiff alleged in his original complaint that the Police Defendants conspired to have Plaintiff falsely charged and convicted of this crime in retaliation for Plaintiff's public stances against the police department on abuse of overtime, use of tasers, and "double dipping", which allows retired police officers to collect a pension, and then accept other paid positions with Naperville (*Id.*, pp. 6-10, ¶¶ 10-24).

## II.    PLAINTIFF'S AMENDED COMPLAINT AGAINST HIS DETRACTORS

Six weeks after filing his complaint, Plaintiff filed an amended complaint on December 13, 2007, naming as additional defendants (movants herein) Naperville City Attorney Margo Ely, former Naperville City Manager Peter Burchard, and Naperville Police Officer Joe Matchett, who is also President of the Naperville Fraternal Order of Police (*See* Docket No. 17, Am. Compl., pp. 6-7, ¶¶ 6-8). The amended complaint alleged that, in retaliation for Plaintiff's suit against the Police Defendants, Burchard authored a public "open letter" to local media outlets

---

[1] Plaintiff was charged with misdemeanor battery after the DuPage County State's Attorney's office declined felony charges (*See* Docket No. 17, Am. Compl., pp. 16-17, ¶ 41).

[2] In announcing the acquittal, the presiding judge stated that "[t]here's no wrong or inappropriate behavior shown by Officer Hull. In fact, he probably demonstrated restraint", and "I think what occurred was embarrassing, inappropriate" (*See* Transcript of Proceedings of May 27, 2007 hearing in 06 CM 302, pp. 35-36, attached as Ex. A).

which falsely disparaged Plaintiff (*Id.*, p. 19, ¶¶ 51-52). Specifically, Plaintiff alleged that this letter "blasted Plaintiff for events as old as 2003", and falsely claimed "that Plaintiff had admitted to Burchard that [Plaintiff] may have tapped Officer Hull." *Id.*

Plaintiff similarly alleged that Defendant Matchett, President of the Naperville Fraternal Order of Police union, also authored an "open letter" to the media which defamed Plaintiff "by, *inter alia*, falsely claiming that Plaintiff battered Officer Hull" (*Id.*, p. 20, ¶¶ 57).

Finally, Plaintiff alleged that Defendant Ely also penned an "open letter" to the media where "she falsely stated that the allegations against Plaintiff contained in Defendant Burchard's 'open letter' were undisputed by Plaintiff" (*Id.*, p. 20, ¶¶ 56). Plaintiff also alleged that Ely approached individuals she perceived as sympathetic to Plaintiff who have projects which require City Council approval, and told these business people that, if they continued to support Plaintiff, they would not get City Council approval for their projects (*Id.*, p. 20, ¶¶ 55).[3]

### III.    PLAINTIFF ATTEMPTS TO WITHDRAW HIS FIRST AMENDED COMPLAINT AND FILE A SECOND AMENDED COMPLAINT

On January 9, 2008, movants filed a motion to dismiss Plaintiff's amended complaint (*See* Dkt. No. 34). The motion to dismiss asserted that Plaintiff's allegations against Defendants Ely, Matchett and Burchard were legally frivolous, and failed to state a cause of action.[4]

Specifically, movants argued that Plaintiff's contention that movants' letters were

---

[3] Defendant Ely accepted that allegation as true solely for purposes of Defendants' motion to dismiss.

[4] Defendants also contemporaneously served, but did not file, a motion for sanctions upon Plaintiff's counsel under Rule 11. In addition to the arguments raised in the motion to dismiss, Defendants' proposed motion for sanctions argued that the amended complaint was brought for an improper purpose, specifically to harass and intimidate movants, unnecessarily duplicate the proceedings, and needlessly increase the cost of litigation.

authored in retaliation for Plaintiff's exercise of his First Amendment right to pursue litigation on

matters of public concern was legally frivolous, as the federal courts have consistently held that

such actions are not actionable under Section 1983. *See, e.g., Kelly v. Chambers, et al.*, 2007

WL 4293633 (N.D. Ill. December 6, 2007)(J. Aspen). Defendants further argued that they were,

at a minimum, entitled to qualified immunity for having written such letters, as the law was not

clearly established that public criticism of a public official under the circumstances Plaintiff

described was unconstitutional.

Defendant Ely further argued that Plaintiff lacked standing to present an allegation on

behalf of local business people whom Plaintiff claimed Ely had allegedly threatened.

Rather than defend against movants' motions to dismiss and for sanctions, Plaintiff filed

a motion for leave to file a second amended complaint on January 28, 2008. On January 29th,

this Honorable Court entered an order granting movants' motion to dismiss Plaintiff's amended

complaint without prejudice, and denying Plaintiff's motion for leave to file a second amended

complaint. (*See* Dkt. No. 41, Order of January 29, 2008). The Court further granted Plaintiff

leave to file a third amended complaint which was to comply with Fed. R. Civ. P. 8(a)(2).

## IV.    PLAINTIFF'S THIRD AMENDED COMPLAINT

Plaintiff filed a third amended complaint on February 11, 2008 (*See* Dkt. No. 42),

which contains the same allegations originally asserted against the Police Defendants, but adds

additional allegations against movants.[5]

With respect to Defendant Matchett, Plaintiff has stubbornly restated his allegation that

Matchett "published a letter which falsely stated that Plaintiff had been arrested in 2006 for

---

[5] Defendants Dial, Cross, and Hull have answered the Third Amended Complaint.

