# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **RICHARD R. FURSTENAU,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07 C 6143 |
| ) | |
| **CITY OF NAPERVILLE**, a municipal ) | The Honorable Charles R. Norgle |
| corporation; **MICHAEL HULL,** ) | |
| in his individual and official capacity; ) | Magistrate Judge Geraldine Soat Brown |
| **DAVID DIAL,** in his individual and official ) | |
| capacity; **MICHAEL CROSS**, in his ) | |
| individual and official capacity; ) | JURY TRIAL DEMANDED |
| **PETER BURCHARD**, in his individual ) | |
| and official capacity; **MARGO L. ELY**, ) | |
| in her individual and official capacity; ) | |
| and **JOE MATCHETT**, in his individual ) | |
| and official capacity, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## CITY OF NAPERVILLE'S MOTION TO DISMISS

Shawn M. Collins
Edward J. Manzke
John A. Sopuch III
Aaron W. Rapier
Julie B. Anderson
THE COLLINS LAW FIRM, P.C.
1770 North Park Street
Suite 200
Naperville, Illinois 60563
(630) 527-1595

# I.    INTRODUCTION

Plaintiff Furstenau has sued the City of Naperville ("City") for civil rights violations (Counts I-III), including *inter alia*, for false arrest, and (in Count III) for a retaliatory campaign to punish him for engaging in protected speech, including his filing of this civil rights lawsuit. Counts I-III are brought under 42 U.S.C. § 1983; Count IV is for malicious prosecution brought under state law.

While the City prays generally for dismissal of the Third Amended Complaint, its brief argues only for a partial dismissal of Furstenau's case.[1]   The City offers no argument for dismissal of Furstenau's malicious prosecution claim (Count IV), thus conceding the legal sufficiency of those allegations.

As for the § 1983 claims (Counts I-III), the City is plainly wrong in its centerpiece contention that Furstenau's allegations — i.e., that the City deprived him of his Constitutional rights by operation of a "policy," "custom" or "individual with policy-making authority" — are legally inadequate for failing to offer more specifics as to each.  The City cannot impose on § 1983 plaintiffs like Furstenau a pleading standard more demanding than that for other federal court plaintiffs.  This was explicitly rejected by the United States Supreme Court fifteen years ago, in its 1993 *Leatherman v. Tarrant County* decision, and thereafter by the Seventh Circuit and trial courts of this District, which, in reliance on *Leatherman*, have deemed sufficient to state a § 1983 claim allegations virtually identical to Furstenau's.

The City is also wrong in its contention that its own Police Chief (Defendant Dial) cannot be a "final policymaking authority" – and that the City's Manager must be – concerning the unlawful criminal investigation and false arrest claimed by Furstenau in Counts I-III.  To begin with, the Seventh Circuit (in *McGreal v. Ostrov*, 2004) has already rejected the principle argument that the City makes here, i.e., that a chief of police cannot be a final policymaker under Illinois law.  Moreover, the allegations, evidence and applicable ordinances establish that the City's Police Chief must be a final policymaker, as the Chief (and not the City Manager) ordered Furstenau's investigation and arrest; the Chief (and not the City Manager) is exclusively vested by City ordinance with the "responsib[ility] for the performance of the police department"; the

---

[1]   At Footnote 2 to its brief, the City purports to incorporate within its filing "the entirety" of the 24-page brief of Defendants Ely, Matchett and Burchard, filed in support of their separate motion to dismiss.  Plaintiff objects to this "incorporation," and asks that the Court not allow it, as it would afford the City, in effect, a 39-page brief that it was not given leave to file.

Chief (and not the City Manager) is exclusively vested by ordinance with the authority to issue "orders" to those police officers who performed the investigation of Furstenau and effected his arrest; and the City Manager claims to have had nothing to do with either, i.e., he has denied that he even "discussed with the Police Chief bringing criminal charges against" Furstenau.

The City also incorrectly claims that Furstenau's Complaint does not adequately identify any other final policymaker whose conduct – including its retaliatory conduct alleged in Count III – is attributable to the City. In Count III, not only does Furstenau allege that former City Manager Burchard orchestrated a campaign of harassment against Furstenau through the direct engagement of City staff and other resources, but the City's own ordinances further establish that, as he was doing this, Burchard was responsible for the "proper administration of all affairs of the City."

