UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **RICHARD R. FURSTENAU,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 6143 |
| | ) | |
| **CITY OF NAPERVILLE**, a municipal | ) | The Honorable Charles R. Norgle |
| corporation; **MICHAEL HULL,** | ) | |
| in his individual and official capacity; | ) | Magistrate Judge Geraldine Soat Brown |
| **DAVID DIAL,** in his individual and official | ) | |
| capacity; **MICHAEL CROSS**, in his | ) | |
| individual and official capacity; | ) | JURY TRIAL DEMANDED |
| **PETER BURCHARD**, in his individual | ) | |
| and official capacity; **MARGO L. ELY,** | ) | |
| in her individual and official capacity; | ) | |
| and **JOE MATCHETT**, in his individual | ) | |
| and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS
OF DEFENDANTS ELY, MATCHETT AND BURCHARD

Shawn M. Collins
Edward J. Manzke
John A. Sopuch III
Aaron W. Rapier
Julie B. Anderson
THE COLLINS LAW FIRM, P.C.
1770 North Park Street, St. 200
Naperville, Illinois 60563
(630) 527-1595

# I.
# INTRODUCTION

Defendants' motion should be denied because it ignores altogether 25 years of federal court decisions (many from the 7th Circuit) which explicitly authorize Furstenau's First Amendment retaliation claims, and which provide that the actionability of those claims under 42 U.S.C. § 1983 is a "question of fact," inappropriate for resolution on a Fed. R. Civ. P. 12(b)(6) motion.[1]

Furstenau alleges that, in retaliation for his criticism of City police and the filing of this civil rights lawsuit, Defendants waged a "campaign of petty harassment" against him. This "campaign" included, *inter alia*: shutting Furstenau out of important meetings; denying him participation in the government to which he was elected to serve; singling him out for unwarranted investigation, including a search of police records; selectively and unlawfully applying standards of conduct to him but to no one else; and orchestrating the filing of false complaints by others against him.

With these allegations, Furstenau has explicitly invoked a well-established line of "campaign of petty harassment" case law, which began no later than 1982 with Judge Posner's opinion in *Bart v. Telford*. These cases recognize that the acts of defendants' retaliatory "campaign" must be examined collectively, rather than in isolation from one another, because "an entire campaign of harassment…though trivial in detail may have been substantial in gross." Accordingly, federal courts have refused to dismiss allegations of defendant misconduct--alleged to be part of a retaliatory "campaign"--which are far less serious than Furstenau has alleged here, *e.g.*, ridicule for bringing a birthday cake to work; issuance of $35 in parking tickets; and disrupting a trip to Disney World.

Consequently, Defendants' boast that there "is not a single analogous case which could even arguably be read to support" the actionability of Furstenau's claims is, to be charitable, false. In fact, there are many dozens of such cases, more than 30 of which are identified in this brief. These cases furnished Defendants far more than "reasonable warning" that their retaliatory "campaign" was violating Furstenau's Constitutional rights, and thus compellingly foreclose any claim to "qualified immunity."

Defendants' motion should also be denied because it depends upon a gross and improper trivialization of Furstenau's allegations. Defendants pretend as though they are accused only of the noble "public criticism of an elected official," and thus that their conduct must be judged by the

---

[1] Throughout this brief, moving Defendants Ely, Matchett and Burchard are referred to collectively as "Defendants."

1

most generous legal standard. However, not only is there no legal protection available for the recklessly false speech (including assertions of Furstenau's criminal conduct) in which Defendants are alleged to have engaged, but most of their misconduct was in the form of action, involving no speech at all, *e.g.*, shutting Furstenau out of important meetings; depriving him of the right to participate in government, and conducting an unlawfully selective investigation of him. Because Defendants have invoked Fed. R. Civ. P. 12(b)(6) standards here, Furstenau's allegations of a retaliatory "campaign" -- comprised overwhelmingly of Defendants' actions -- must be taken as true, and cannot be ignored, or mischaracterized into non-existence.

Finally, Defendants' claims: of legislative immunity for Defendants Ely and Burchard; that Furstenau has no standing to sue for the "threatening" environment created by certain Defendants; and that Defendant Matchett is not alleged to have done anything wrong, all must fail, for they all depend either upon inferences improperly drawn in Defendants' favor, or upon a characterization of Furstenau's Complaint that is bluntly contradicted by the Complaint's own allegations.

Therefore, for the reasons set forth, Defendants' motion to dismiss should be denied.

## II.
## LEGAL STANDARDS

It is well settled that on a motion to dismiss "the court accepts all well-pleaded factual allegations as true." *O'Brien v. City of Chicago*, No. 92-C-7738, 1993 WL 116757, *1 (N.D. Ill. 1993) (Norgle, J.) The Court "is not required to accept defendants' characterization of the alleged facts," but instead must draw all reasonable inferences in plaintiff's favor. *Id*; *Miller v. Material Sciences Corp.*, 9 F. Supp. 2d 925, 928 (N.D. Ill. 1998). A complaint should be construed liberally and must "not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief." *Euroholdings Capital & Inv. Grp. v. Harris Trust & Sav. Bank*, No. 05-C-1181, 2005 WL 3180186, *2 (N.D. Ill. Nov. 22, 2005) (Norgle, J.). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Euroholdings Capital & Inv. Grp.*, 2005 WL 3180186, at *2.

