UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD R. FURSTENAU, ) | |
| ) | |
| Plaintiff, ) | No. 07 C 6143 |
| ) | |
| v. ) | Judge Charles R. Norgle |
| ) | |
| CITY OF NAPERVILLE, a municipal ) | Magistrate Judge Geraldine Soat Brown |
| Corporation; MICHAEL HULL, in his individual ) | |
| and official capacity; DAVID DIAL, in his ) | |
| official and individual capacity; MICHAEL ) | |
| CROSS; in his individual and official capacity; ) | |
| PETER BURCHARD, in his official and ) | |
| individual capacity; MARGO L. ELY, in her ) | |
| individual and official capacity; and JOE ) | |
| MATCHETT, in his individual an official ) | |
| capacity, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT CITY OF NAPERVILLE'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER
TO STRUCTURE DISCOVERY**

Defendant, City of Naperville ("City"), hereby moves, pursuant to Rule 26(c) and (d) of the Federal Rules of Civil Procedure, for the entry of a protective order to structure discovery in such a way that discovery and depositions on issues that are the subject of pending Motions to Dismiss ("Motions") not be taken until a later date when it can be shown that such depositions will lead to discoverable evidence. In support of this motion, the City states as follows:

**INTRODUCTION**

This motion seeks to structure discovery so that the parties first address non-controversial discovery and depositions, and then address other discovery issues if those issues are not resolved by the Motions. Not only is this structure logical as it deals with issues in an appropriate sequence, but this structure also mirrors the sequence of issues that Plaintiff has

presented in his four complaints. Discovery in this case can be broken down into two distinct groups: (1) documents and witnesses relating to an incident that occurred in January, 2006; the police investigation of that incident, and the criminal prosecution of the Plaintiff (issues related to the allegations in Plaintiff's original Complaint); and (2) documents and witnesses relating to events that occurred after October 31, 2007, the date of the filing of the complaint in this case (issues related to the additional allegations in Plaintiff's subsequent three amended complaints). The entirety of the issues relating to the latter group are the subject of Motions that are pending before the Court. If the Court grants these Motions, the scope of this lawsuit will narrow considerably and there will be no need for the exchange of documents or the depositions of witnesses relating to those issues. Conversely, as to the former group, the vast majority of the allegations are at issue as all Police Defendants have filed answers related to those issues. Accordingly, it is reasonable, efficient and prudent to conduct discovery and take depositions of witnesses that relate to Plaintiff's original allegations *prior to* addressing discovery matters that relate to issues that soon may be disposed of by this Court.

Despite Plaintiff's alleged concern with the cost of this litigation (*discussed infra*), Plaintiff will not agree to structure discovery in this manner.[1] Instead, Plaintiff has engaged in harassing litigation tactics aimed at forcing the City to settle this case without ever evaluating any of the issues involved. As a result, Defendant City of Naperville requests the Court to issue a protective order structuring discovery in such a way that discovery and depositions on issues

---

[1] Pursuant to Local 37.2 and Rule 26(c), prior to filing this motion, the parties engaged in various efforts to resolve this issue without court intervention, including several teleconferences and the exchange of several emails and letters relating to this issue. (*See, e.g.* Letters and Emails, attached as Group Exhibit 1.) The undersigned counsel hereby certifies that these good faith attempts were unsuccessful. Moreover, the parties filed their Joint Initial Status Report which noted that these discovery issues remain unresolved. (*See* Dkt# 67.)

that are the subject of pending Motions to Dismiss will not be taken until after a ruling on those Motions.

## BACKGROUND

Plaintiff's original lawsuit, filed on October 31, 2007, alleged that City of Naperville Police Chief David Dial, Detective Michael Cross, and Officer Michael Hull ("Police Defendants"), conspired to falsely charge Plaintiff with aggravated battery for striking Officer Hull in the chest during an encounter shortly prior to a New Year's Day parade in downtown Naperville on January 1, 2006 (*See* Dkt. # 1, Compl., p. 10-15, ¶¶ 26-48). Plaintiff alleged the arrest and criminal charge were in retaliation for his public stances against the Police Department on abuse of overtime, use of tasers, and "double dipping", which allows police officers to retire with pensions, and then accept other paid positions with Naperville (*Id.* pp. 6-10, ¶¶ 10-24).

