UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD R. FURSTENAU, | ) | |
| | ) | |
| Plaintiff, | ) | No.  07 C 6143 |
| | ) | |
| v. | ) | Judge Charles R. Norgle |
| | ) | |
| CITY OF NAPERVILLE, *et al.*, | ) | Magistrate Judge Geraldine Soat Brown |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT CITY OF NAPERVILLE'S REPLY IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**

NOW COMES Defendant, the City of Naperville ("City"), by its attorneys, Richard T.

Sikes, Jr., and Freeborn & Peters LLP, and replies in further support of its Motion to Dismiss

Plaintiff's Third Amended Complaint ("Motion") and states as follows:

**INTRODUCTION**

Plaintiff's Response to the Motion ("Response") is premised on a fundamental

misunderstanding of the pertinent legal standards for holding a municipality liable under § 1983.

Plaintiff argues that the City "is plainly wrong in its contention that Furstenau's allegations ...

are legally inadequate." (Response at 2.)  Remarkably though, in support of his argument,

Plaintiff misrepresents Seventh Circuit case law and bases his arguments on what he perceives to

be "common sense." Unfortunately for Plaintiff, his perception of common sense is not the legal

standard for this Court.  Simply put, a plain reading of Plaintiff's averments in the Third

Amended Complaint ("Complaint") demonstrates that he successfully pled himself out of court

on his *Monell* municipal-liability claims.  Additionally, the Equal Protection claim continues to

1519136v1

be legally insufficient because Plaintiff failed to plead more than a formulaic recitation of the elements of such a claim. Consequently, the City's Motion should be granted.

## ARGUMENT

### I.    Plaintiff Failed to State A *Monell* Claim For Municipal Liability.

Plaintiff argues that his conclusory allegations in favor of municipal liability satisfy his pleading requirements and that he is "not required to allege any more than he has." (Response at 5.) Plaintiff if wrong.[1] It is axiomatic that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, (1978). Thus, to hold the City liable, Plaintiff must allege an official municipal policy through: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Sims v. County of Bureau*, 506 F.3d 509, 514 (2007).

First, Plaintiff failed to provide **any** facts relating to **any** policy, practice or custom that caused his alleged constitutional injury. Therefore, his *Monell* claim cannot rest on either of the first two prongs. Second, Plaintiff specifically identified Chief Dial as a policymaker for the City of Naperville. His insistence on this point is curious because applicable laws and ordinances conclusively demonstrate that Chief Dial does not possess such authority. And the

---

[1] Surprisingly, Plaintiff begins his Argument Section with a case that completely undermines is *Monell* allegations. The first case that Plaintiff cites is *Bergstrom v. McSweeny*, 294 F.Supp.2d 961, 968 (N.D.Ill. 2003).[1] (Response at 4.) In *Bergstrom*, the court dismissed the municipal corporation (Metra) for the same reasons that the City seeks to be dismissed in this case – plaintiff's failure to identify an actual custom or policy that led to the constitutional deprivation. The court stated "[e]ven though [plaintiff] alleges that Metra acted 'pursuant to a widespread custom and policy,' he has not alleged an actual custom or policy." *Id.* at 968. Additionally, Plaintiff argues that "the City concedes the sufficiency of the allegations of Count IV." (Response at 4.) That is incorrect. To the extent that a responsive pleading is required upon resolution of the Motion, the City will then file its response to the allegations in Court IV.

1519136v1

complaint lacks any allegations that Chief Dial was delegated policymaking authority by the actual policymaker, the City Manager. Indeed, the Seventh Circuit has been unequivocal in its view that "[o]nly those individuals with the requisite policymaking authority are capable of establishing 'official policy' as required by *Monell.*" *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007). Thus, Plaintiff successfully plead himself out of court on his *Monell* claim.

## A.    Plaintiff's Complaint Does Not Contain a Short and Plain Statement of a Policy or Custom, as Required by *Monell.*

Plaintiff argues that he should not be held to a heightened pleading standard. (Response at 5.) The City agrees. But Plaintiff is requires to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 1964 (2007). With that standard in mind, the Seventh Circuit recently outlined what a plaintiff must allege to survive a motion to dismiss a *Monell* claim. "In order to state a §1983 claim against a municipality, the complaint must allege that an official policy or custom not only caused the constitutional violation, but was the 'moving force' behind it." *Sims v. County of Bureau*, 506 F.3d 509, 514 (2007) (affirming district court's dismissal of the *Monell* claim because plaintiff failed to provide factual allegations relating to a municipal policy or custom that led to the constitutional injury). Just like the plaintiff in *Sims*, the Plaintiff here failed to allege a direct causal link between a policy or custom and the purported constitutional violations. *Id.* at 515.