"contact" with a police officer, and falsely accused Plaintiff of misconduct with Police in other incidents" (*See* Third Am. Compl., pp. 8-9, ¶ 28(j)).  Plaintiff has further alleged for the first time that Officer Matchett "directed, instigated, assisted in, participated in, and/or encouraged [his] false arrest" because, with "no legitimate role to play in the 'investigation'", he "nonetheless encouraged Defendant Hull to sign the complaint that initiated the false arrest of Furstenau" (*Id.* p.4, ¶17).  Finally, Plaintiff alleges, "upon information and belief", that Matchett searched Police files for complaints about Plaintiff, and then publicly disseminated such records, in order to intimidate, threaten, punish, embarrass, and discredit Plaintiff (*Id.*, p.7, ¶28 (c)).

With respect to Defendants Ely and Burchard, Plaintiff has withdrawn his initial allegation that the "open letters" written by Ely and Burchard violated his First Amendment rights.  Instead, Plaintiff now alleges that Defendants Ely and Burchard, in concert with others:

(a) Orchestrated and participated in illegal meetings on important public issues that unlawfully excluded [Plaintiff] and the public;

(b) Investigated Plaintiff's conduct as both a private citizen and council member over at least the last five years;

(c) Searched police files for and publicly disseminated complaints about Plaintiff;

(d) Directed City staff to submit complaints which were publicly disseminated, though many of them were false or inadequately investigated;

(e) Directed City staff to prepare and submit complaints concerning Plaintiff's conduct at meetings in November and December, 2007 with the intent that such memos would be publicly disseminated without regard to whether the memos were true;

(f) Personally implemented the public dissemination of complaints and other documents,

including Naperville Police records, containing allegations deemed to be intimidating, threatening, embarrassing, and/or discrediting to Plaintiff;

(g) Orchestrated the censure of Plaintiff for allegations of misconduct that were false and unproven, without affording Plaintiff the opportunity to meaningfully confront the allegations;

(h) Orchestrated the making of false accusations that Plaintiff was using his council member's position for "personal gain" and to "promote his private enterprise";

(i) Researched and took other steps to implement Plaintiff's recall from public office; and

(k) created an atmosphere in which supporters of Plaintiff who did business with the City would be "outed", so that their projects would receive less favorable attention, with the result being that these actions were perceived as threatening by at least one supporter of Plaintiff with business before the City (*Id.*, pp.7-9, ¶28 (a)-(k)).

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted. In considering a motion to dismiss, the court accepts all facts in the complaint as true and draws all reasonable inferences in plaintiffs' favor. *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7th Cir. 2007). To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to give the defendant fair notice of the claim and to suggest plausibly that the plaintiff has a right to relief above the speculative level. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. Aug. 3, 2007), *interpreting Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). Although this standard does "not require heightened fact pleading of specifics," it does require the complaint to contain "enough facts to state a claim to relief that is plausible on its face."

*Killingsworth v. HSBC Bank Nevada, N.A.,* 507 F.3d 614, 618 (7th Cir. Nov. 9, 2007), *citing Bell*

*Atlantic Corp.*, 127 S. Ct. at 1974.

**ARGUMENT**

I.    **PLAINTIFF'S ALLEGATIONS THAT ELY, BURCHARD AND
      MATCHETT PUBLICLY CRITICIZED HIM CANNOT SUPPORT
      PLAINTIFF'S FIRST AMENDMENT CLAIM**

Though Plaintiff has withdrawn his allegations against Defendants Ely and Burchard

based upon their public letters criticizing him, he has again sued them for publicly criticizing

him, albeit in somewhat different verbiage from his last Complaint.  Even assuming such

allegations are true, they still fail to state a First Amendment claim.

The federal courts have consistently held that not every action by a public official

allegedly taken in retaliation for an individual's exercise of First Amendment rights is actionable

under Section 1983.  *See Kelly v. Chambers, et al.*, 2007 WL 4293633 (N.D. Ill. December 6,

2007)(J.Aspen); *see also Rees v. Dahl*, 24 Fed. Appx. 907, 911 (10th Cir. 2001); *Suarez Corp.*

*Indus. v. McGraw*, 202 F.3d 676, 686-88 (4th Cir. 2000);  *Mnyofu v. Bd. of Education*, 2007 WL

1308523, at *3 (N.D. Ill. Apr. 27, 2007).  Whether a particular retaliatory act is actionable under

the First Amendment "is a fact intensive inquiry that focuses on the status of the speaker, the

status of the retaliator, the relationship between the speaker and the retaliator, and the nature of

the retaliatory acts." *Suarez*, 202 F.3d at 686.  "The nature of the alleged retaliatory acts has

particular significance where the public official's acts are in the form of speech.  Not only is

there an interest in having public officials fulfill their duties, a public official's own First

Amendment speech rights are implicated." *Id.* at 687.

The court in *Suarez* found that "courts have declined to find that a [defendant's] actions

7

have adversely affected a [plaintiff's] exercise of [her] First Amendment rights where the [defendant's] alleged retaliatory acts were criticism, false accusations, or verbal reprimands." *Id.* at 686. Moreover, "where a public official's alleged retaliation is in the nature of speech, in the absence of a threat, coercion or intimidation intimating that punishment, sanction or adverse regulatory action will imminently follow, such speech does not adversely affect a citizen's First Amendment rights, even if defamatory." *Id.* at 687; *Villagrana v. Village of Oswego*, 2005 WL 2322808, at 3-4 (N.D. Ill. Sept. 22, 2005). The basis for this rule is recognition "that a balance must be struck between the citizen's right to exercise his First Amendment rights and the public official's personal First Amendment rights, as well as [the public official's] duty to the public to speak out about matters of public concern." *Suarez*, 202 F.3d at 688 n.13.