Finally, the City is not entitled to dismissal of Furstenau's Count II Equal Protection claim, i.e., that the City (and others) falsely arrested him "in bad faith," and "intentionally treated Furstenau differently from others similarly situated." The United States Supreme Court upheld allegations virtually identical to those set forth in Furstenau's Complaint in *Olech v. Village of Willowbrook*.

For these reasons, and those recited throughout this brief, the City's motion should be denied.

## II.    LEGAL STANDARDS

It is well settled that on a motion to dismiss "the court accepts all well-pleaded factual allegations as true, as well as all reasonable inferences drawn from those allegations." *O'Brien v. City of Chicago*, No. 92-C-7738, 1993 WL 116757, at *1 (N.D. Ill. Apr. 15, 1993) (Norgle, J.). A complaint should be construed liberally and must "not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief." *Euroholdings Capital & Inv. Grp. v. Harris Trust & Sav. Bank*, No. 05-C-1181, 2005 WL 3180186, at *2 (N.D. Ill. Nov. 22, 2005) (Norgle, J.). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Id.*

Section 1983 cases are held to no higher of a pleading standard. *Leatherman v. Tarrant County Narcotics Intell. & Coord. Unit*, 507 U.S. 163 (1993) (finding that § 1983 *Monell* claims are not subject to "heightened pleading standards"); *Simpson v. Nickel*, 450 F.3d 303, 306 (7th

Cir. 2006) (finding in a first amendment retaliation case that "there are no heightened pleading requirements for suits under [§ 1983]"). A plaintiff does not need to establish or even plead facts, but instead "receives the benefit of any fact that could be established later consistent with the complaint's allegations." *Id.*

## III.    ARGUMENT

### A.    The City Has Not Moved To Dismiss The Complaint's Count IV (Malicious Prosecution), And Therefore Concedes The Sufficiency Of Those Allegations

While the City's motion generally prays for a dismissal of the Third Amended Complaint ("Complaint"), its brief makes dismissal arguments directed to only three of the four counts in which the City is a defendant. The City's brief addresses the Complaint's § 1983 claims in Counts I-III, but is virtually silent as to Furstenau's claim for malicious prosecution in Count IV. Indeed, the arguments which the City makes as to Counts I-III, i.e., an alleged failure to satisfy *Monell* requirements (*see* City's Memorandum of Law, Docket No. 53, "Brief," at 6-13) and to allege an equal protection claim (*Id.* at 13-14), invoke standards that do not even apply to malicious prosecution claims. *See Bergstrom v. McSweeney*, 294 F. Supp. 2d 961, 968 (N.D. Ill. 2003) (finding that "unlike, [plaintiff's] section 1983 claims, his Illinois state-law claims can be brought against Metra under *respondeat superior*.").

As a result, the City concedes the sufficiency of the allegations of Count IV. *See* Fed. R. Civ. P. 8(d).

### B.    Furstenau Has Satisfied Pleading Requirements As To The City

#### 1.    Furstenau need not identify a specific policy, custom or final policymaking authority

In each of his § 1983 claims (Counts I-III), Furstenau makes essentially the same allegation, i.e.:

> Defendant City of Naperville acted pursuant to an official policy, custom, or decision of an individual with final policy-making authority, when it proximately caused the deprivation of Furstenau's [constitutional] rights.

(Third Amended Complaint "TAC" at pars. 36, 44 and 53)[2]

---

[2]    In Count II, Furstenau additionally identifies the final policymaking authority for that Count as Naperville's Police Chief, Defendant David Dial. (*Id.* at par. 44)

The City demands dismissal of Counts I-III, arguing that this allegation fails to identify with enough specificity the policy, custom or individual with policymaking authority. (Brief at 2; 6-13)