First Amendment retaliation cases are not held to any higher of a pleading standard, and must be afforded the same liberal interpretations of notice pleading in confronting a motion to dismiss. *Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir. 2006) (finding in a First Amendment retaliation case that "there are no heightened pleading requirements for suits under [§ 1983]" and

that a First Amendment retaliation plaintiff does not need to establish or even plead facts, but instead "receives the benefit of any fact that could be established later consistent with the complaint's allegations.") Moreover, as is particularly pertinent here, when a plaintiff's retaliation claim is based upon a defendant's "campaign of petty harassment," whether such a campaign rises to the level of actionability is a "question of fact" not to be decided on a Rule 12(b)(6) motion. *See Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982).

## III.
## PERTINENT ALLEGATIONS
### Defendants' Retaliatory "Campaign of Petty Harassment"

According to Furstenau's allegations, Defendants in 2007 sought to punish him in retaliation for, *inter alia,* his public criticism of Naperville's police, and filing of this civil rights lawsuit claiming that the City and its police had falsely arrested him. (Third Amended Complaint, "TAC" at ¶¶ 26-27). Furstenau's speech here is First Amendment-protected. (*Id.* at ¶ 27)

Defendants' retaliation against Furstenau took the form of a "campaign of petty harassment," comprised of an interconnected series of "malicious" and "bad faith" actions. (*Id.* at ¶¶ 28-29) Defendants' retaliatory campaign included, *inter alia:*

(1) excluding Furstenau from "meetings on important public issues," thus directly depriving him of his "First Amendment right to speak on matters of public significance" (*Id.* at ¶¶ 28(a) and 29(a));

(2) depriving Furstenau of his right "to participate meaningfully" in Naperville city government (*Id.* at ¶ 29(a));

(3) conducting a selective and unwarranted investigation (*i.e.,* no other councilmember or person was investigated) into Furstenau's conduct, *inter alia,* as a private citizen. (*Id.* at ¶¶ 28(b) and (c));

(4) selectively enforcing a city ordinance against Furstenau (*Id.* at ¶ 28(g));

(5) selectively applying standards of conduct to Furstenau (*Id.*);

(6) orchestrating the filing of false complaints of misconduct against Furstenau by others, without adequate regard for the complaints, truth or falsity (*Id.* at ¶¶ 28(b) and (d)-(f)); and

(7) making false public accusations of Furstenau's having engaged in criminal, and potentially criminal misconduct (*Id.* at ¶ 28(h) and (j)).

These retaliatory actions "are likely to chill a person of ordinary firmness from exercising his First Amendment rights and …as intended, have in fact so chilled Furstenau." (*Id.* at ¶ 30).

## ARGUMENT

A. **Furstenau Has Alleged A Retaliatory Campaign Of Petty Harassment; Its Actionability Presents A Question Of Fact Not Resolvable On A 12(b)(6) Motion**

Defendants do not dispute (for purposes of this motion) that Furstenau's public criticism of the police and the filing of this civil rights lawsuit are First Amendment-protected activities. They similarly do not dispute that the misconduct of which they are accused constitutes a "campaign of petty harassment," which was undertaken in retaliation for Furstenau's exercise of his First Amendment rights.

Instead, Defendants claim that their retaliatory misconduct is not actionable, because it is nothing more than "criticism of a public official." (*see* Defendants' Memorandum of Law, Docket No. 56, "Brief" at 7-12). As mentioned above, however, that is a gross mischaracterization of Furstenau's allegations, which plainly allege ***much more*** than mere speech: shutting Furstenau out of important meetings; depriving him of meaningful participation in government; and selectively and unlawfully investigating him are not speech, and Defendants' persistent ignorance of these allegations has no place at this stage of the litigation. *Miller*, 9 F. Supp. 2d at 928 (finding that a court "is not required to accept defendants' characterization of the alleged facts").

Moreover, as shown below, Defendants' argument ignores the well-established actionability of "campaigns of petty harassment," and of each of the acts which comprise it in this case.

1. **Campaigns of Petty Harassment are Actionable Under § 1983, as Recognized by Federal Courts for the Last 25 Years**

As federal courts consider the actionability of retaliatory "campaigns of petty harassment," like that alleged here by Furstenau, what is particularly striking is the courts' willingness to protect plaintiffs even against harassing acts that are seemingly minor. For example, in *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 76 n.8 (1990), the United States Supreme Court noted that the First Amendment protects against "even an act of retaliation as trivial as failing to hold a birthday party for a public employee…when intended to punish her for exercising her free speech rights."