Since the time he filed his original Complaint, Plaintiff has filed three subsequent amended complaints. In his Amended Complaint, Second Amended Complaint, and Third Amended Complaint, Plaintiff includes allegations of retaliation and the following new Defendants: Police Officer Joe Matchett who is also President of the local Fraternal Order of Police, Naperville City Attorney Margo Ely, and former City Manager Peter Burchard. In filing this string of amended complaints, Plaintiff attempts to convert a garden-variety police case into an elaborate conspiracy suit against City officials who refused his settlement demands, and have criticized him about his abusive conduct.

With respect to Defendants Ely and Burchard, Plaintiff alleges that they, in concert with others:

(a) Orchestrated and participated in illegal meetings on important public issues that unlawfully excluded [Plaintiff] and the public;

(b) Investigated Plaintiff's conduct as both a private citizen and council member over at least the last five years;

(c) Searched police files for and publicly disseminated complaints about Plaintiff;

(d) Directed City staff to submit complaints which were publicly disseminated, though many of them were false or inadequately investigated;

(e) Directed City staff to prepare and submit complaints concerning Plaintiff's conduct at meetings in November and December, 2007 with the intent that such memos would be publicly disseminated without regard to whether the memos were true;

(f) Personally implemented the public dissemination of complaints and other documents, including Naperville Police records, containing allegations deemed to be intimidating, threatening, embarrassing, and/or discrediting to Plaintiff;

(g) Orchestrated the censure of Plaintiff for allegations of misconduct that were false and unproven, without affording Plaintiff the opportunity to meaningfully confront the allegations;

(h) Orchestrated the making of false accusations that Plaintiff was using his council member's position for "personal gain" and to "promote his private enterprise";

(i) Researched and took other steps to implement Plaintiff's recall from public office; and

(j) created an atmosphere in which supporters of Plaintiff who did business with the City would be "outed", so that their projects would receive less favorable attention, with the result

being that these actions were perceived as threatening by at least one supporter of Plaintiff with business before the City (*See* Dkt. #42, Third Am. Compl., pp.7-9, ¶28 (a)-(k)).

As to Officer Matchett, in each of his three complaints, Plaintiff attempts to show that Officer Matchett is a member of this alleged wide-spread conspiracy against him because of the statements he has made as an elected representative of the local Police union. Particularly, Plaintiff alleges that Matchett "published a letter which falsely stated that Plaintiff had been arrested in 2006 for "contact" with a police officer, and falsely accused Plaintiff of misconduct with Police in other incidents" (*Id.*, pp. 8-9, ¶ 28(j)). Plaintiff also alleges that Officer Matchett "directed, instigated, assisted in, participated in, and/or encouraged [his] false arrest" because, with "no legitimate role to play in the 'investigation'", he "nonetheless encouraged Defendant Hull to sign the complaint that initiated the false arrest of Furstenau." (*Id.* p.4, ¶17). Finally, Plaintiff alleges, "upon information and belief", that Matchett searched Police files for complaints about Plaintiff, and then publicly disseminated such records, in order to intimidate, threaten, punish, embarrass, and discredit Plaintiff. (*Id.*, p.7, ¶28 (c)).

At this time, the Police Defendants answered Plaintiff's Third Amended Complaint and responded to Plaintiff's discovery requests. All Defendants are prepared to move forward with discovery and depositions relating to the Police Defendants' involvement in the case. Moreover, all Defendants are prepared to proceed with discovery and depositions relating to all aspects of Plaintiff's original allegations, and such readiness and willingness has been communicated to Plaintiff. In fact, in suggesting to structure discovery in the format outlined in this Motion, the City provided a list of those potential witnesses, (nearly 20) to Plaintiff. (*See* Email and attached Proposed Witness List, attached as Exhibit 2.) This list is not exhaustive because it does not include the Police Defendants; any of the prosecutors involved in Plaintiff's prosecution; or any

damages witnesses. Thus, at this point in the litigation, the parties could begin to take depositions of at least 25 non-controversial witnesses. But, Plaintiff refuses to begin with these depositions.