Not only is Plaintiff's Complaint analogous to the complaint that was dismissed in *Sims*, Plaintiff's Complaint suffers from the same deficiencies as the complaint in *Catchings v. City of Chicago, et al.*, 2005 WL 1027127 (N.D.Ill. April 26, 2005). In *Catchings*, the plaintiff sued the City of Chicago, Phillip Cline and Terry Hillard (two former Superintendents of the Chicago Police Department) and Sheriff Michael Sheahan. *Id.* at *3. The plaintiff in that case likewise argued that "in alleging the existence of an official policy or custom, a plaintiff need only

3

include a 'short plaint statement of such official policy or custom.'" *Compare, Id.* at \*5, *with* Response at 5. Keeping in mind the dictates of Rule 8 of the Federal Rules of Civil Procedure, the court in *Catchings* nevertheless noted the following deficiencies in the complaint:

> Plaintiff, however, does not allege that the City, Hillard, Cline or Sheahan had an affirmative policy of arresting people without probable cause or of arresting them based on warrants that mistakenly identify the subject of the warrant. Nor does plaintiff allege that any of the defendants had a custom or practice permitting such arrests or detentions, or that the failure to select or implement necessary practices constituted a policy or custom for the purposes of *Monell*.

*Id.* at \*4. Unlike the Plaintiff here, the plaintiff in *Catchings* (at least) attempted to plead minimal facts to support his policy claim. But, the court noted that plaintiff failed to allege a specific policy or custom – or even the absence of a policy – and instead referred to various "duties" of the defendants. *Id.* The court found that cursory allegations of duties "cannot stand in the place of an allegation of a municipal policy." *Id.* The court continued,

> Further, even if the court read the complaint as alleging a policy or custom, plaintiff fails to allege any connection between the unspecified policies and the conduct he complains of, such as through actual implied municipal knowledge of the custom or policy and its consequences on various individuals, which is a required element of a *Monell* claim.

*Id.* Finally, in dismissing the municipal-liability claim, the court held the "complaint does not contain even a 'short and plain statement' of a policy or custom, as required to state a *Monell*." *Id.* at \*5. Here, Plaintiff's *Monell* claim suffers from the same defects, and it likewise should be dismissed.[2]

---

[2] The court in *Catchings* also included the following admonishment: "Should plaintiff wish to attempt to file a second amended complaint sufficiently alleging such policies, consistent with his obligations under Fed.R.Civ.P. 11, he will be given one last opportunity to do so." *Id.* at fn 5. Given that Plaintiff is now on his Third Amended Complaint, the City requests that if the *Monell* and Equal Protection claims are not dismissed with prejudice, the Court likewise limit Plaintiff to a final opportunity to amend his complaint.

4

1519136v1

1.      **Plaintiff's Cases Support The City's Request to Dismiss the *Monell* Claims.**

Plaintiff asserts that his allegations are "virtually identical allegations" that have been approved by the Seventh Circuit and other courts.   Plaintiff's assertion is wrong.   Each of Plaintiff's cases is distinguishable from the case at bar because each case included at least some allegations or plain statements that identified either an actual policy, custom or act of an actual policymaker.   Here, Plaintiff's entire *Monell* policy claim rests on the simple conclusion that:

> Defendant City of Naperville acted pursuant to an official policy, custom or decision of an individual with final policy-making authority, when it proximately caused the deprivation of Furstenau's rights.

(Response at 4.)[3]   It is clear that Plaintiff  provided only conclusory allegations and failed to provide "enough facts to state a claim to relief that is plausible on its face." *See, Bell Atlantic Corp.*, 127 S. Ct. at 1964.