Against that backdrop, Plaintiff's claim that Ely, Burchard and Matchett retaliated against Plaintiff through the public dissemination of misconduct allegations against Plaintiff must fail. All such allegations share the common nucleus that Plaintiff is claiming injury from the public dissemination of complaints of misconduct. However, it is well established that "the right to criticize public officials is at the heart of the First Amendment" and is a matter of "great public concern". *Talley v. City of Chicago*, 2001 WL 1159241, *2 (N.D. Ill. 2001).

The court of appeals' decision in *Colson v. Grohman*, 174 F.3d 498 (5th Cir. 1999) is illustrative. The *Colson* court held that allegations that a police chief and other city officials retaliated against a former city council member by knowingly making false accusations against her in public, pressuring the county attorney to issue formal charges, and instituting a recall effort were not actionable adverse action sufficient to support a First Amendment retaliation claim.

Similarly, in *Mattox v. City of Forest Park*, 183 F.3d 515 (6th Cir. 1999), a former city

8

council member sued several city officials for First Amendment retaliation based on publication

of a report and video which were unflattering to the council member, and which were released

shortly before her unsuccessful bid for re-election.  In rejecting plaintiff's claim, the Court held:

> As an elected public official, (plaintiff) voluntarily placed herself open to criticism of her
> actions and views on political matters.  A deliberate attempt to discredit (plaintiff),
> especially if initiated in retaliation for her actions in investigating the fire department, is
> perhaps an inappropriate and unfortunate occurrence, but is not the type of "adverse
> action" against which the First Amendment protects.  It is not equivalent to being fired by
> a government employer for expressing protected views.  We do not think it would deter a
> public official of ordinary firmness from exercising his or her right to speak under the First
> Amendment.  Public officials may need to have thicker skin than the ordinary citizen when
> it comes to attacks on their views. *Id.* at 522.

Just a few months ago, Judge Aspen dismissed a strikingly similar claim in *Kelly v.*

*Chambers, et al.*, 2007 WL 4293633 (N.D. Ill. December 6, 2007)(J.Aspen).  In *Kelly*, the

plaintiff, also an elected trustee in a suburban municipality, alleged that the police chief, other

board members, and the town President, retaliated against her for her vocal criticism of the local

police department's treatment of citizens and increasing cost to taxpayers.  The alleged acts of

retaliation included the untimely writing of a police report implicating the plaintiff in obstructing

a police officer, initiation of an investigation into the police officer's allegations against the

plaintiff, and a letter from a public safety committee directing the plaintiff to respond to the

officer's allegations *Id.* at *2-3.  In dismissing the claim of retaliation which was premised upon

the demand that plaintiff respond to the officer's allegations of obstruction, Judge Aspen

explained that because the speech contained in the Committee's demand "was at least of the same

magnitude as [p]laintiff's speech criticizing Oakwood Hills and the [police] Department (*Id.* at 8),

in the absence of a "threat, coercion, or intimidation intimating that punishment, sanction, or

adverse regulatory action will imminently follow, such speech does not affect a citizen's First

9

Amendment rights, even if defamatory". *Id., citing Villagrana, supra,* 2005 WL 2322808 at 3-4.

Similarly, Judge Aspen concluded that the police chief's participation in the initiation of a fact-

finding probe by allegedly slandering the plaintiff at a Village Board meeting "[amounted] to pure

speech, and under *Villagrana*, entitles him to qualified immunity." *Id.*[6]   *See also Rees v. Dahl*, 24

Fed. Appx. 907 (10th Cir. 2001) (rejecting claim by former attorney to local radioactive waste

board that Board filed replevin action against him in retaliation against his public criticism of the

Board regarding internal management and other issues related to superfund sites); *Mnyofu v.*

*Board of Ed.*, 2007 WL 1308523 (N.D. Ill. 2007) (dismissing claim that school district was hostile

to parent, instituted policies restricting citizen participation in Board meetings, and failed to stop

heckling of parent, in retaliation for parent's vocal criticisms of board); *Villagrana v. Village of*

*Oswego*, 2005 WL 2322808 (N.D .Ill. 2005)(J. Lefkow) (explaining that police officers' false and

disparaging statements advocating that sheriff's officer be sanctioned or dismissed after she

accused them of improper conduct is constitutionally protected).

   *Suarez* and its progeny illustrate the irony inherent in recognizing a cause of action in

favor of a public official seeking to use the First Amendment as a sword to silence his detractors.