The City's motion should be denied because Furstenau is not required to allege any more than he has. Furstenau's allegations are more than sufficient at this stage in the litigation. In fact, the sufficiency of virtually identical allegations has been expressly approved by the Seventh Circuit and other courts in this district. *See McCormick v. City of Chicago*, 230 F. 3d 319, 324-325 (7th Cir. 2000) (finding that plaintiff's complaint, with a "smattering of phrases like 'highest policymaking officers' and 'widespread custom'" was sufficient to "put the City on notice of his claim against it."); *Flemister v. Cook County*, No. 04-C-1424, 2006 WL 408108, at *3 (N.D. Ill. Feb. 15, 2006) (finding complaint's allegation that "the attack resulted from either an express Cook County policy, widespread custom or deliberate act of a decision-maker with final authority," was sufficient "under the liberal federal notice pleading regime, …to establish a § 1983 claim against Cook County."); *Moncivaiz v. DeKalb County*, No. 03-C-50226, 2004 WL 539994, at *1 (N.D. Ill. Mar. 12, 2004) (finding that although "the complaint simply states 'all of the actions of the defendants…were done pursuant to a state policy or practice,'" the allegation was sufficient, as while complaint "does not provide any detail, detail is not required"); *McNeal v. Cook County Sheriff's Dept.*, 282 F. Supp. 2d 865, 869 (N.D. Ill. 2003) ("Here, Mr. McNeal alleges that [t]he attack resulted from either an express municipal policy, widespread custom, or a deliberate act of a decision-maker with final policy-making authority. Under the liberal federal notice pleading regime outlined in *McCormick,* these allegations are sufficient to state a cause of action under section 1983 against Sheriff Sheahan in his official capacity.").

Indeed, that Furstenau should not be held to a heightened pleading standard for specificity is particularly appropriate as this Court, in dismissing (without prejudice) Furstenau's Amended Complaint and denying (without prejudice) his motion for leave to file a second amended complaint, emphasized to Furstenau his obligations under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" requirement, noting that:

> FRCP 8(a)(2) indicates that a complaint should contain 'a short and plain statement of the claim showing that the pleader is entitled to relief[.]' This 'short and plain statement' requires a plaintiff to allege no more than 'the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer.' 'Usually [plaintiff] need do no more than narrate a grievance simply and directly, so that the defendant knows what

he has been accused of.' A plaintiff therefore should not include 'an exhaustive recitation of the facts or elements of the claim' in the complaint.

Order dated January 29, 2008, Docket No. 41.

Accordingly, under applicable Seventh Circuit and Northern District case law, as reinforced by this Court's Order of January 29, 2008, Furstenau has adequately met the pleading requirements for his § 1983 claims against the City.

**2.    Should he be required to do so, Furstenau has adequately identified a final policymaking authority**

While Furstenau asserts (see above) that he need not identify with specificity the "policy, custom or individual with final policy-making authority" alleged in Counts I-III, should this Court determine that he is required to do so, Furstenau has in fact done so.

### *Chief Dial is a Final Policymaking Authority Concerning the Criminal Investigation and Arrest of Furstenau*

Furstenau has alleged that Defendant Police Chief Dial is an individual with final policymaking authority who ordered police officers in his charge to (a) undertake a criminal investigation that was "pre-determined to bring false charges" against Furstenau, and (b) effect Furstenau's false arrest. (TAC at par. 18).

Dial's status as final policymaking authority regarding the investigation and arrest of Furstenau is established, *inter alia*, by a City ordinance which declares the Naperville Police Chief to be "responsible for the performance of the police department" – a department which includes Dial and each of the officers named as Defendants in this case (Hull, Cross and Matchett) – and also declares that each of these three (and indeed all) Naperville Police officers "shall serve subject to [Dial's] orders." (*Id.* at par. 19). Here is that Ordinance:

**1-8A-2:  CHIEF OF POLICE; DUTIES:**

Duties Of The Chief Of Police: The chief of police shall be the keeper of the city jail, and shall have custody of all persons incarcerated therein. He shall keep records and make reports concerning the activities of the department as may be required by statute or by the city council. The chief shall be responsible for the performance of the police department, and all persons who are members of the department shall serve subject to his orders. The chief shall also be the custodian of all lost and abandoned or stolen property in the city.

*See* Brief, at Ex. 2.