### *Decisions of the Seventh Circuit*

The Seventh Circuit has also repeatedly found that a public official's campaign of nothing more than petty harassments is actionable, when made in retaliation for plaintiff's exercise of First Amendment rights. In *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982), the Seventh Circuit held that

defendant's baseless reprimands and ridicule of plaintiff (a former candidate for mayor) for bringing a birthday cake to work was sufficient to state an actionable "campaign of petty harassments...motivated by [plaintiff's] views." Similarly, in *Pieczynski v. Duffy*, 875 F.2d 1331, 1336 (7th Cir. 1989), the Seventh Circuit found that a jury was justified in finding that a "campaign of petty harassment" existed when plaintiff (an executive at a city office) was, *inter alia*, accused of taking bribes, called a liar, denied requests for vacation time, and excluded from being invited to a birthday party. In *Wallace v. Benware*, 67 F.3d 655 (7th Cir. 1995), the Seventh Circuit affirmed the jury's verdict for plaintiff (a high-level policymaking employee who was a candidate for county sheriff) on his First Amendment retaliation claim against defendant, when the facts showed that defendant-sheriff refused to talk to plaintiff for three months, assigned him to less desirable work assignments, and took away county equipment and privileges from him. The Seventh Circuit held that the defendant violated plaintiff's First Amendment rights by subjecting him to a "campaign of petty harassments," despite the fact that defendant lawfully could have simply fired or demoted plaintiff for his disloyalty due to his high-ranking status.

Most recently, in *Mosley v. Bd. of Educ. of City of Chicago*, 434 F.3d 527, 534-535 (7th Cir. 2006), the Seventh Circuit found that plaintiff (chairperson of a local public school committee) stated an actionable First Amendment retaliation claim when defendants withheld information from her, asked her to "rubber stamp" budgeting items for the committee, and asked that she be removed from school grounds when passing out flyers announcing her committee's meeting. These actions, reasoned the Court, did not allow her "to participate meaningfully in her role as the ... [committee] chairperson" and, consequently, stated a First Amendment retaliation claim that survived defendants' motion to dismiss. *Id.* at 534.[2]

### Other Federal Courts

The actionability of "campaigns of petty harassment" has been widely recognized not only by the Seventh Circuit, but by several other federal circuits and districts, including the Northern District. For example, the Eighth Circuit, in *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003), affirmed the jury's verdict in favor of plaintiff finding that the issuance of four parking

---

[2] *See also Johnson v. Collins*, 5 Fed. Appx. 479, 483 (7th Cir. 2001) (finding that plaintiff-father of children in child welfare stated a First Amendment retaliation claim against defendant-child welfare care workers, after case workers threatened that they "can play hard ball, too"; convinced authorities to visit his home; and submitted a request that he attend a counseling program he had already completed, in alleged retaliation for plaintiff's filing of an administrative complaint against defendants).

tickets amounting to no more than $35.00, when done in retaliation for a local business owner's protected speech, supported a claim for retaliation under the First Amendment. The Second Circuit, in *Levin v. Harleston*, 966 F.2d 85, 88 (2d Cir. 1992), affirmed the trial court's bench trial ruling in favor of plaintiff (a university professor) on his First Amendment retaliation claim, when defendants were found to have created a "shadow class" for students to transfer into (if they did not wish to take plaintiff's class); organized a committee to review plaintiff's actions; and distributed a memorandum suggesting that committee would look into whether plaintiff could be terminated for his controversial writings on race-related issues. The Ninth Circuit, in *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1070-71 (9th Cir. 2004), found that plaintiff (who was a city councilmember at the time of the retaliatory acts) stated a First Amendment retaliation claim against defendants (city council members and police officers) when defendants disseminated false accusations concerning plaintiff, which led to the instigation of criminal charges (which were later dropped) two weeks before plaintiff's re-election.[3]

### 2. Whether a Campaign of Retaliatory Harassment is Actionable is a Question of Fact

Because even seemingly low levels of harassment are actionable as part of a retaliatory "campaign of petty harassment," the actionability of such alleged "campaigns" is particularly inappropriate for disposition on a 12(b)(6) motion, and instead presents a question for the fact finder. The Seventh Circuit, and its district courts, have been perhaps the leading federal courts to recognize this. *See e.g., Bart*, 677 F.2d at 625 (finding that when plaintiff alleged "an entire campaign of harassment which though trivial in detail may have been substantial in gross," it was "a question of fact whether the campaign reached the threshold of actionability under section 1983");

---

[3] *See also Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir. 2005), (denying defendants' motion for summary judgment on plaintiffs' (members of a political committee supporting referendum) First Amendment retaliation claims after defendants accessed and searched government databases for information on plaintiffs, distributed flyers suggesting plaintiffs were criminals, stopped plaintiffs' cars without reason on traffic stops, and attempted to obtain arrest warrants on plaintiffs for violations of environmental laws); *Kadetsky v. Egg Harbor Tp. Bd. of Educ.*, 82 F. Supp. 2d 327, 337 (D.N.J. 2000) (denying defendants' motion to dismiss after finding that plaintiff-high school band director had been subject to a "series of harassing instances" when plaintiff alleged that defendants sent a letter containing false allegations of sexual misconduct and disrupted his bid for the position of Jazz Band Director, the orchestra's trip to Disney World, the Honors classifications of his courses, and a scheduled band competition); *Cadar v. Bell*, No. 84-C-10903, 1989 WL 84311, at *2 (N.D. Ill. July 19, 1989) (finding that plaintiff stated an actionable First Amendment retaliation claim when he alleged he was subject to a "campaign of petty harassment" which included the publication of false statements concerning plaintiff, use of Village resources against him, improper use of executive sessions to allow Village Board to interfere with plaintiff's lawful business efforts, creation of a non-public file with information on him, and selective enforcement of ordinances).