Given that there is plenty of work to do in the short term, no party will suffer prejudice if discovery is structured in the manner proposed by the City. After all, Defendants Burchard, Ely and Matchett filed a Motion to Dismiss, which, if successful, would completely dismiss them from the case. (*See* Dkt # 56.) Briefing on that Motion will be completed and the Court will be able to begin its review next week – April 9, 2008. Thus, it should be evident that, in filing this Motion, the City is not in any way attempting to withhold documents or prevent the Plaintiff from deposing any individuals with relevant information. Instead, the City is merely attempting to structure discovery in a way that will be the most efficient and cost-effective.

## **ARGUMENT**

### I.   **STANDARDS APPLICABLE TO THE ENTRY OF A PROTECTIVE ORDER**

Rule 26(c) of the Federal Rules of Civil Procedure authorizes the entry of a protective order to structure discovery if it furthers the interests of justice. Fed.R.Civ.P. 26(c). This Rule provides, in pertinent part:

> Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (1) that the disclosure or discovery not be had;
>
> (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of time or place . . . .

Fed. R. Civ. P. 26(c)(2).

District courts enjoy broad discretion in controlling discovery. *Crawford-El v. Britton*, 523 U.S. 574, 598, 118 S.Ct. 1584 (1998); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Under Rules 26(c) and (d) of Federal Rule of Civil Procedure, the Court may issue a protective order limiting the scope of discovery or control its sequence. Fed.R.Civ.Pro. 26. Moreover, "[l]imitation or postponement of discovery may be appropriate when a defendant files a motion to dismiss for failure to state a claim on which relief can be granted." *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 336 (N.D.Ill 2005). Good cause is the only statutory requirement for determining whether to issue a protective order. *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997). In deciding whether good cause exists, a district court must balance the respective interests of the parties. *Id.* The court must consider the facts and circumstances of each case in making the good cause determination. *Id.* Indeed, this Court recently has recognized the appropriateness of limiting discovery prior to the Court's resolution of the merits of a case. *Vision Church v. Village of Long Grove*, 226 F.R.D. 323, 327 (N.D. Ill. 2005) (denying motion to compel deposition of city officials where Court was yet to examine legal issues).

## II.   GOOD CAUSE EXISTS TO STRUCTURE DISCOVERY.

As noted above and in the attached Exhibits, despite numerous attempts by the City's attorneys to resolve this dispute without involving the Court, Plaintiff has refused to agree with the City's proposal for structured discovery. Plaintiff's unwillingness to compromise on this issue is telling, however, as is their failure to begin taking discovery on what was the original allegations in this lawsuit. Instead of agreeing with the City's proposed structure of discovery, Plaintiff has engaged in harassing and inappropriate litigation techniques aimed at forcing the City's leaders to settle the case. For example, in February, before noticing any depositions of

any of the named Defendants in this action, Plaintiff served subpoenas for depositions for the following individuals: Mayor A. George Pradel, Councilman James E. Boyajian, Councilman Robert W. Fieseler, Councilman Douglas Krause, Councilman Kenn Miller, Councilman John Rosanova, Councilwoman Darlene Senger, Councilman Grant Werhli, City Manager Bob Marshall and City Engineer William Novack. (*See* Subpoenas for Depositions attached as Group Exhibit 3.) None of these individuals have anything to do with the incident, investigation or prosecution.[2] Interestingly, except for City Engineer William Novack, all of these individuals are the persons who would be the decision-makers about whether this lawsuit should be settled. To date, Plaintiff has not requested the depositions of any other individuals.