B.      **Applicable Laws and Ordinances Establish that Chief Dial is not an Actual Policymaker.**

As noted in the Motion, Section 1-8A-2(2) of the Naperville Code establishes that Chief Dial was required to first get approval from the City Manager to implement any standard

---

[3] *Compare, McCormick v. City of Chicago*, 230 F.3d 319, 324-25 (7th Cir. 2000) (alleging "the City was aware of the discriminatory policy as practiced by Individual Defendants against African-Americans who were injured on the job" and "the City encouraged and condoned acts and omissions of its highest policymaking officers who allowed 'a widespread custom of allowing white police officers, in predominately white districts, to engage in individual acts of discrimination against African-Americans, without fear of vigorous and effective enforcement of City antidiscrimination policies'"); *Flemister v. Cook County*, No. 04 C 1424, 2006 WL 408108 at *2 (alleging that supervisor "failed to provide adequate supervision, having known of the substantial risk of injury" in the location of the sexual assault and the "conditions and practices that accompanied the attack 'have persisted for a number of years prior to the incident' and that the attack resulted from an express Cook County policy or custom or a deliberate act of someone with final policymaking authority"); *Moncivaiz v. DeKalb County*, No 03 C 50226, 2004 WL 539994 at *1 (N.D.Ill. Mar. 12, 2004) (alleging facts that defendants did not promote plaintiff because of her views on abortion and that the county "had a policy of practice of denying freedom of speech, free exercise of religion and equal protection to individuals opposed to abortion"); *McNeal v. Cook County Sheriff's Dept.*, 282 F.Supp.2d 865, 869 (N.D.Ill. 2003) (including facts about a severe beating of plaintiff while a pre-trial detainee at Cook County Jail, alleging that the beating resulted from a county policy or practice and including allegations that Sheriff Sheahan – an actual policymaker – "knew about the beatings and facilitated, approved, condoned, or turned a blind eye to it")

1519136v1

operating procedures and rules and regulations for the conduct and guidance of police department personnel. Therefore, the only way that Chief Dial could possess policymaking authority to bind the City, is if the City Manager delegated this authority – an allegation that is not contained in the Complaint.

Nevertheless, Plaintiff attempts to downplay the significance of the clear language of Section 1-8A-2(2) of the Naperville Code. Plaintiff characterizes this Code provisions – which incidentally is entitled *Authority To Develop Standard Operating Procedures And Rules And Regulations* – as "simply generalized authority concerning police 'personnel.'" (Response at 7.) Plaintiff directs the Court's attention to a Naperville Ordinance which outlines the duties of the Chief of Police. (Response at 6.) Plaintiff maintains that policymaking authority is granted to the Chief because that ordinance states: "[t]he chief shall be responsible for the performance of the policy [sic] department, and all persons who are members of the department shall be subject to his orders." (*Id.* at 7.)

This supposed "common sense" argument is unsustainable because power to supervise does not equate to power to set policy. Indeed, courts in this district have held: "[j]ust because an official has complete authority to *administer* a unit of local government does not mean he has final *policymaking* authority." *Knox v. Metropolitan Water Reclamation District of Greater Chicago*, 2007 WL 1805334 at *3 (N.D.Ill June 20, 2007) (finding Director of Personnel not a policymaker; citing *Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992). Moreover, the Supreme Court has noted that a "federal court would not be justified in assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it." *St. Louis v. Praprotnik*, 485 U.S. 112, 126 108 S.Ct. 915 (1988). Simply put, the fact that Chief Dial is responsible for the performance of the police department does not qualify him as a

1519136v1

policymaker for the City. *See, e.g.*, *Lyttle v. Killackey et al.*, 528 F. Supp. 2d 818, 828 (N.D.Ill. 2007) ("The Seventh Circuit has held that superior officers and supervisors of police officers 'do not qualify as policymakers for the City.'") (citing *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001); *Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992)).

1.    **Plaintiff Misrepresents Seventh Circuit Cases.**

Remarkably, Plaintiff maintains that "[n]o case cited by the City comes close to reaching such a non-sensical conclusion" that Chief Dial lacks policymaking authority. (Response at 8.) This argument misrepresents the holding in *Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992). As noted in the Motion, in *Auriemma*, the Seventh Circuit held that the Chicago City Council, not the Superintendent of Police, is the policymaker for the City. Just as the City of Naperville requests this Court to do here, the Seventh Circuit reviewed state laws and applicable City of Chicago ordinances to determine where policymaking authority resided with respect to the policies of the Chicago Police Department. Thus, contrary to Plaintiff's argument, *Auriemma* is directly on point. In fact, it provides the roadmap to make the conclusion that Chief Dial is not a policymaker for purposes of *Monell* liability.