Yet, that is precisely what Plaintiff, an elected councilman for the city of Naperville, seeks to

accomplish by suing city employees who have dared to publicly challenge him regarding

--------------------------------------------------

   [6] The only retaliation claim that Judge Aspen declined to dismiss was based on the
allegation that a police officer generated an untimely false police report concerning plaintiff more
than two months after her encounter with the officer, and on the same day in which the plaintiff's
criticisms of the police department appeared in a local newspaper *See Kelly,* 2007 WL 4293633
at *9-10. In compliance with *Kelly*, the Naperville police defendants in this matter have each
filed an Answer to Plaintiff's Third Amended Complaint which contain allegations that he was
arrested, charged, and prosecuted in retaliation for his criticism of the police department.

allegations of misconduct.  As in *Kelly* and the authorities cited above, the alleged acts undertaken

by Ely and Burchard, and the letter written by Officer Matchett, cannot even remotely be

considered to contain a threat, coercion or intimidation.  As a result, their public statements

concerning Plaintiff, and their alleged efforts to locate, generate, and/or disseminate complaints

about Plaintiff constitute protected conduct which cannot form the basis of a First Amendment

retaliation claim.  Moreover, given that the allegations were undertaken against Plaintiff in his

position as an elected official, such acts cannot be said to be the kind of speech which would deter

a public official of ordinary firmness from pursuing his lawsuit against the police Defendants. *See*

*Rees v. Dahl*, *supra*, 24 Fed. Appx at 911.  Indeed, Plaintiff's multitude of public comments since

the allegations of misconduct surfaced denouncing virtually everyone in Naperville City

Government, announcing plans to sue additional defendants who disagree with him, and

confirming his commitment to this litigation, speak volumes as to whether any of movants'

alleged acts had any impact whatsoever on his plans to continue forward with this case (*See* online

section to Naperville Sun Newspaper at www.suburbanchicagonews.com/napervillesun/index,

e.g., December 14, 2007 article *"Naperville Officials Added to Furstenau's Suit"*).

    It is important that the federal courts stand ready to protect the First Amendment rights of

individuals who are punished by way of police action, adverse employment decisions, threats, and

the like, in retaliation for exercising First Amendment rights to expose corruption, speak on

unpopular causes, or publicly challenge those in positions of authority.  However, the Constitution

is undoubtedly trivialized when public officials attempt to use the First Amendment as a sword to

sue and silence all those who publicly oppose them on public controversies, and then threaten to

sue others who might follow suit (*See, e.g.*, December 14, 2007 Naperville Sun online article).  In

11

a recent decision, the court dismissed a similar retaliation claim by holding that, as plaintiff was

an elected official, whether defendants' act of reporting possible illegal conduct by plaintiff to the

district attorney was retaliatory or not was irrelevant. *See Footit v. Van De Hey*, 2005 WL

1563334, at 3-6 (E.D. Wis. 2005).[7]

Movants' criticism of Plaintiff was undertaken in a public forum which Plaintiff, as an

elected Councilman, has made liberal use of.  Under the above cited authorities, movants' alleged

dissemination of misconduct complaints against Plaintiff which they either received or solicited

from City staff (Am. Compl. ¶28 (b), (d), (e), (f), and (h)), or located in Naperville Police files,

(¶28 (c) and (j)), do not rise to the level of actionable conduct.  If it were otherwise, any candidate

for public office would be open to suit for publishing accusations against a political opponent.

Accordingly, Defendants Ely, Burchard, and Matchett are entitled to dismissal of subparagraphs

(b), (c), (d), (e), (f), (h), and (j) of paragraph 28 with prejudice.

## II.   DEFENDANTS ELY, BURCHARD AND MATCHETT ARE ENTITLED TO QUALIFIED IMMUNITY FOR HAVING DISSEMINATED ACCUSATIONS AGAINST PLAINTIFF

Under principles of qualified immunity, public officials performing discretionary functions

are shielded from damages lawsuits insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable official would have known.  *Hope v.*

*Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 2515 (2002); *Wernsing v. Thompson*, 423 F.3d 732, 742

(7th Cir. 2005).  A defendant's entitlement to qualified immunity is a question of law for the court.

---

[7] The state of Illinois recently enacted the Citizen Participation Act, which is an anti-SLAPP statute designed to prevent deep pocketed litigants from suing citizens in order to discourage citizen participation in government. (*See* 735 ILCS sec. 110).  Federal decisions such as *Suarez, supra*, and its progeny similarly ensure that litigants do not misuse the First Amendment as a sword to silence their opponents from speaking their minds.

*Rakovich v. Wade*, 850 F.2d 1180, 1202 (7th Cir. 1988). Such defense can appropriately be considered in a motion to dismiss. *See Kelly, supra*, 2007 WL 4293633 (N.D. Ill. Dec. 6, 2007).

The qualified immunity analysis involves a two part equation: whether the plaintiff has alleged the deprivation of an actual constitutional right, and, if so, whether the right was clearly established. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S. Ct. 692, 1697 (1999). The latter inquiry is fact specific and "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 537 U.S. 194, 201-02, 121 S. Ct. 2151, 2156 (2001).

Qualified immunity occupies a prominent place in First Amendment retaliation litigation. While it is clearly established that retaliation against citizens for exercising their free speech rights can violate the First Amendment, a determination as to whether a particular form of conduct can support a First Amendment claim is often far from clear. Thus, the Seventh Circuit has observed:

> Differences in the nature of the competing interests from case to case make it difficult for a government official to determine in the absence of case law that is very closely analogous whether the balance that he strikes is an appropriate accommodation of the competing individual and governmental interests....Government officials are not expected to be prescient and are not liable for damages simply because they legitimately but mistakenly believed that the balancing of interests tipped in the State's favor. .... Thus, in such circumstances, 'the facts of the existing case law must closely correspond to the contested action before the defendant official is subject to liability.

*Gregorich v. Lund*, 54 F.3d 410, 414-15 (7th Cir. 1995).