The language of this Ordinance, *inter alia*, clearly demonstrates that Dial is the chief policymaker with respect to Furstenau's false arrest allegations against the City. *See McGreal v. Ostrov*, 368 F.3d 657, 686 (7th Cir. 2004). *See also Eversole v. Steel*, 59 F. 3d 710, 716 (7th Cir. 1995) (finding that Indiana statute – that "[t]he police chief has exclusive control of the police department" which is strikingly similar to City of Naperville ordinance that "[t]he chief shall be responsible for the performance of the policy department, and all persons who are members of the department shall serve subject to his orders" – was sufficient to convey final policymaking authority upon the police chief); *Zook v. Brown*, 865 F. 2d 887, 895 (7th Cir. 1989) (finding that rule authorizing sheriff to take disciplinary measures against his employees made him a final policymaker on the subject of discipline); *Johns v. Town of E. Hampton*, 942 F. Supp. 99, 106 (E.D.N.Y. 1996) (finding that police chief was final policymaker for the City when he chose to condone police misconduct toward minors and selectively ignore civilian complaints); *Coleman v. Rance*, No. Civ.A.4:96CV21-D-B, 1997 WL 170316 (N.D. Miss. Mar. 24, 1997) (finding that police chief was acting as a final policymaker when he chose not to punish officers in his department who violated plaintiff's constitutional rights).

In arguing for dismissal, the City claims that a half-sentence from one of its ordinances — stating that the City Manager approves "rules and regulations" for police department "personnel" — is proof that, "as a matter of law, the City Manager, not Chief Dial, has final policymaking authority" here. (Brief at 12-13)  However, the question is not, as the City implies, one of generalized authority concerning police "personnel," but rather:  Who had the final policymaking authority to direct the conduct put at issue by the Complaint, i.e., ***the criminal investigation and arrest of Furstenau***?  *See McMillian v. Monroe County*, 520 U.S. 781, 785 (1997) ("The question is not whether Sheriff Tate acts for Alabama or Monroe County in some categorical, 'all or nothing' manner.  Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue"); *see also DeGenova v. Sheriff of DuPage County*, 209 F.3d 973 (7th Cir. 2000) (same).

Under the facts here, the City's own ordinances, the law and common sense, final policymaking authority over criminal investigations and arrests must reside at least in Chief Dial, and not, as the City argues, exclusively in the City Manager.  Indeed, the City Manager at the time of Furstenau's criminal investigation and arrest (Defendant Burchard), in response to

Furstenau's request for admission in this case, denied that, prior to Furstenau's arrest, he even "discussed with Police Chief Dial bringing criminal charges against" Furstenau.[3]  *See* Responses to Plaintiff's First Set of Requests for Admission to Peter Burchard, No. 9, attached as Exhibit A. It defies common sense to suggest that the City Manager has exclusive, final policymaking authority over criminal investigations and arrests, and yet had not a single conversation with the Police Chief concerning an investigation and arrest so consequential as that of a sitting member of the City Council.

Of course, Burchard's denial of involvement is perfectly in keeping with the fact that no ordinance affords the City Manager power over criminal investigations and arrests.  For example, the City has cited no ordinance, and Furstenau is aware of none, that declares any other person or entity—including the City Manager and City Council—to be, as the Police Chief is declared by ordinance to be, "responsible for the performance of the police department" or authorized to give "orders" to Naperville's Police officers that those officers "shall" obey.  *See* Naperville Municipal Code, sec. 1-8A-2, cited in the Third Amended Complaint, at ¶ 19, attached to the City's Brief, as Ex. 2.

Similarly, the City cites no ordinance, and Furstenau is aware of none, that authorizes any other person or entity to instigate criminal investigations and arrests.[4]

Thus, it also defies common sense to suggest that a Police Chief does not have final policymaking authority over a criminal investigation and arrest that he has ordered his own officers to undertake, on the claim that such authority exclusively resides in someone else (the City Manager) who is not a law enforcement official, and who also has no power to "order" those officers to do anything.  No case cited by the City comes close to reaching such a non-sensical conclusion.  For example, in *Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992) (cited by the City at pp. 11 and 12 of its Brief), the Court did not hold that the City of Chicago's

---

[3]  "Federal court pleading standards are so lenient that, on appeal, the Seventh Circuit will allow an appellant to present facts which were not in the district court record-or an 'unsubstantiated version of the events'-to demonstrate that the district court should not have dismissed the complaint." *O'Brien v. City of Chicago*, No. 92-C-7738, 1993 WL 116757, at *1 (Norgle, J.) (citing *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992)). *See also Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir.1992) (finding that a party may defend against a motion to dismiss by alleging facts in its brief in opposition to the motion).  As a result, the Court may consider this admitted fact in its consideration of the current motion.