*Wallace*, 67 F. 3d at 664 n.9 (Seventh Circuit affirming their holding in *Bart* that "whether or not the [campaign of petty] harassment was sufficiently severe to give rise to liability under section 1983 is a question of fact"); *Nowak v. Szwedo*, 704 F. Supp. 153, 156 (N.D. Ill. 1989) (denying defendant's motion to dismiss plaintiffs' First Amendment retaliation claim after finding that "the question whether the series of comparatively low-level harassing events detailed in plaintiff's complaint rises to an actionable level is not appropriately determined at the pleading stage").

Moreover, that § 1983 actionability is a "fact question" is well-known to Defendants. Indeed, the case at the very core of their argument – *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676 (4th Cir 2000) – proves the point. *Suarez* is a ***summary judgment*** decision, reached only after the trial court's painstaking consideration of the evidence, and cited by Defendants for the proposition that, "[w]hether a particular retaliatory act is actionable under the First Amendment 'is a fact intensive inquiry'..." (Brief at p. 7)

### 3. Public Officials are Protected as All Others Against Retaliation

While Defendants imply that, because Furstenau is a public official, he is entitled to less Constitutional protection than others, this is not true. *See Bond v. Floyd*, 385 U.S. 116, 132-33 (1966) (dismissing the state's argument that it may apply a "stricter standard to its legislators[']" First Amendment expressions); *see also Wrzeski v. City of Madison*, 558 F. Supp. 664, 667 (W.D. Wis. 1983) (finding that ordinance requiring council members to vote "yes" or "no" on actions, in lieu of abstaining, violated members' First Amendment rights, as "[l]egislators enjoy the same First Amendment protections as any other members of our society").

Indeed, even for public official-plaintiffs, seemingly trivial acts of harassment are actionable, if undertaken to retaliate against the official for his/her exercise of First Amendment rights. *See Scott v. Flowers*, 910 F.2d 201 (5th Cir. 1990) (entering summary judgment in favor of elected justice of the peace on his First Amendment retaliation claim, after finding that defendant-public officials, in issuing a single public reprimand against plaintiff, retaliated against him based upon, *inter alia*, plaintiff's First Amendment protected activity of writing a letter to county officials and others which was critical of government practices); *Awabdy*, 368 F.3d at 1071 (9th Cir. 2004) (denying defendants' motion to dismiss, after finding that plaintiff-councilmember's allegations of defendants' false accusations which led to the initiation of a later-dismissed criminal complaint, stated a claim for First Amendment retaliation); *Wallace*, 67 F.3d at 664 (affirming jury verdict in favor of plaintiff on First Amendment retaliation claim after finding that while defendant could

have lawfully fired plaintiff, a high-level policymaking employee, for his political disloyalty under the policymaking exception to the patronage dismissals, he could not subject him to a "campaign of petty harassments" and violated plaintiff's First Amendment rights when he did engage in such a campaign); *Motiero v. City of Elizabeth*, 436 F.3d 397 (3d Cir. 2006) (affirming jury verdict in favor of city councilmember after finding that city council president retaliated against councilmember for her disagreement with president's viewpoints by having Plaintiff removed from a city council meeting).

4. **Even When Considered in Isolation, Defendants' Acts of Harassment are Actionable**

While, as shown above, Defendants' acts of retaliatory harassment are asserted to be actionable collectively, as a "campaign," those same acts also are actionable even when considered in isolation:

(a) *Direct deprivation of the right to speak.* (TAC at ¶¶ 28(a) and 29(a)) *See Hansen v. Bennett*, No. 88-C-6936, 1990 WL 165299, at *3 (N.D. Ill. Oct. 25, 1990) (Williams, J.) (finding that it "would be a clear violation of established law" for mayor and police chief to prohibit plaintiff from speaking at city council meeting because of the content of his speech), *affirmed by Hansen v. Bennett*, 948 F.2d 397 (7th Cir. 1991).

(b) *Deprivation of meaningful participation in government.* (TAC at ¶ 29(a)) *See Mosley*, 434 F.3d 527 at 434-35 (finding that school committee chairperson who was "not allowed to participate meaningfully in her role as…chairperson" stated a First Amendment retaliation claim that could survive a 12(b)(6) motion to dismiss, as plaintiff "cannot be muzzled or denied the benefit of participating in public school governance because she engaged in constitutionally protected activity"); *see also Bond*, 385 U.S. at 137 (finding that exclusion of plaintiff from membership in House of Representatives "because of his statements violated [the representative's] right of free expression under the First Amendment").