Not only has Plaintiff engaged in inappropriate discovery tactics, but he has also engaged in gamesmanship and legal maneuvering rather than creating a record of relevant facts for trial. On March 27, 2008, Plaintiff sent what he claimed to be a settlement offer to the City's attorneys. (*See* Collins Settlement Letter and Response attached as Group Exhibit 4.) Within minutes of sending the letter to the City's counsel, Plaintiff's counsel sent the same letter to two newspapers, the Naperville Sun and the Daily Herald. The City believes that the settlement letter was sent as a media ploy, rather than as a good-faith attempt to actually resolve this case. In addition, Plaintiff's release of the letter to the media was misleading and manipulative. (*See*

---

[2] Mayor A. George Pradel was interviewed by Naperville police officers as part of the investigation because of statements that Plaintiff made to him about the incident. Defense lawyers have acknowledged that he will probably have to be deposed relating to these issues. However, none of the other individuals possess any information relating to the original allegations in the lawsuit. At this time Plaintiff's counsel agreed to postpone these depositions, but Plaintiff refuses to withdraw the subpoenas. Plaintiff is also insistent that he should be able to select eight individuals to run searches on, and then the City pick nine. Again, this approach is non-sensical and wastes time. It is not a coincidence that, excluding Plaintiff, there are seven members on the Naperville City Council and with Mayor George Pradel, there are nine. Clearly, despite "postponing" the depositions, Plaintiff is still attempting to harass City officials by hanging the subpoenas over their heads.

Picture of Plaintiff with Settlement Letter as it appeared on the website of the Naperville Sun attached as Exhibit 5).

In contrast to Plaintiff's attempt to fight this case in the media, the City has been working diligently to attempt to gather hard-copy and electronic documents responsive to Plaintiff's discovery requests. The City has already taken considerable steps to begin the large-scale discovery process that this case requires. Thus far, the City has identified over 50 individuals to Plaintiff that it believes may possess relevant documents to this case and has begun the process of locating, searching, and reviewing documents in their possession. This is no small task as the total electronic document collection alone exceeds 605,000 documents. Of these 605,000 electronic documents, over 21,000 contain potentially responsive information.[3] The collection of these electronic documents alone, excluding any review, took over six days for multiple attorneys and support staff to complete. To date, the City has produced nearly 4,000 documents in hard-copy and electronic form to Plaintiff. The City continues to investigate and locate responsive documents as well as review those already collected and has continually reiterated this to Plaintiff. By comparison, Plaintiff has not produced a single document.

As this process requires great time and expense on the part of Defendant City of Naperville and at substantial cost to Naperville taxpayers, and because many of these documents and witnesses may not ever be at issue, structuring discovery in such a way that permits the parties to deal with those matters at issue before others is a method by which the City can significantly reduce and manage the costs of this litigation. Despite Plaintiff's public claims that he wants to lower costs in this case (*See* Exhibit 4), he has refused this reasonable and cost-effective proposal. Therefore, good cause exists to enter a protective order structuring discovery.

---

[3] The parties have exchanged agreed upon search terms and have identified a date restriction of 12/31/2005- present.

## **CONCLUSION**

Based on his actions, it is obvious that Plaintiff is not interested in resolving this case on the record but is instead trying to harass the City and put pressure on its elected officials to settle this case. If Plaintiff is serious about actually fighting his case on the merits, the parties should engage in discovery that will actually be used at trial. The discovery structure proposed in this motion is both practical and sensible. Approaching discovery in the manner that Plaintiff seeks would be time-consuming, inefficient and wasteful of Naperville taxpayers money and the parties' time. A protective order that requires the parties to first deal with all discovery related to those issues already answered, and postponing those related to the issues being briefed in the Motions to Dismiss, is a simple and direct way in which the parties can deal with the volume of issues disputed in this case in a cost-effective and methodologically-sound manner. Consequently, good cause exists for this Court to enter a protective order that structures discovery in the efficient manner as outlined in this Motion.

WHEREFORE, Defendant, City of Naperville, respectfully requests this Honorable Court grant its Motion for a Protective Order to Structure Discovery and any further relief this Court deems just and proper.

Respectfully submitted,

CITY OF NAPERVILLE,

Richard T. Sikes, Jr.
Terrence J. Sheahan
Audrey Brodrick                By:   /s/ Terrence J. Sheahan
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, Illinois 60606
Telephone: 312/360-6000

Dated: April 1, 2008