Additionally, Plaintiff's reference to *McGreal v. Ostrov*, 368 F.3d 657 (7th Cir. 2004), is equally misleading. (Response at 8-9.) Contrary to Plaintiff's argument, *McGreal* did place a "limitation" on *Auriemma* in any manner. In *McGreal*, the Court noted that the police chief of the municipality – unlike in this case – *admitted* to being a policymaker. 368 F.3d at 684-86. The Court noted that the Village of Alsip has its own "policies and ordinances" but the Court did not consider them because, unlike here, they were "not made part of the record." *Id.* at 686. And the Court found that the *McGreal* facts were different from those in *Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992) because in *Auriemma*, the police chief (Superintendent for the Chicago

7

Police Department) "was not the policymaker under the City ordinances, [and] the City could not be held liable for his actions." *McGreal*, 368 F.3d at 686. Here, just like in *Auriemma* and unlike in *McGreal*, the applicable ordinances conclusively reveal that Chief Dial is not a policymaker.

### 2.    Plaintiff's Citations to Other Cases are Unpersuasive.

Plaintiff's string citations to *McGreal v. Ostrov*, 368 F.3d 657, 686 (7th Cir. 2004); *Eversole v. Steele*, 59 F.3d 710, 716 (7th Cir. 1995); and *Zook v. Brown*, 865 F.2d 887, 895 (7th Cir. 1989) actually undercut his argument that he has properly identified Chief Dial as a policymaker. (Response at 5.) In each of these cases, the court reviewed the state statutes and local ordinances to determine whether a defendant was the final policymaker. *See, e.g., McGreal* 368 F.3d at 686 (noting the Village of Alsip has its own "policies and ordinances" but they were not made part of the record); *Eversole v. Steele*, 59 F.3d 710, 716 (7th Cir. 1995) (instructing that "[s]tate or local law will 'always direct a court to some official or body that has the responsibility for making law or setting policy in any giving area of a local government's business.'"); *Zook*, 865 F.2d at 895 (holding Sheriff had final policymaking authority because Commission "authorized Sheriff to reprimand a deputy without filing charges *or otherwise reporting to the Commission*") (emphasis added).[4] Similar to each of these cases, this Court should review the applicable ordinance to determine where the policymaking authority resides.

Plaintiff also cites to *McMillan v. Monroe County*, 520 U.S. 781, 785 (1997) and *DeGenova v. Sheriff of DuPage County*, 209 F.3d 973 (7th Cir. 2000). But once again, neither

---

[4] Plaintiff cited to two cases from district courts outside of the Seventh Circuit, *Johns v. Town of E. Hampton*, 942 F.Supp. 99, 106 (E.D.N.Y. 1996) and *Coleman v. Rance*, No. 96 C 21-D-B, 1997 WL 170316 (N.D.Miss. Mar. 24, 1997). As such, these cases are neither precedential nor persuasive. In any event, those cases are inapposite because the Defendants in both cases, unlike the City here, did *not* move to dismiss the *Monell* claim based on the fact that the defendant police official was not a policymaker under pertinent state statutes and local ordinances.

case buttresses Plaintiff's argument that Chief Dial is a policymaker. Both of these cases looked to applicable state laws for guidance regarding whether a named defendant was an actual policymaker whose actions could speak for the municipality. In fact, in *DeGenova*, the court based its holding that County Sheriffs in Illinois are final policymakers for county jail operations on two reasons. First, "[t]he Illinois Supreme Court has determined that according to State law, the Sheriff's policies for jail operations "are independent of and unalterable by any governing body."" *Id.* at 976 (*citing Moy v. County of Cook*, 159 Ill. 2d 519, 640 N.E.2d 926, 929 (1994)). Second, the Court had previously held that policies concerning jail operations "are solely under the supervision" of the Sheriff. *Id.* (*citing Thompson v. Duke*, 882 F.2d 1180, 1187 (7th Cir. 1989)). None of those circumstances is present here. Namely, the policies and practices of the Naperville Police Department, as administered by Chief Dial, are not "independent of " and, in fact, are alterable by, the City Manager. Consequently, the policies concerning the conduct of police personnel are not "solely under the supervision" of Chief Dial.