Against that backdrop, Officer Matchett's authoring of a letter expressing his views on various matters of public concern regarding Plaintiff, and City Attorney Ely and City Manager Burchard's public dissemination of accusations against Plaintiff, himself an elected City Council member, are undeniably protected under the umbrella of qualified immunity. Indeed, research has uncovered not a single analogous case which could even arguably be read to support the

proposition that Matchett's authoring of the subject letter, or the searching for, solicitation of, and

public dissemination of complaints regarding Plaintiff, might subject Defendants to liability for a

civil rights violation.  To the contrary, the plethora of analogous case law cited above at pp. 6-12,

*supra,* sends the unmistakable message that qualified immunity applies. *See, e.g., Kelly, supra.*

### III.    ALTERNATIVELY, ELY AND BURCHARD ENJOY LEGISLATIVE IMMUNITY FOR ANY ALLEGED INVESTIGATION OF PLAINTIFF

Defendants Ely and Burchard are entitled to legislative immunity for their investigation of

Plaintiff.  Specifically, Plaintiff alleges that Ely and Burchard, along with others, solicited

misconduct complaints against him from City staff, searched City files for other misconduct

complaints, orchestrated a City Council censure of Plaintiff, and took other steps to discredit and

embarrass Plaintiff. (*See* Third Am. Compl., pp. 10-12).

When sued in their individual capacities, local legislators are entitled to absolute

legislative immunity from Section 1983 liability for "all actions taken 'in the sphere of legitimate

legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 53, 118 S. Ct. 966 (1998); *Rateree v.

Rockett*, 852 F.2d 946, 948, 949 (7th Cir. 1988)(citing *Reed v. Village of Shorewood*, 704 F.2d

943, 952-53 (7th Cir. 1983)).  "Whether an act is legislative turns on the nature of the act, rather

than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54-55.

Legislative immunity entails a functional approach which focuses on the nature of the

duties with which a government official has been entrusted and the effect that exposure to

particular forms of liability would likely have on the appropriate exercise of those functions.

*Rateree*, 852 F.2d at 950.  In other words, the court must look to the function an individual

performs rather than his location within a particular branch of government. *Id.*, at 951; *Romero-*

14

*Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 28-29 (1st Cir. 1996).  As a result, Defendant Ely, as

City Counsel for the City of Naperville, and Peter Burchard, as City Manager, enjoy the same

legislative immunity as those they serve. *See Bogan*, 523 U.S. 44, at 55 (officials outside the

legislative branch are entitled to legislative immunity when they perform legislative functions);

*Eastland v. United States Serviceman's Fund*, 421 U.S. 491, 506-508, 95 S. Ct. 1813 (1975)("the

day to day work of [legislative] aides is so critical to the member's performance that they must be

treated as the member's alter egos...."); *Henderson v. Morris*, 2006 WL 3328036 (W.D. Wis.

2006)(under *Bogan*, city attorney and mayor enjoy legislative immunity when engaged in activity

directed towards passing of city ordinance); *Bakalich v. Village of Bellwood*, 2006 WL 1444893

(N.D. Ill. 2006)(J. Filip)(mayor enjoys legislative immunity for acts related to passage of

ordinance); *Ellis v. Coffee County Board of Registrars*, 981 F.2d 1185, 1192 (11th Cir. 1993).[8]

The Supreme Court has long deemed legislative investigations under the umbrella of

legislative immunity protection. *Tenney v. Brandhove*, 341 U.S. 367, 71 S. Ct. 783 (1951)(holding

that allegations that members of a state senate sub-committee held a hearing "not for a legislative

purpose", but in order to "intimidate and silence" a state senator, were barred by legislative

immunity because "[i]nvestigations, whether by standing or special committees, are an established

part of representative government." *Id.* at 377-78).  In addition, "[a] legislative body's discipline

of one of its members," has been identified as "a core legislative act" covered by the legislative

---

[8] Defendant Ely's entitlement to legislative immunity as legal counsel to the city council in connection with censure and recall issues is further supported by decisions recognizing quasi-judicial immunity for city attorneys who serve as counsel to police boards. *See Balcerzak v. City of Milwaukee*, 980 F. Supp. 983, 987 (E.D. Wis. 1997)(recognizing that city attorneys who advise police boards act in the role of quasi-law clerks, so leaving such individuals exposed to suit when the persons they serve are absolutely immune, would undermine the judicial immunity doctrine).

privilege in a similar case. In *Whitener v. McWatters*, 112 F.3d 740, 741-44 (4th Cir. 1997), the

Fourth Circuit held that legislative immunity barred a county board member's civil rights

challenge to his censure by the board for making inappropriate comments to two of his fellow

board members because a local legislative body's disciplining of one of its own is part of the

means by which a legislative body ensures its orderly functioning and "institutional integrity".

Legislative immunity applies even to statements made "maliciously with the intent to

publicly harm..." since it is "the nature of the act, rather than...the motive or intent of the official

performing it," that determines whether an act is legislative. *Bogan*, 523 U.S. at 53, 118 S. Ct.

966. Such immunity is necessary, as "[p]rivate lawsuits threaten to chill zealous representation by

encouraging legislators to avoid controversial issues or stances in order to protect themselves 'not

only from the consequences of litigation's results but also from the burden of defending

themselves.'" *Biblia Abierta v. Banks*, 129 F.3d 899, 903 (7th Cir. 1997), quoting *Supreme Court

of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 731, 100 S. Ct. 1967 (1980).