[4]  Indeed, while the other ordinance cited by the City (*see* Exhibit 1 to its Brief) exhaustively lists the "powers and duties" of the City Council, none of them addresses the authority to instigate criminal investigations and arrests.

Superintendent of Police could never be a policymaker, but merely that he was not a final policymaker for the narrow purpose of the allegedly discriminatory hiring policies.[5]   The Seventh Circuit Court of Appeals acknowledged this limitation on the Court's holding in *Auriemma* in *McGreal v. Ostrov*, 368 F.3d 657 (7th Cir. 2004) ("[Defendants] rely on *Auriemma* and *Horwitz*, for the proposition that, under Illinois law, neither a police chief nor a village president are final policymakers.  Neither case supports that proposition.").

Accordingly, if Furstenau is required to identify a "final policymaking authority" respecting his false arrest allegations against the City, he should be credited for having done so. It is Defendant Dial.

### City Manager Burchard is a final policymaking authority concerning Furstenau's retaliation allegations

In Count III, Furstenau alleges that the City retaliated against him for his expression of protected speech, including the filing of this civil rights lawsuit. (TAC at, e.g., pars. 26-30 and 50-53)  Furstenau further alleges that, in this retaliation, the City "acted pursuant to an official policy, custom, or decision of an individual with final policy-making authority." (*Id.* at 53)

As Furstenau demonstrates above (at pp. 4-6), at this stage of the litigation, he need not identify with any more specificity than he has this alleged policy, custom or policymaker. *See, e.g., McCormick v. City of Chicago*, 230 F. 3d 319, 324-325 (7th Cir. 2000).  Nevertheless, if this Court determines that Furstenau was required to make such identification, his allegations, coupled with relevant City ordinances and admissions, establish Defendant Burchard, the City's former Manager, as a "final policymaking authority" whose decisions in the retaliatory campaign against Furstenau are attributable to the City.

For example, while he was City Manager, Defendant Burchard is alleged to have orchestrated a retaliatory campaign of harassment against Furstenau, which included, *inter alia*, conducting a selective and unlawful investigation of Furstenau; directing that false complaints be

---

[5]   Defendant's other cases also fail to support the argument for dismissal. *See, e.g., Lyttle v. Lillackey*, No. 07-C-1406, 2007 WL 4162811, at *8 (N.D. Ill. Nov. 20, 2007), where the plaintiff failed to identify the alleged policymaking officials who delegated responsibility to the officers; plaintiff did, on the other hand (TAC ¶¶ 19 and 20); and failed to plead facts supportive of the assertion that the unidentified officials that delegated said authority had final policymaking authority to delegate in the first instance; again, Furstenau has alleged exactly that (TAC ¶ 20); *Toney v. Burris* and *Wyrick v. City of Chicago*, are either not in controversy (i.e., per *Toney*, the Court may take judicial notice of the Naperville ordinances without converting the motion to one for summary judgment – Furstenau agrees) or irrelevant (*Wyrick* did not address whether a high level employee had final policymaking authority).

brought against him; and selectively applying City ordinances against Furstenau. (TAC at, e.g., par. 28)  Moreover, that Burchard was undertaking these actions on behalf of the City as its final policymaking authority in these areas is established by applying the City's own argument to the Municipal Code; i.e., that, "under the council manager form of government," (Brief at p. 12) "the City Manager shall be the chief administrative officer of the City.  He shall be responsible to the City Council for the proper administration of all affairs of the City."  (*See* Naperville Municipal Code, sec. 1-6A-5, attached as Exhibit B.)

Accordingly, if Furstenau is required to identify a "final policymaking authority" respecting his retaliation allegations against the City, he has done so.  It is Defendant Burchard.

## C.    Furstenau Has Adequately Pled An Equal Protection Claim (Count II)

In Count II, Furstenau alleges that, in arresting him without probable cause, the City "intentionally treated [him] differently from others similarly situated, in violation of" Furstenau's Constitutional rights. (TAC at par. 40)  He further alleges that this "differential treatment" was "without rational basis, or based upon Defendants' wholly illegitimate animus toward Furstenau" (*Id.* at par. 41), and was "undertaken in bad faith and either with the intent to deprive Furstenau of his rights, or with reckless and callous disregard for, and deliberate indifference to, Furstenau's constitutional rights." (*Id.* at par. 43)   This conduct "proximately caused" the deprivation of Furstenau's Constitutional rights. (*Id.* at pars. 42, 44)