(c) *Selective enforcement of City ordinances and rules.* (TAC at ¶ 28(g)) *See Bart*, 677 F. 2d at 625 (finding that public official could not retaliate against plaintiff-former mayoral candidate "through selective enforcement of work rules"); *The Chicago Reader v. Sheahan*, 141 F. Supp. 2d 1142, 1145 (N.D. Ill. 2001) (granting summary judgment in favor of plaintiff on First Amendment retaliation claim when sole retaliatory act was defendants' selective application of internal press policy); *Cadar*, 1989 WL 84311, at *8 (finding that "[i]n particular, selective

enforcement of law, ordinances or work rules can be a constitutional violation if done in retaliation for the exercise of First Amendment rights").

(d) **Selective investigation.** (TAC at ¶¶ 28(b) and (c)) *See Rossi v. Bower*, No. 01-C-2503, 2002 WL 1160151, at *7 (N.D. Ill. May 29, 2002) ("It is possible for an investigation to be actionable under Section 1983 if it is initiated to chill the exercise of First Amendment rights."); *see also Abrams v. City of Chicago*, 635 F. Supp. 169, 173 (N.D. Ill. 1986) (Norgle, J.) (denying defendant's motion for summary judgment after finding that issues of fact existed as to whether plaintiff-faculty member was retaliated against for her First Amendment rights when defendants engaged in an investigation of her without a lawful purpose, and disseminated that information which caused plaintiff to lose her job).

(e) **Filing of false complaints.** (TAC at ¶¶ 28 (b) and (d)-(f)) *See Awabdy*, 368 F.3d 1062 (finding that councilmember's allegations of defendants' false accusations, which led to the initiation of a later-dismissed criminal complaint, stated a claim for First Amendment retaliation); *Daniel Harder, Inc. v. Village of Forest Park*, No. 05-C-5800, 2007 WL 1673259 (N.D. Ill. June 5, 2007) (finding that, *inter alia*, the filing of a false citizen complaint against plaintiff constituted actionable First Amendment retaliation, as "[a]ctions such as diminished responsibilities and false accusations can serve as the basis of a First Amendment retaliation action").

(f) **Recklessly false public accusations of criminal behavior.** (TAC at ¶¶ 28(h) and (j)) Defendants also do not have a constitutional right to make accusations or statements concerning Furstenau which are knowingly or recklessly false, as they are alleged here to be. *See also McDonald v. Smith*, 472 U.S. 479, 487 (1985) (finding that defendant-citizen who wrote letters to the President of the United States and Congress which suggested that plaintiff-candidate was not fit to run for office could be liable to the candidate if statements were made with actual malice as "the knowingly false statement and the false statement made with reckless disregard of the truth, do not enjoy constitutional protection"); *see also Garrison v. State of La.*, 379 U.S. 64, 75 (1964) (finding that "the knowingly false statement and the statement made with reckless disregard of the truth [concerning public officials], do not enjoy constitutional protection").

5. **Defendants' Cited Authority is Either Irrelevant to the Resolution of Their 12(b)(6) Motion, or it is Helpful to Furstenau**

None of the cases Defendants rely upon (Brief at 7-12) support dismissal of Count III of the Complaint, or the striking of various sub-sections of ¶ 28 of Furstenau's pleading. None requires a

result other than what *Bart v. Telford* instructs, *i.e.*, that "[i]t is a question of fact whether the campaign [of petty harassment alleged] reached the threshold of actionability under 1983." 677 F. 2d at 625.

Indeed, most of Defendants' cases confirm this very proposition, as they are summary judgment decisions which do not even consider the liberal notice pleading standards applicable here. *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000) (finding that actionability of retaliatory conduct is "a fact intensive inquiry"); *Mnyofu v. Bd. of Educ. of Rich Twp. High Sch. Dist.*, No. 03-C-8717, 2007 WL 1308523, *9 (N.D. Ill. April 27, 2007) (denying summary judgment as to one defendant and stating "[a] jury will have to decide whether [defendant] intended to suppress plaintiff's speech based on its content"); *Colson v. Grohman*, 174 F.3d 498, 512-13 (5th Cir. 1999) (affirming grant of summary judgment only after extensive review of facts, and only because – unlike Furstenau here – plaintiff had not been reprimanded); *Footit v. Van De Hey*, No. 04-C-459, 2005 WL 1563334, *8 (E.D. Wis. June 29, 2005) (granting summary judgment "[b]ased on these facts"); *Mattox v. City of Forest Park*, 183 F.3d 515, 519 (6th Cir. 1999) (affirming grant of summary judgment "[u]nder the facts of this case").