In sum, in *Auriemma v. Rice*, 957 F.2d 397 (7th Cir. 1992), the Seventh Circuit held that applicable state statutes and ordinances established that the Superintendent of the Chicago Police Department is not a policymaker for the City of Chicago for *Monell* purposes. Here, a review of the applicable state statutes and ordinances conclusively establishes that Chief Dial likewise is not a policymaker for the City of Naperville for *Monell* purposes.

**C.　Dismissal of Defendant Burchard From this Case Causes Plaintiff's Allegations Against the City for any Alleged Retaliation to Fail.**

Plaintiff's Complaint alleges that the City retaliated against him for his expression of protected speech relating to the filing of the lawsuit. (Response at 9.) Plaintiff attempts to hold the City liable for this alleged retaliation by arguing that, as City Manager, Defendant Burchard's actions against Plaintiff were taken "as a 'final policymaking authority' whose decisions in the

retaliatory campaign against Furstenau are attributable to the City." (*Id.*) Thus, it is through the actions of Defendant Burchard alone, that Plaintiff states he has properly pled a *Monell* claim for retaliation against the City.[5] (*Id.* at 10.)

Plaintiff's identification of Defendant Burchard as the final policy making authority, and therefore the mechanism by which he attempts to hold the City liable for retaliation, is significant because concurrent to the filing of the City's Motion to Dismiss, Defendant Burchard filed a Motion to Dismiss arguing that all claims for any conduct on his part should be dismissed based on various immunities.[6] (See, Dkt # 56.) Because Plaintiff's only allegations against Defendant Burchard are those related to conduct that occurred after the filing of this lawsuit (those related to the alleged retaliation), should this Court dismiss the allegations against Defendant Burchard, any claims Plaintiff has against the City related to any alleged retaliation should also be dismissed because Plaintiff will no longer be able to hold the City liable under *Monell.* Therefore, should the claims against Defendant Burchard be dismissed, the only allegations that will remain against the City will be those pertaining to Plaintiff's allegations relating to Chief Dial as a policymaker – which, as noted above, cannot be sustain.

---

[5]Attached to Plaintiff's Response Brief is Defendant Burchard's Responses to Plaintiff's Requests for Admission. (See Response at Exhibit A.) Attaching the document was improper and it be stricken because a court should not consider documents or allegations extrinsic to the pleadings on a Rule 12(b)(6) motion. *See, General Electric Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir. 1997); *Corner v. Dept. of Labor,* 2006 WL 1877049 at *3 (N.D.Ill. July 5, 2006) (holding court may not consider documents attached in plaintiff's response to a motion to dismiss). If a district court considers matters outside the pleadings, the procedural rules require that "the motion shall be treated as one for summary judgment" under Fed.R.Civ.P. 56. Fed.R.Civ.P. 12(b). When proceeding on such a converted motion, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.* Consideration of outside matter without converting the Rule 12(b)(6) motion into a Rule 56 motion can produce reversible error. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1431 (7th Cir. 1996). The exception to this, of course, is that a district court may take judicial notice of matters of "public record" without converting a motion to dismiss into a motion for summary judgment.

## II.　Plaintiff Failed to Allege and Equal Protection Claim (Count II).

As this Court has pointed out, in order to survive a 12(b)(6) motion to dismiss, a Plaintiff must satisfy two hurdles, the first of which requires a complaint to "describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which the claim rests." *Roth v. Aon Corp.*, No. 04 C 6835, 2008 WL 656069 (N.D. Ill. March 7, 2008). The United States Supreme Court has explained this standard to require a Plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*, 127 S. Ct. at 1964. Plaintiff's equal protection claim fails to meet these requirements. Simply put, Plaintiff's equal protection claim fails because Plaintiff in no way identifies the "similarly situated" group to which he alleges he was treated differently.

In his Response, Plaintiff attempts to cure these deficiencies by citing to several cases he claims support his argument that, in pleading an equal protection claim, a plaintiff is not required to provide any information as to how he was treated differently from others similarly situated. (Response p. 11). This argument is not only contrary to established law, but is also nonsensical. In *Levenstein v. Salafsky*, the Seventh Circuit clearly stated that, in pleading an equal protection claim under the "class of one" theory, a Plaintiff is required to allege that "the government is treating unequally those individuals who are prima facie identical in all relevant respects, and that the cause of the different treatment is a totally illegitimate animus toward the plaintiff by the defendant." *Levenstein v. Salafsky*, 414 F.2d 767, 775-76 (7th Cir. 2005).