The Seventh Circuit's comments in *Biblia Abierta* are particularly prescient when applied

to the present matter. Plaintiff has made it clear by virtue of his suit against the City attorney, the

former City manager, and the president of the police union, and by his and his counsel's public

comments, that all who dare to oppose him risk civil litigation and a claim for punitive damages

(*See, e.g.*, December 14, 2007 Naperville Sun online article). At bottom, Plaintiff's allegations

about movants searching files for complaints against Plaintiff and soliciting staff employees to

lodge such complaints, derive from the Naperville City Council's censure of him for inappropriate

behavior in his position as a Naperville City Council member. As explained above, a legislative

body's public censure of one of its members is a quintessential legislative act. As a result,

16

Defendants Ely and Burchard are entitled to absolute legislative immunity for their alleged roles

in "orchestrating the censure", and for "researching and taking other steps to implement the recall

of Plaintiff from public office" (*See* Third Amended Compl., ¶28 (g) and (i)).

It must also follow, therefore, that any acts taken during the investigation by Ely and

Burchard are likewise covered by the legislative privilege, as such acts were inextricably linked to

the City Council's censure of Plaintiff. *See Biblia Abierta*, 129 F.3d at 903 (explaining that

legislative immunity has been granted for activities that could not give rise to liability without

inquiry into legislative acts and the motives behind them, and activities essential to facilitating or

preventing the core legislative process). Requesting staff and other City employees to gather

allegations of misconduct against Plaintiff, a City Council member, researching how to recall an

elected official, and "orchestrating" a censure of Plaintiff, are all activities which cannot give rise

to liability without inquiry into the legislative acts of the Naperville City Council, and such

activities are essential to the City Council facilitating the self disciplining of one of its members.

As such, Defendants are entitled to absolute legislative immunity for the acts alleged in all sub-

paragraphs to paragraph 28, with the exception of the allegations contained in subparagraph

(j)(allegation against Matchett for writing an "open letter", which is addressed in section I) and

subparagraph (k)(allegation against Ely and Burchard for creating a threatening atmosphere,

which is addressed in section V, below).

## IV.    DEFENDANTS ELY AND BURCHARD ARE ENTITLED TO DISMISSAL OF PLAINTIFF'S CLAIM THAT DEFENDANTS PARTICIPATED IN CLOSED MEETINGS WHICH EXCLUDED PLAINTIFF

In subparagraph (a) to paragraph 28, Plaintiff alleges that Defendants Ely and Burchard

violated his (and the public's) First Amendment rights and the Illinois Open Meetings Act by

17

holding closed meetings on "public" issues. Plaintiff does not describe the "public issues" that were discussed without him, the individuals who were present at such meetings, or by what authority Plaintiff claims inclusion into such meetings, or how his rights were allegedly violated by being excluded. As such, the allegation that Plaintiff was wrongfully excluded from such meetings must necessarily fail for failing to state a viable claim. Moreover, as such closed meetings were described, albeit in somewhat cursory fashion, as having been held in violation of the City's ordinances and in violation of the Illinois Open Meetings Act, it follows that the meetings were undertaken as part of the legislative process. As such, Defendants Ely and Burchard also enjoy legislative immunity for allegedly partaking in these meetings.

In *Joseph Metz & Son, Inc. v. The Village of Lyons*, 2002 WL 243437 (N.D. Ill. 2002)(J. Aspen), the Court found that promulgation of legislation by a village president and village trustees allegedly enacted in violation of the Illinois Open Meetings Act was protected by absolute immunity. *Id.*, at *7. Similarly, in *McCalley v. City of Belvidere*, 1996 WL 734623, at *10 (N.D. Ill. 1996), the Court dismissed similar allegations of violations of the Illinois Open Meetings Act in relation to the passage of a city ordinance relative to a pending real estate development project. The Court held that absolute immunity barred any claim against those alleged to have participated in illegal closed meetings prior to passage of the ordinance, as "[i]t is not the propriety of the conduct which determines the availability of absolute immunity but whether such conduct was legislative. The holding of closed meetings by various council members for the purpose of considering the proposed development falls within the definition of legislative process." *See also Sangirardi v. Village of Stickney*, 1999 WL 1045223 (N.D. Ill. 1999)(members of police board enjoyed judicial immunity for decision to terminate police officer, though plaintiff alleged that the

18

Board violated the Open Meetings Act in the process of terminating him).

As the closed council meetings were allegedly undertaken in violation of the Illinois Open Meetings Act and City ordinances, the meetings must be considered to be a part of the legislative process of the City, and Defendants Ely and Burchard are thus entitled to legislative immunity for their alleged involvement therein. Subparagraph (a) to paragraph 28 must therefore be dismissed.

## V.    PLAINTIFF LACKS STANDING TO SUE ELY OR BURCHARD FOR ALLEGEDLY CREATING A THREATENING ATMOSPHERE FOR LOCAL BUSINESS PEOPLE WHO SUPPORT PLAINTIFF

In paragraph 28, subparagraph (k), Plaintiff alleges that Defendants Ely and Burchard created an atmosphere such that local business persons who support Plaintiff would be "outed", with the consequence that their business matters would receive less favorable city council attention. Plaintiff alleges that this atmosphere contributed to and continued the campaign of petty harassment against him, which has violated his First Amendment rights to speak on matters of public significance and to participate meaningfully in City government.