The City wants this Count dismissed as its allegations fail to "identify the 'similarly situated' group." (Brief at 13-14)  However, this is no reason for dismissal.  The City argues, in pp. 13-14 of its brief that Furstenau must identify the parties to whom it is "similarly situated," in order to state a "class of one" claim under the Equal Protection Clause of the Constitution.  *See* Brief, at p. 13 ("Plaintiff is required to allege that 'the government is treating unequally those individuals who are *prima facie* identical in all relevant respects, and that the cause of the different treatment is a totally illegitimate animus toward the plaintiff by the defendant,'" *citing Levenstein v. Salafsky*, 414 F.3d 767, 775-76 (7th Cir. 2005)).

The detail the City seeks, however, is not necessary at the pleading stage, where Furstenau merely needs to put the City on notice of his claim.  *Levenstein v. Salafsky*, cited by the City, was decided at the summary judgment stage, and is not useful in determining what Furstenau must allege.  In fact, the Seventh Circuit had previously reviewed the **pleadings** in *Levenstein v. Salafsky*, 164 F.3d 345, 352-53 (7th Cir. 1998) ("*Levenstein I*"), and held the

opposite of what Defendant argues to this Court. In the Seventh Circuit's review of the pleadings in *Levenstein I*, the court rejected the defendants' argument that the plaintiff must identify the parties similarly situated to himself: "at this stage of the litigation, [plaintiff] is not obligated to gather the kind of factual support the…defendants believe is lacking."[6]

That a plaintiff is not required, at the pleading stage, to identify the parties who are similarly situated to him, was emphasized by the United States Supreme Court in the case of *Olech v. Village of Willowbrook*, 528 U.S. 562 (2000). In *Olech*, the Supreme Court found that plaintiffs' simple allegations that defendant intentionally treated them differently from other similarly situated property owners was sufficient to state an equal protection clause class of one case. *See also Doe v. Bd. of Trustees of Univ. of Ill.*, 429 F. Supp. 2d 930. 943 (N.D. Ill. 2006) ("[D]efendants argue that he failed to identify any similarly situated individuals who were treated better than he was. A plaintiff is not required, however, to specifically identify similarly situated individuals in his complaint").

## D.   Furstenau Is Not Seeking Punitive Damages Against The City

The City contends that Furstenau is seeking punitive damages against the City (Brief at 2, 14-15), apparently because Furstenau has prayed for punitive damages, "as allowed by law." (TAC at p. 13) However, as punitive damages against the City are not "allowed by law," Furstenau does not seek them from the City.

---

[6]   The City's other cases are not helpful either. For example, in *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078-79 (7th Cir. 2005), plaintiff identified a group "similarly situated" to which he could not have belonged (i.e., "other police officers who retire after careers untarnished by official disciplinary action"), because he had been relieved of his duties previously for defrauding the Town of Cicero out of tens of thousands of dollars. Based upon the Court's earlier finding that plaintiff was not "untarnished," but actually discharged for misconduct, the Court could easily conclude that plaintiff was, in fact, not similarly situated to the persons he identified. In *Messner v. Calderone*, No. 07-C-0893, 2007 WL 1832116, at *3 (N.D. Ill. June 25, 2007), the plaintiff simply failed to identify that others were similarly situated and to plead that others similarly situated were treated differently—a circumstance not present here.

## CONCLUSION

For the reasons stated in this brief, Plaintiff respectfully requests that the Motion to Dismiss of Defendant City of Naperville be denied in its entirety.

Dated: March 26, 2008

Respectfully submitted,
**RICHARD R. FURSTENAU**


By:  s/ Shawn M. Collins
     One of Plaintiff's Attorneys

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of **Plaintiff's Brief in Opposition to City of Naperville's Motion to Dismiss** was electronically served on all counsel of record as a result of the CM/ECF filing of this document, on March 26, 2008:

By:  s/ Shawn M. Collins                                    
One of Plaintiff's Attorneys

Shawn M. Collins
Edward J. Manzke
John A. Sopuch III
Aaron W. Rapier
Julie B. Anderson
THE COLLINS LAW FIRM, P.C.
1770 N. Park Street
Suite 200
Naperville, Illinois 60563
(630) 527-1595