As for Defendants' Fed. R. Civ. P. 12(b)(6) authority, each case is inapplicable here. For example, Defendants' reliance upon *Kelly* in this case is misplaced. In *Kelly v. Chambers*, No. 07-CV-1005, 2007 WL 4293633 (N.D. Ill. Dec. 6, 2007), the Court found that plaintiff (city councilwoman) was subject to retaliation by defendants (fellow city council members, police chief, and town president). However, because the town president's role was limited to speaking out against plaintiff at a meeting, and the two city council members' roles were limited to their involvement in a fact-finding investigation (with nothing to suggest, as has been alleged by Furstenau, that the investigation was designed to impose sanctions upon plaintiff), those defendants engaged in no more than "mere speech," which the Court found was not actionable. *Id.* at *5. However, where, as to another defendant, plaintiff alleged more than "speech" (*i.e.*, the filing of a belated and false complaint against plaintiff), the Court agreed that such retaliatory conduct was actionable to survive defendant's motion to dismiss. *Id.*

Like the non-dismissed defendant in *Kelly*, Defendants Ely and Burchard here are alleged by Furstenau to have retaliated against him through their actions (which are not afforded First Amendment protections), which are not exclusively, or even primarily, speech. *See* TAC at ¶¶ 28 (a)–(k). Consequently, as was true in *Kelly*, these allegations of retaliatory conduct state an

actionable claim that should survive Defendants' 12(b)(6) motion. As for Defendant Matchett, *Kelly* is similarly inapplicable, because, whereas the town president in *Kelly* was dismissed because his retaliatory conduct included only speech which was not asserted to be part of a "campaign of petty harassment," Defendant Matchett's publication of recklessly false allegations of Furstenau's mistreatment of police officers is actionable, as it is alleged to have occurred in concert with the retaliatory misconduct of others, and is further alleged to have been part of such a "campaign."[4] *See* TAC at ¶ 28(j).

The remainder of Defendants' cases also fall far short from suggesting that Furstenau's complaint ought to be dismissed. *See, e.g., Villagrana v. Village of Oswego*, No. 04-C-4603, 2005 WL 2322808 (N.D. Ill. Sept. 22, 2005) (dismissing complaint when there was no allegation or inference that "retaliatory acts took the form of anything other than speech"); *Talley v. City of Chicago*, No. 00-C-1240, 2001 WL 1159241 (N.D. Ill. Sept. 28, 2001) (dismissing complaint based upon plaintiff's failure to allege municipal liability; failing to even discuss whether retaliatory acts were actionable); *Rees v. Dahl*, 24 Fed. Appx. 907 (10th Cir. 2001) (dismissing complaint for plaintiff's failure to plead conclusion that defendants' actions would have "chilled a person of ordinary firmness;" Furstenau does make this allegation in his Complaint at ¶ 30).

**B.     Defendants Are Not Entitled To Qualified Immunity**

Defendants' argument for qualified immunity fails, as it rests on the bluntly false assertion that there "is not a single analogous case which could even arguably be read to support" the actionability of Furstenau's claims against them (Brief at 13-14). The discussion throughout this brief thus far has identified ***more than 30 federal court decisions*** over the last 25 years which forbid the kind of retaliatory misconduct which Furstenau asserts against Defendants, including "campaigns of petty harassment," as well as the individual acts which comprise it here, *e.g.*, exclusion from public meetings; denial of meaningful participation in government; selective investigation; selective application of ordinances and codes of conduct; and the filing of false complaints. *See infra*, at pp. 4-9.

---

[4] *See Harder*, 2007 WL 1673259, at * 3 ("Actions such as diminished responsibilities and false accusations can serve as the basis of a First Amendment retaliation action."); *Bennett v. Hendrix*, 423 F.3d 1247 (11th Cir. 2005) (finding defendants engaged in campaign of petty harassment, when they collectively, *inter alia*, searched government databases for information on plaintiff and distributed flyers depicting plaintiffs as criminals); *Pieczynski v. Duffy*, 875 F.2d 1331 (7th Cir. 1989) (finding that defendants engaged in campaign of petty harassment when they collectively, *inter alia*, called plaintiff a liar and accused her of taking bribes); *Kadetsky v. Egg Harbor Tp. Bd. of Educ.*, 82 F. Supp. 2d 327 (D.N.J. 2000) (finding that defendants' false accusations of criminal misconduct, and concocted letters of misconduct would, *inter alia*, state a claim for First Amendment retaliation based upon a campaign of petty harassments).

These cases, and many more like them, furnished Defendants more than "reasonable warning" that their conduct violates Furstenau's Constitutional rights. *Green v. Butler*, 420 F.3d 689, 701 (7th Cir. 2005) (finding that case need not be "on all fours" with precedent to defeat qualified immunity claim, as all is required is "whether a reasonable state actor would have known that his actions...were unlawful" and that officials can be on notice that their conduct violates established law "even in novel factual circumstances"); *Bell v. Marseilles Elem. Sch.*, 160 F. Supp. 2d 883, 890 (N.D. Ill. 2001) (finding that it is not necessary to find "a case scenario exactly like the one at hand" to defeat a qualified immunity defense).