Not surprisingly, the cases that Plaintiff cites do not support his arguments. In each of the three cases that Plaintiff cites, there was no issue as to whether the plaintiff had identified the similarly situated group from which he alleged he was treated different. In fact, the cases

---

[6] The City incorporated the entirety of the Individual Defendants' Motion to Dismiss in its Motion to Dismiss. (See, Motion at 7).

Plaintiff cites clearly identify the group to which the plaintiff claimed he was similarly situated. *See Levenstein v. Salafsky*, 164 F.3d 345 (7th Cir. 1998) (plaintiff claiming he was treated different than *other department heads or supervisory employees that had been accused of sexual harassment*); *Olech v. Village of Willowbrook*, 528 U.S. 562 (2000) (plaintiff alleging he was treated different than other similarly situated *property owners*); *Doe v. Bd. of Trustees of the Univ. of Ill.*, 429 F.Supp. 2d 930 (N.D. Ill. 2006) (plaintiff claiming that he was treated differently than other *individuals with learning disabilities*).

In contrast to the cases Plaintiff cites, Plaintiff's Complaint merely states that he was arrested without probable cause and, thus, treated differently from others similarly situated. (Complaint at ¶39-40.) This conclusory statement is insufficient as a means to provide the City notice as to the nature upon which the claim rests. For example, it is unclear if Plaintiff is referring to those similarly situated individuals that have been arrested, or those arrested without probable cause, or those who have been arrested for striking a police officer. Without this basic information, Plaintiff has failed to state an equal protection claim.

Moreover, Plaintiff's attempt to distinguish *Messner v. Calderone*, No. 07 C 0893, 2007 WL 1832116 (N.D.Ill. June 25, 2007) also falls flat. Recognizing his allegations are insufficient, Plaintiff resorts to wordplay. Plaintiff argues that in *Messner*, "the plaintiff simply failed to identify that others were similarly situated and to plead that others similarly situated were treated differently – a circumstance not present here." (Response at fn 6.) This characterization of the holding in *Messner*, while clever, is misleading. Plaintiff would have this Court believe that the complaint in *Messner* was dismissed because the plaintiff did not "identify that others were similarly situated." *Id.* But that was not the case. In dismissing the "class of one" Equal Protection claim, the court stated:

12

Although Messner's Complaint asserts that he was singled out for unequal treatment based on "malignant animosity" the Complaint is devoid of facts that he was treated differently than those similarly situated. First, Messner *has not identified others* that were similarly situated and second he has failed to plead that said individuals were treated differently. Accordingly, Messner's Complaint fails to state an equal protection claim under a class of one theory, and therefore, Defendants' Motion to Dismiss is granted without prejudice.

*Messner v. Calderone*, 2007 WL 1832116 at *3 (emphasis added). It is clear that *Messner's* claim was dismissed because he failed to identify the group to which he was similarly situated, not because he failed to identify that others were similarly situated. Thus, contrary to Plaintiff's interpretation, the circumstances in *Messner* are the exact circumstances present here: (i) Furstenau has not *identified others that were similarly situated*; and (ii) he has failed to plead that said individuals were treated differently. As a result, Count II of the Complaint must be dismissed in its entirety.

**III.    Plaintiff Conceded That All Claims for Punitive Damages Against the City Should be Stricken.**

The City moved to strike Plaintiff's pray for punitive damages against it. Plaintiff conceded that he is barred from recovering punitive damages against the City. (Response at 11.) Consequently, Plaintiff's pray for punitive damages against the City should be stricken.

1519136v1

WHEREFORE, for the reasons stated above and in its Memorandum in Support of its

Motion to Dismiss Plaintiff's Third Amended Complaint, the City of Naperville requests that this

Court enter an Order granting its Motion to Dismiss.


Respectfully submitted,

CITY OF NAPERVILLE


By: /s/  Terrence J. Sheahan
      One of Their Attorneys


Richard T. Sikes, Jr.
Terrence J. Sheahan
Audrey L. Brodrick
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606-6677
(312) 360-6000

*Counsel for Defendant*
*City of Naperville*

Dated:  April 9, 2008
1519136v1