Assuming, arguendo, that such allegations are true, (and they are accepted as such solely for purposes of this motion to dismiss), Plaintiff clearly does not have standing to present them as a basis for a First Amendment retaliation claim. Standing jurisprudence, as the Supreme Court has explained, contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-62, 112 S. Ct. 2130 (1992); and prudential standing, which embodies " 'judicially self-imposed limits on the exercise of federal jurisdiction'". *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315 (1984); *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11-12, 124 S. Ct. 2301 (2004). As the *Lujan* Court put it, there are three elements of Article III standing: injury in fact, a causal connection

19

between the injury and the defendant's conduct, and likely redressability through a favorable

decision. 504 U.S. at 560-61. Prudential standing is somewhat harder to define, but the Court in

*Newdow* "explained that prudential standing encompasses '*the general prohibition on a litigant's*

*raising another person's legal rights*, the rule barring adjudication of generalized grievances more

appropriately addressed in the representative branches, and the requirement that a plaintiff's

complaint fall within the zone of interests protected by the law invoked.'". (emphasis added) 542

U.S. at 12. *See also, Warth v. Seldin*, 422 U.S. 490, 508-10, 95 S. Ct. 2197 (1975).

In other words, the plaintiff must allege an actual or threatened injury to himself that is

likely to be redressed by a favorable decision. *See Simon v. Eastern Kentucky Welfare Rights*

*Organization*, 426 U.S. 26, 38, 96 S. Ct. 1917, 48 L.Ed.2d 450 (1976). One generally cannot sue,

other than in a representative capacity, to enforce a right that belongs to someone else. *Leftkovitz*

*v. Wagner*, 395 F.3d 773, 776 (7th Cir. 2005). If individual rights cannot be vindicated, the right

to claim relief rests only on the rights of third parties, or the decision will merely address the

generalized interests of concerned bystanders, the plaintiff lacks standing to sue. *See Whisby-*

*Meyers v. Kiekenapp*, 293 F. Supp.2d 845, 853 (N.D. Ill. 2003)(J.Kennelly)(plaintiffs must have

actual injury to themselves under Section 1982 to bring a claim for violation of minority property

rights statute). This also means that mere indignation does not suffice to establish standing. *See*

*Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1014 (N.D. Ill. 2002).

The Supreme Court has held that there is only a very narrow basis for a party to be able to

assert the rights of an absent party to the litigation. In *Campbell v. Louisiana*, 523 U.S. 392, 118

S. Ct. 1419 (1998), the Supreme Court held that a plaintiff may assert the constitutional claims of

a third party if the plaintiff can demonstrate: (1) injury to the plaintiff, (2) a close relationship

20

between the plaintiff and the third party that would cause plaintiff to be an effective advocate for

the third party's rights, and (3) some hindrance to the third party's ability to protect his or her own

interests." *Id.*, at 397; *see also In re: African American Slave Descendants Litigation*, 375 F.

Supp. 2d 721 (N.D. Ill. July 6, 2005)(J. Norgle).

In the present matter, Plaintiff does not allege that he is acting in a representative capacity

on behalf of the unidentified alleged local businesspeople toward whom he claims Defendants Ely

and Burchard's behavior has created a threatening atmosphere. This deficiency alone should have

put Plaintiff's counsel on notice that he did not have a viable claim, as there is no allegation that

these businesspeople are unable to bring a claim against Ely and Burchard themselves if they truly

thought Ely and Burchard had engaged in any conduct which threatened their projects as a result

of any alleged support of Plaintiff. Moreover, Plaintiff cannot, and indeed does not, allege any

particular injury to himself which is attributable to Defendants Ely and Burchard's alleged

creation of a threatening atmosphere. Accordingly, subparagraph (k) of paragraph 28 to Plaintiff's

third amended complaint should be likewise be stricken, and Defendants Ely and Burchard should

be dismissed from Plaintiff's third amended complaint with prejudice.

### VI.    PLAINTIFF'S ALLEGATION THAT OFFICER MATCHETT "ENCOURAGED" OFFICER HULL TO FILE A COMPLAINT AGAINST HIM CANNOT SUPPORT ANY OF PLAINTIFF'S CLAIMS

Plaintiff contends that Defendant Matchett, as president of the local police union, directed,

instigated, assisted in, participated in, and/or encouraged his alleged false arrest because he

"encouraged" Defendant Hull to sign the complaint that led to Plaintiff's arrest. Plaintiff claims

this encouragement violated Plaintiff's First, Fourth and Fourteenth Amendment rights (Counts I,

II, and III), and supports a state common law claim for malicious prosecution (Count IV).

21

Assuming, arguendo, that such allegation is true, (and it is accepted as such solely for purposes of this motion to dismiss), Plaintiff has nonetheless failed to allege that this encouragement was directly responsible for Officer Hull having signed a criminal complaint against Plaintiff, and that without such encouragement, Officer Hull would not have sworn out a criminal complaint against Plaintiff. The absence of such an allegation is fatal because, were it otherwise, a federal cause of action could be had whenever an officer merely encouraged or advised a fellow officer to follow a particular course of action.