### C.   Defendants Do Not Enjoy Legislative Immunity

Defendants' arguments – *i.e.*, that they are entitled to legislative immunity for their selective investigations of Furstenau and for decisions to selectively exclude him from important public meetings (in violation of the Open Meetings Act) -- are improper as they depend upon repeated mischaracterizations of Furstenau's Complaint. For example, Defendants allege that they were performing legislative functions and operating within the sphere of legitimate legislative activity, and that all of their conduct was "inextricably linked" to censure of Furstenau. (Brief. at 14-17).

Such claims are not only nowhere asserted in Furstenau's Complaint, but, in fact, are contradicted by it. Indeed, for example, Furstenau does **not** allege that there was any legitimate purpose to Defendants' conduct; he says that it was **unlawful**. (TAC at *e.g.*, ¶ 28).

Moreover, as directed by the Seventh Circuit in *Bart*, the Complaint does not look at Defendants' actions in isolation from one another (as Defendants are choosing to do), but rather alleges these actions to be part of a larger, inter-connected "campaign of petty harassment." Such "campaigns of petty harassment," even those involving legislative investigations or violations of the Open Meetings Act, are actionable. They are not "legislative acts" subject to legislative immunity. *See, e.g., Cadar*, 1989 WL 84311, at *6 (finding that plaintiff stated a claim for First Amendment retaliation against defendant-village trustee when defendants' alleged campaign of harassment included, *inter alia*, "holding executive sessions of the Village Board of Trustees in violation of the Illinois Open Meetings Act" and selective investigations of plaintiff); *see also Bart*, 677 F.2d at 625 (finding that when plaintiff alleged "an entire campaign of harassment which though trivial in detail may have been substantial in gross" can be actionable under § 1983).

Further, it is well-established that the imposition of legislative immunity to absolve public officials for their acts is disfavored. *Boyd v. Village of Carol Stream*, No. 99-C-644, 2000 WL

1700124, *3 (N.D. Ill. Nov. 13, 2000). Accordingly, this immunity is to be narrowly construed as applying only to quintessentially "legislative acts." *See United States v. Brewster*, 408 U.S. 501, 528 (1972). Defendants bear the burden of "establishing their entitlement to [legislative immunity]," including that their alleged misconduct was undertaken pursuant to legislative acts. *Contreras v. City of Chicago*, 920 F. Supp. 1370, 1397 (N.D. Ill. 1996). Here, Defendants have clearly not met that burden. Defendants make no argument, nor cite a single case, which suggests that a "campaign of petty harassments" should somehow be construed as a "legislative act" deserving of immunity.

In fact, that such campaigns are not "legislative acts" is evidenced by numerous decisions where federal Circuit and District courts from around the country have found in favor of a plaintiff on retaliation claims against such legislators, including claims involving campaigns of petty harassments. *See Benkowski v. Wasilewski*, No. 3:07-CV-0197, 2007 WL 2670265 (M.D. Pa. Sept. 7, 2007) (finding that plaintiff stated a First Amendment retaliation claim against defendant-chairperson of township board based upon series of petty harassments); *Cadar v. Bell*, 1989 WL 84311, at *9 (N.D. Ill. 1989) (finding that plaintiff stated a First Amendment retaliation claim against defendant-village trustee based upon series of petty harassments); *see also Bond v. Floyd*, 385 U.S. 116 (1966) (finding that defendant-state legislators violated plaintiff's rights when they excluded him from membership based upon his political viewpoints); *Montiero v. City of Elizabeth*, 436 F.3d 397 (3d Cir. 2006) (affirming verdict for plaintiff on her claims against city councilmembers for First Amendment retaliation); *Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004) (affirming denial of city councilmember's motion to dismiss plaintiff's First Amendment retaliation claim); *Miller v. Town of Hull*, 878 F.2d 523 (1st Cir. 1989) (affirming verdict in favor of plaintiff on claim against defendant-members of board of selectmen for First Amendment retaliation); *Bondar v. D'Amato*, No. 06-C-109, 2007 WL 1700114 (E.D. Wis. 2007) (denying defendant-alderman's motion for summary judgment on plaintiff's First Amendment retaliation claim); *Vasquez v. City of Bell Gardens*, 938 F. Supp. 1487 (C.D. Cal. 1996) (denying city council's motion to dismiss plaintiff's First Amendment retaliation claim). Defendants' campaign is not a "legislative act" and is not entitled to the immunity protection they assert.

D.   Furstenau's Allegations of Direct Injury to Him Resulting From Defendants' Retaliatory "Campaign" Satisfies Federal Standing Requirements

Defendants Ely and Burchard seek the dismissal of a single sub-paragraph of Furstenau's Complaint (¶ 28(k)), arguing that Furstenau has no standing to redress injury to those Furstenau-supporting businesspeople alleged therein to have been threatened. (Brief at 19-21).