Section 1983 creates a cause of action based upon personal liability and predicated upon fault. In cases involving supervisory officials, the Seventh Circuit has consistently held "[w]ithout a showing of direct responsibility for the improper action, liability will not lie against a supervisory official." *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986). Similarly, without any allegation that Officer Hull would not have signed a sworn complaint for Plaintiff's arrest without the "encouragement" of Officer Matchett, Plaintiff's Fourth and Fourteenth Amendment claims against Officer Matchett must fail. *See Baghadadilian v. Libby*, 1994 WL 282292, at *3 (N.D. Ill. 1994)(J. Marovich) (a citizen does not "cause or procure" an arrest unless the citizen directs the officer to make the arrest or provides information that is the sole basis for the arrest).

Similarly, to succeed on his state law malicious prosecution claim, Plaintiff must demonstrate that Officer Matchett either 1) instituted the proceedings against the plaintiff, 2) knowingly made false statements to the police, or 3) requested, directed, or pressured the officer into swearing out the complaint for the plaintiff's arrest (on the Defendant's behalf). *See Kiswani v. Phoenix Security Agency, Inc.*, 2008 WL 80756, at *6-7 (N.D. Ill., Jan. 2, 2008)(J. Denlow).

In the present matter, Plaintiff does not allege that Officer Matchett instituted the case

against him; indeed, Officer Matchett is not alleged to have been the victim or eyewitness to the incident between Plaintiff and Officer Hull. Moreover, there is no allegation that Officer Matchett made any false statements to the investigating detective, that Officer Matchett had any responsibility for investigating Officer Hull's claim, or was, in any way, responsible for having Defendant Cross present Officer Hull to a judge in order to swear out a complaint. Simply stated, the bare allegation of a non-victim providing encouragement to another cannot even remotely be considered to equate with the direct responsibility necessary for liability under either Section 1983 or Illinois common law. *See also Zisis v. St. Joseph Township of Allen County*, 979 F.Supp. 806, 812-13 (N.D. Ind. 1997) (plaintiff's perception that defendant was "out to get him" and his speculation that defendant encouraged another to contact the local sheriff so as to set in motion the events which led to plaintiff's arrest deemed clearly insufficient as a basis for a false arrest claim). Defendant Matchett is thus entitled to dismissal of Counts I, II, III, and IV with prejudice.

## CONCLUSION

Plaintiff's aggressive, but ill-conceived strategy, to convert a common police case into a vehicle for Plaintiff to litigate against all who disagree with or criticize him, is unsupported by law and should fail. For the foregoing reasons, Defendants Ely, Matchett, and Burchard respectfully request that this Honorable Court enter an Order dismissing them from Plaintiff's Third Amended Complaint with prejudice and with costs assessed.

Dated: March 4, 2008                    s/James G. Sotos
                                        James G. Sotos, One of the Attys for the Defendants
                                        JAMES G. SOTOS & ASSOCIATES
                                        550 East Devon, Suite 150
                                        Itasca, Illinois 60143
                                        (630) 735-3300
                                        (630) 773-0980 (fax)
                                        jsotos@jsotoslaw.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned having first been duly sworn under oath, states that he electronically filed a complete copy of the foregoing **Defendants Margo Ely, Joe Matchett, and Peter Burchard's Memorandum of Law in Support of Their Joint Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to F.R.C.P. 12(b)(6)** with the Clerk of the Court on **March 4, 2008,** using the CM/ECF system, which will send notification of such filing to the following counsel of record:  see attached Service List.

s/James G. Sotos
James G. Sotos, Attorney No. 06191975
One of the attorneys for Defendants
JAMES G. SOTOS & ASSOCIATES
550 East Devon, Suite 150
Itasca, Illinois 60143
(630) 735-3300
(630) 773-0980 (fax)
jsotos@jsotoslaw.com

24

## SERVICE LIST

## RICHARD FURSTENAU V. CITY OF NAPERVILLE, ET AL.
### CASE NO.: 07-CV-6143

**ATTORNEYS FOR PLAINTIFF:**

**John A. Sopuch III**
The Collins Law Firm
1770 N. Park Street, Suite 200
Naperville, IL 60563
(630) 527-1595
E-mail: jsopuch@collinslaw.com

**Edward John Manzke**
The Collins Law Firm
1770 N. Park Street, Suite 200
Naperville, IL 60563
(630) 527-1595
E-mail: ejmanzke@collinslaw.com

**Shawn Michael Collins**
The Collins Law Firm
1770 N. Park Street, Suite 200
Naperville, IL 60563
(630) 527-1595
E-mail: smc@collinslaw.com

**Aaron W. Rapier**
The Collins Law Firm
177 N. Park Street, Suite 200
Naperville, IL 60563
(630) 527-1595
E-Mail: arapier@collinslaw.com

**ATTORNEYS FOR DEFENDANTS:**

**Richard Thomas Sikes, Jr.**
Freeborn & Peters
311 South Wacker Drive, Suite 300
Chicago, IL 60606
(312) 360-6000
E-mail: rsikes@freebornpeters.com

**Terrence J. Sheahan**
Freeborn & Peters
311 South Wacker Drive, Suite 300
Chicago, IL 60606
(312) 360-6000
E-mail: tsheahan@freebornpeters.com

**Terry A. Ekl and Vincent C. Mancini**
Ekl Williams PLLC
Two Arboretum Lakes
901 Warrenville Road, Suite 175
Lisle, IL 60532
(630) 654-0045
E-mail: tekl@eklwilliams.com

**Audrey Lane Brodick**
Freeborn & Peters
311 South Wacker Drive, Suite 300
Chicago, IL 60606
(312) 360-6000
E-mail: abrodrick@freebornpeters.com

25