This argument misrepresents Furstenau's allegations. Nowhere is Furstenau attempting to seek redress for anyone other than himself. Indeed, Furstenau straightforwardly alleges that persons with business before the City were disadvantaged because they supported Furstenau; that this "contributed to and continued the campaign of petty harassment Defendants waged *against Furstenau*;" and that, as a result, *inter alia*, Furstenau was deprived of his right "to participate meaningfully in City government." (TAC at ¶ 28, generally, and ¶¶ 28(k) and 29(a)). Threats, though directed towards others, can contribute to a campaign of harassment towards plaintiff – a campaign which, as a whole, is redressable by plaintiff. *Belt v. Marion Comm. Sch. Dist.*, No. 2, No. 05-4132-JPG, 2006 WL 839434, *5 (S.D. Ill. March 28, 2006) (finding that defendants' threats towards plaintiff's husband contributed to a campaign of harassment against plaintiff for which plaintiff had sufficient standing to redress).

Defendants' motion here must also fail because it seeks improperly – in violation of the Seventh Circuit's admonition in *e.g.*, *Bart v. Telford* to consider retaliatory "campaign" allegations "in gross," and not individually – to separate ¶ 28(k) from all of Defendants' other acts of misconduct, and because Furstenau plainly has standing to allege that he was injured due to a "campaign" which included threats to his supporters that deprived him of an important right (*i.e.*, meaningful government participation). None of Defendants' cases support their claim that Plaintiff lacks standing when seeking to redress *his own* constitutional injury, as Furstenau has alleged. *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ("[A]t the pleading stage general factual allegations of injury resulting from defendant's conduct may suffice to establish standing.")

7.   Plaintiff's Allegations Against Matchett are Sufficient

Mischaracterizing Plaintiffs' claims against him as being for the "encouragement" of an arrest only, Matchett ignores that he also "procured" Furstenau's arrest in concert with others (as alleged in ¶ 14), and engaged in a campaign of harassment against Plaintiff in retaliation for the exercise of his First Amendment rights. (¶ 28(j)). This included Matchett's publication of false assertions that Furstenau had engaged in misconduct toward police officers. Such statements are

not protected by the First Amendment, and are actionable as part of a "campaign of petty harassment." *See infra*, p. 11, n.6. Moreover, as demonstrated previously, Furstenau's allegations as to Matchett must be accepted as true for purposes of resolving Matchett's motion.

Furthermore, a person is liable for false arrest if he/she directed an officer to make the arrest, procured the arrest by providing information that was the sole basis for the arrest, or otherwise instigated, assisted, or by some other means directed, countenanced or encouraged the arrest. *See Kiswani v. Phoenix Security Agency, Inc.* 529 F. Supp. 2d 949 (N.D. Ill. 2008); *Randall v. Lemke*, 726 N.E.2d 183 (2d Dist. 2000); *Carey v. K-Way, Inc.*, 312 Ill. App. 3d 666 (1st Dist. 2000). What constitutes participation sufficient to support a claim for false arrest is a question of fact that must be determined on a case-by-case basis. *See Olinger v. Doe*, 163 F. Supp. 2d 988 (N.D. Ill. 2001). Accordingly, in each one of the summary judgment or post-trial cases offered by Matchett as a basis for dismissal, the court's decision was relatively easy given the particular facts of each case.[5] However, none of those cases compel -- or, are even persuasive authority for -- dismissing Furstenau's claims against Matchett.

## CONCLUSION

For the reasons stated in this brief, Plaintiff respectfully requests that the Motion to Dismiss of Defendants Ely, Matchett and Burchard be denied in its entirety.

Dated: March 26, 2008            Respectfully submitted,

**RICHARD R. FURSTENAU**

By: s/Shawn M. Collins
    One of Plaintiff's Attorneys

---

[5] *See, e.g., Rascon v. Hardiman*, 803 F. 2d 269 (7th Cir. 1986) (new trial granted where the magistrate refused to permit defense evidence which countered the plaintiff's theory of liability against the Executive Director of the Cook County Department of Corrections); *Kiswani*, 529 F. Supp. 2d at 956-58 (summary judgment was proper on plaintiff's claim for false arrest where defendant told officers plaintiff had a gun in a night club, and plaintiff later admitted that a gun was discovered by the officers on his person); *Zisis v. St. Joseph Tp. of Allen County*, 979 F. Supp. 806 (N.D. Ind. 1997) (summary judgment was proper where it was undisputed that the defendant was not the person who made the decision to file criminal charges against the plaintiff or to have him arrested); *Baghadadilian v. Libby*, No. 92-C-8314, 1994 WL 282292 (N.D. Ill. June 22, 1994) (summary judgment granted where plaintiff offered no evidence that the defendant signed the complaint against him, requested the arrest, or detained him in anyway).

## CERTIFICATE OF SERVICE

    I certify that a true and correct copy of **Plaintiff's Brief In Opposition To Motion To Dismiss Of Defendants Ely, Matchett and Burchard** was electronically served on all counsel of record as a result of the CM/ECF filing of this document, on March 26, 2008:

By:   s/ Shawn M. Collins
        One of Plaintiff's Attorneys

Shawn M. Collins
Edward J. Manzke
John A. Sopuch III
Aaron W. Rapier
Julie B. Anderson
THE COLLINS LAW FIRM, P.C.
1770 N. Park Street, Suite 200
Naperville, Illinois 60563
(630) 527-1595
(630) 527-1193 - Fax