UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD R. FURSTENAU, ) | |
| ) | |
| Plaintiff, ) | Case No.: 07-CV-6143 |
| ) | |
| v. ) | |
| ) | Judge Norgle |
| ) | Magistrate Judge Brown |
| CITY OF NAPERVILLE, a municipal ) | |
| Corporation; MICHAEL HULL, in his ) | |
| individual and official capacity; DAVID ) | JURY TRIAL DEMANDED |
| DIAL, in his official and individual ) | |
| capacity; MICHAEL CROSS, in his ) | |
| individual and official capacity; ) | |
| PETER BURCHARD, in his official and ) | |
| individual capacity; MARGO ELY, ) | |
| in her individual and official capacity, ) | |
| and JOE MATCHETT, in his individual ) | |
| and official capacity. ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS MARGO ELY, PETER BURCHARD, AND JOE MATCHETT'S
REPLY IN SUPPORT OF THEIR RULE 12(b)(6) MOTION TO DISMISS
PLAINTIFF'S THIRD AMENDED COMPLAINT**

**I.   PLAINTIFF'S ALLEGATIONS THAT MOVANTS INVESTIGATED,
SOLICITED, AND DISSEMINATED COMPLAINTS ABOUT HIM
CANNOT SUPPORT HIS FIRST AMENDMENT CLAIM**

Despite his bold declaration that the unconstitutionality of Movants' conduct was established by "dozens of ... cases", the only thing clearly established by Plaintiff's response brief is that not a single authority has ever recognized a First Amendment cause of action under even arguably analogous circumstances. Indeed, the test for determining whether retaliation "adversely affected the Plaintiff's constitutionally protected speech....focuses on "the status of the speaker, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts" *Kelly v. Chambers,* 2007 WL 4293633 *4, *citing Suarez Corp. Indus. v. McGraw,* 202 F.3d

676, 685-86 (4th cir. 2000). In *Kelly,* Judge Aspen applied this test to a First Amendment claim brought by an elected official, and explained that "courts have declined to find that a [defendant's] actions have adversely affected a [plaintiff's] exercise of [her] First Amendment rights where the [defendant's] alleged retaliatory acts were criticism, false accusations, or verbal reprimands." *Id.*

Rather than confront this governing line of authority, Plaintiff instead showers the Court with dozens of clearly inapposite cases brought by public employees against supervisors, or by ordinary citizens and business owners against government regulators. As a result, Plaintiff's heavy reliance on cases such as *Bart v. Telford*, 677 F.2d 622 (7th cir. 1982) and its progeny for the proposition that a campaign of petty harassment can violate the First Amendment, badly misses the mark, as Plaintiff completely ignores his status as a councilman, Movants' status as City staffers, and the relationship among them. Instead, Plaintiff impermissibly focuses solely on the nature of Movants' alleged retaliatory acts.

*Bart* and most of the other cases cited by Plaintiff involved claims brought by public employees against their superiors alleging they abused their power over the employees by punishing them for exercising their First Amendment rights to political expression. *See Bart, supra* (employee repeatedly reprimanded in retaliation for her decision to run for office)[1]; *Pieczynski v. Duffy,* 875 F.2d 1331 (7th cir. 1989)(secretary subjected to campaign of harassment intended to force her to resign and become ill in retaliation for her connection to mayor's political enemy; *Wallace v. Benware,* 67 F.3d 655, 657 (7th Cir. 1995)(deputy sheriff severely

---

[1] While Bart also alleged she was ridiculed for bringing a birthday cake to work, the court described that allegation as having a "certain air of the ridiculous". *Bart,* 677 F.2d at 625.

harassed, including being placed in life threatening predicament, for announcing his intention to run against his boss in the next election;[2] *Mosely v. Board of Educ. of the City of Chicago*, 434 F.3d 527 (7th cir. 2006)(volunteer employee deprived of chairperson duties and removed from school by police for complaining about school's failure to comply with disabilities laws).[3]

Plaintiff's effort to compare his situation to cases involving public employees alleging retaliation against their employers strains credulity. The public employment retaliation cases are premised upon the power imbalance in the employer/employee relationship, and a recognition by the federal courts that public employers are well positioned to intimidate employees into silence through adverse employment decisions, or, more subtly, by making their work environment intolerable, through campaigns of petty harassment. *See Bart*, 677 F.2d at 625, *supra*. Thus, even otherwise incidental forms of retaliation can send a public employee the message that further speaking out may lead to dire employment consequences, which, in that context, can lead a person of ordinary firmness to abandon his constitutionally protected conduct.

---

[2] Although the sheriff's campaign of petty harassment violated his deputy's First Amendment rights, the Seventh Circuit granted the sheriff qualified immunity as the law was not clearly established that sheriffs could not dismiss or demote politically disloyal deputies.

[3] *Accord Rutan v. Republican Party of Illinois*, 497 U.S. 62, 76 (1990) (promotions, transfers, and recalls based on political affiliation violate the First Amendment rights of public employees); *Harder v. Village of Forest Park*, 2007 WL 1673259 (N.D.Ill. 2007) (police officer sued his supervisors for retaliation); *Rossi v. Bower*, 2002 WL 1160151 (N.D.Ill. 2002) (public employer's retaliatory investigation of a subordinate employee can be actionable if initiated to chill employee's First Amendment rights); *Kadetsky v. Egg Harbor Township Board of Education*, 82 F.Supp.2d 327, 337 (D.N.J. 2000) (high school band director alleging retaliation in employment against his supervisors); *Levin v. Harleston*, 966 F.2d 85 (2nd Cir. 1992) (professor sued his employer); *Harder v. Village of Forest Park*, 2007 WL 1673259 (N.D.Ill. 2007) (former police sergeant alleging adverse employment action against police chief and mayor); *Scott v. Flowers,* 910 F.2d 201 (5th Cir. 1990) (justice of the peace, a public employee, allegedly disciplined by his employer for constitutionally protected conduct); *Nowak v. Szwedo*, 704 F.Supp 153 (N.D.Ill. 1989)(retaliatory transfer of an employee by the defendant employer)

This same concern over the ability of government officials to misuse the machinery of government has led the federal courts to freely recognize First Amendment claims on behalf of ordinary citizens and business owners who have alleged that government officials retaliated against them for political or free speech activities. *See, e.g., Garcia v. City of Trenton*, 348 F.3d 726 (8th cir. 2003)( mayor "engaged the machinery of government in order to punish plaintiff for her speaking out" by having her repeatedly ticketed for parking violations); *Johnson v. Collins*, 5 Fed. Appx. 479 ( 7th cir. 2001)( DCFS workers threatened to play "hard ball", twice visited plaintiff's house in the middle of the night, and submitted reports requiring him to repeat counseling class, in retaliation for his complaints about handling of his children's cases)[4]. In such cases, as in the public employment context, the public official defendants were uniquely positioned to wield the power of the state against the ordinary citizen or business owner who made an unpopular view publicly known. Even subtle forms of retaliation against plaintiffs in such instances can chill First Amendment rights by sending the message that any further advocacy for a cause may inspire more onerous official regulation and sanctions.

Unlike the plaintiffs in the above cited cases, Plaintiff does not and cannot allege that his status as an elected councilman places him in a subordinate or beholden position in relation to Movants.[5] To the contrary, Plaintiff's position reflects his enthusiastic entry into the arena of

---

[4] *Accord Abrams v. City of Chicago*, 635 F. Supp. 169 (N.D. Ill. 1986) ( involving a retaliatory sham investigation which caused an ordinary citizen to lose his job); *Cadar v. Bell*, 1989 WL 84311, at 2 (N.D. Ill. 1989) (village trustee's retaliatory campaign against private developer which included selective enforcement of ordinances and persuading federal government to foreclose on plaintiff's properties).

[5] The Naperville City manager, by statute as adopted by city ordinance, is appointed by the city council, and holds no supervisory authority to suspend or remove council members. *See* 65 ILCS 5/5-3-7 (*Municipal manager*; *appointment*; *powers and duties*); City of Naperville

public debate, and cements his position of authority over, rather than subordination to, the employees who are Movants in the instant matter. Plaintiff's status further reinforces expectations that he "have thicker skin than the ordinary citizen" when assessing whether the retaliation he complains of would objectively deter a city councilman of ordinary firmness from exercising his constitutional rights. *Mattox v. City of Forest Park,* 183 F.3d 515, 522 (6th cir. 1999); *see also Hartman v. Register*, 2007 WL 915193, *8 (S.D. Ohio March 26, 2007)(recognizing that "elected officials are supposed to be thick-skinned").

Thus, while Plaintiff would have this Honorable Court evaluate all retaliation claims the same, regardless of the status of the plaintiff, the defendant, and the relationship among the two, the test discussed in *Kelly, supra,* requires the Court to subject an elected official's retaliation claim to more stringent scrutiny than that which is applied to a public employee or ordinary citizen. Accordingly, the Court should consider whether a city councilman of ordinary firmness would abandon a lawsuit alleging police misconduct because city staffers allegedly investigated, solicited, and disseminated employee claims of misconduct concerning him after the suit was filed. To ask the question is to answer it. Plaintiff having sued the City, Movants' alleged efforts to discredit him by investigating, soliciting, and disseminating employee complaints about him[6], while "perhaps an inappropriate and unfortunate occurrence,...[are] not the type of 'adverse action' against which the First Amendment protects." *Mattox v. City of Forest Park,* 183 F.3d

---

Municipal Code, section 1-6A-5(4), attached as Ex. A). Moreover, the City of Naperville Corporation Counsel is appointed by the city council, and also does not have any supervisory authority over the city council. (*See* City of Naperville Municipal Code, section 1-6D, attached as Ex. B).

[6] Movants accept Plaintiff's allegations of retaliation as true solely for purposes of this motion to dismiss, and otherwise vehemently deny the truth of Plaintiff's allegations.

515, 522 (6th cir. 1999). *See also Colson v. Grohman,* 174 F.3d 498, 514 (5th Cir. 1999)(reasoning that city manager and police chief's "retaliatory crusade", which included the institution of a false criminal investigation and recall petition inspired by councilwoman's criticism of police department, "amounted to no more than the sort of steady stream of false accusations and vehement criticism that any politician must expect to endure").

Against that backdrop, the *Kelly* court confronted strikingly similar allegations that a town police chief, the town president, and two members of the town Board of Trustees retaliated against a fellow Board member who publicly criticized the police department by falsely reporting her for obstructing a police officer, initiating an investigation into the allegation of obstruction, and directing plaintiff to respond to the allegations. In granting the defendants' 12(B)(6) motion to dismiss all but the allegations concerning the false police report, Judge Aspen explained that "[p]laintiff is not an ordinary citizen, but rather an elected official of Oakwood Hills...[so that defendants'] retaliatory act of demanding that plaintiff respond to charges of official misconduct was at least of the same magnitude as plaintiff's speech criticizing Oakwood Hills....). *Kelly,* 2007 WL 4293633 at * 4.

Plaintiff's cryptic attempt to distinguish *Kelly* on the grounds that it involved "mere speech" is badly misplaced. (Pl's response brief, p.10). The plaintiff in *Kelly* alleged more than "mere speech" including that defendants initiated an investigation against her and directed that she respond to inquiries. Moreover, Judge Aspen did not focus solely on whether the acts of retaliation were properly characterized as speech or speech plus, but rather, the court considered whether, in light of plaintiff's status as an elected official, the acts of retaliation, when viewed objectively, adversely affected her constitutionally protected speech. *Id. at* *4. Judge Aspen

concluded that only the act of filing a false police report accusing plaintiff of a crime was of a character which would deter an elected councilwoman from exercising her constitutional rights.

In the present matter, Defendants' response to Plaintiff's complaint was faithful to *Kelly* and the above cited authorities. The original police defendants have filed an answer to Plaintiff's claims that, in retaliation for his criticism of the police department, Defendants had him falsely arrested and charged with battery of a police officer. At the pleadings stage, Plaintiff has adequately alleged that, as in *Kelly*, official police action in the form of an arrest and criminal charge may deter even a city councilman of ordinary firmness from continuing to express his views.[7]

However, Plaintiff's effort to dramatically expand the litigation must fail. Accepting Plaintiff's far flung allegations that Movants reacted to Plaintiff's lawsuit against the police Defendants by investigating, soliciting, and disseminating employee complaints about his verbal abuse of them, such allegations are of the same character which Judge Aspen denounced in *Kelly* as insufficient to state a cause of action under the First Amendment.

Moreover, in considering whether the ordinary firmness test is satisfied in this matter, it must be remembered that the speech Plaintiff is contending Movants retaliated against was not his criticism of the police department, but rather, his filing of his lawsuit against the police Defendants. In that regard, it again strains credulity for Plaintiff to suggest that, after deciding to sue the police defendants and the City of Naperville, a councilman of ordinary firmness would be

---

[7] The only two cases Plaintiff cites involving city council members are in accord. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1070 (9th Cir. 2004)(criminal charges actually placed against councilman for embezzlement); *Monteiro v. City of Elizabeth*, 436 F.3d 397 (3rd Cir. 2006)(removal of city councilman by council president and arrest of member on charge of disorderly conduct).

dissuaded from continuing the suit because other city officials reacted negatively to the suit by allegedly persuading city employees to present their complaints of abuse against him, and participating in the dissemination of those complaints.  Indeed, it should not be too much to expect that a councilman who has made the decision to initiate such litigation has the wherewithal and the resolve to stick to his guns when faced with a spate of public criticism.

Finally, Plaintiff's attempt to embroil Defendants in wide ranging discovery by contending that Defendants' motion is premature is a non-starter.  For purposes of this motion to dismiss, Movants are accepting the truth of Plaintiff's allegations, and it is well-established that the Court may apply the law to those facts on this 12(B)(6) motion to dismiss in order to determine, as a matter of law, whether Plaintiff's allegations of retaliation based upon Movants' post-suit conduct state a cause of action. *See Kelly*, 2007 WL 4293633; *Nowak v. Szwedo*, 704 F. Supp. 153 (N.D. Ill. 1989); *Mezibov v. Allen*, 411 F.3d 712 (6th Cir. 2005); *Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23 (1st Cir. 1996).

## II.   DEFENDANTS ELY, BURCHARD AND MATCHETT ARE ENTITLED TO QUALIFIED IMMUNITY FOR HAVING DISSEMINATED ACCUSATIONS AGAINST PLAINTIFF

As described above, despite having "identified more than 30" retaliation cases in his response brief, (Pl's Response, p. 12), Plaintiff has not identified a single authority which would have put Movants on notice that their participation in the solicitation and dissemination of employee complaints concerning Plaintiff's verbal abuse of them was violative of the First Amendment.  Indeed, virtually all of Plaintiff's cases were brought by public employees against superiors, or ordinary citizens and business owners who were at the mercy of the governmental defendant.  In the two cases Plaintiff cited which were brought by elected officials, it was only

the presence of official police action in the form of an arrest or criminal charge which supported a cause of action under the First Amendment. *See Awabdy and Monteiro, supra,* p.6, n.8. Indeed, several cases have made the point that elected officials are justifiably expected to have a "thicker skin" in regards to accusations of misconduct, even when such accusations are borne of a retaliatory motive[8]. Accordingly, as Plaintiff has failed to present a single analogous case concerning a public official's public dissemination of complaints against another public official, Movants are entitled to qualified immunity for the allegations set forth in paragraphs 28 (b), (c), (d), (e), (f), (h), and (j) of paragraph 28, and thus a dismissal of such claims with prejudice.

### III. ELY AND BURCHARD ARE ENTITLED TO ABSOLUTE LEGISLATIVE IMMUNITY REGARDING PLAINTIFF'S CENSURE

Defendants explained in their opening memorandum, pp. 12-17, that Plaintiff's attempt to sue Defendants Ely and Burchard for their involvement in investigating and censuring him are a transparent attempt to avoid the legislative immunity available to the Naperville City Council members who all but unanimously voted to censure Plaintiff. Plaintiff's response does not dispute this conclusion.

Plaintiff does, however, refute Movants' contention that they are likewise entitled to claim legislative immunity for their involvement in the censure proceedings. However, Plaintiff presents no relevant authorities denying legislative immunity for a legislative body's censure of one of its own members, and simply ignores the cases cited by Movants which did grant immunity to such actions.

---

[8] Movants reiterate that the original police defendants have filed an answer to Plaintiff's claim that he was arrested and prosecuted in retaliation against his criticism of the police department.

9

Specifically, Plaintiff simply ignored *Whitener v. McWatters*, 112 F.3d 740, 741-44 (4th Cir. 1997), which expressly held that legislative immunity barred a county board member's civil rights challenge to his censure by the board for making inappropriate comments to two of his fellow board members, because a local legislative body's decision to discipline one of its own is part of the means by which a legislative body ensures its orderly functioning and "institutional integrity". Plaintiff also ignored *Tenney v. Brandhove*, 341 U.S. 367, 377-78, 71 S. Ct. 783 (1951), which held that legislative immunity barred allegations that members of a state senate sub-committee held a hearing "not for a legislative purpose", but in order to "intimidate and silence" a state senator, because "[i]nvestigations, whether by standing or special committees, are an established part of representative government."

Similarly, Plaintiff did not contest Defendants' contention that the immunity which is accorded the legislators themselves is equally applicable to their staffers and assistants because legislative immunity entails a functional approach which focuses on the nature of the duties with which a government official has been entrusted and the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions. *Rateree v. Rockett*, 852 F.2d 946, 950, (7th Cir. 1988)(citing *Reed v. Village of Shorewood*, 704 F.2d 943, 952-53 (7th Cir. 1983)). In other words, the court must look to the function an individual performs rather than his location within a particular branch of government. *Id*., at 951; *Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 28-29 (1st Cir. 1996).

Once again, rather than confront the controlling authorities, Plaintiff responds with cites to two hornbook law cases for the uncontested general propositions that (a) legislative immunity applies only to quintessential legislative acts (*United States v. Brewster*, 408 U.S. 501 (1972),

10

and (b) that it is defendants' burden to establish their entitlement to the immunity (*Contreras v. City of Chicago*, 920 F. Supp. 1370 (N.D. Ill. 1996). Moreover, none of the cases Plaintiff relies upon to defeat legislative immunity even discuss legislative immunity (*See* Pltf.'s Response, p.13), nor do they concern alleged activities of a city council and those who are directed by the council to perform acts related to a censure of a council member. Thus, all are inapplicable to the present matter[9].

As Defendants have set forth in their opening memo, at pp.12-17, Defendants Ely and Burchard are entitled to absolute legislative immunity for all acts complained of which are necessarily intertwined with the City Council's decision to investigate and censure Plaintiff for his abuse of city staff employees.

### IV. PLAINTIFF HAS NOT ALLEGED ANY INJURY FROM THE CREATION OF A THREATENING ATMOSPHERE TO LOCAL BUSINESS PEOPLE.

As Defendants have asserted in their opening memorandum, Plaintiff's standing to sue requires an allegation of an actual or threatened injury to himself that is likely to be redressed by a favorable decision. *See Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S. Ct. 1917, 48 L.Ed.2d 450 (1976). One generally cannot sue, other than in a representative capacity, to enforce a right that belongs to someone else. *Leftkovitz v. Wagner*, 395 F.3d 773, 776 (7th Cir. 2005). Mere indignation does not suffice to establish standing. *See Baaske v. City of Rolling Meadows*, 191 F. Supp. 2d 1009, 1014 (N.D. Ill. 2002).

---

[9] *See Benkowski v. Wasilewski*, 2007 WL 2670265 (M.D. Pa 2007) (plaintiffs allegedly subjected to false criminal investigation and threat of prosecution); *Miller v. Town of Hull, Mass.*, 878 F.2d 523 (1st Cir. 1989) (plaintiffs removed from positions on town committee by town board which utilized improper procedures for the removal); *Bondar v. D'Amato*, 2007 WL 1700114 (E.D. Wis 2007), (local business owners alleged retaliation against city councilman; legislative immunity was not discussed).

Plaintiff misrepresents his Complaint's allegations to stave off dismissal of his complaint. Although Plaintiff asserts on page 14 of his response that "[t]hreats, though directed towards others, can contribute to a campaign of harassment towards plaintiff...", and cites to *Belt v. Marion Comm. Sch. Dist.,* 2006 WL 839434, * 5 (S.D. Ill. 2006), Plaintiff does not make this claim in his third amended complaint. Instead, in paragraph 28, subparagraph (k), Plaintiff alleges that Defendants Ely and Burchard "created an atmosphere such that local business persons who support Plaintiff would be "outed", with the consequence that their business matters would receive less favorable city council attention". This allegation is a far cry from the allegation in *Belt*, where plaintiff alleged that an actual threat was made to plaintiff's husband. Accordingly, Plaintiff 's claim arising from Movants' alleged creation of an allegedly threatening atmosphere for local business people should be dismissed for lack of standing.

V. **COUNTS I-IV AGAINST OFFICER MATCHETT FOR "ENCOURAGING" OFFICER HULL TO FILE A CRIMINAL COMPLAINT AGAINST PLAINTIFF SHOULD BE DISMISSED**

Plaintiff does not allege or contend that Officer Matchett either was the complaining officer against him for the January 1, 2006 incident, nor that Officer Matchett was responsible for any part of the subsequent investigation as a police officer. Moreover, Plaintiff's response exposes his desire to have Officer Matchett remain in this case without having alleged that Matchett even provided any information to assist in the investigation. Such allegation, however, is the key prerequisite for a third party to be held liable for false arrest, as set forth by Plaintiff's own cases of *Randall v. Lemke*, 726 N.E.2d 183 (2nd Dist. 2000), and *Carey v. K-Way, Inc.*, 728 N.E.2d 743 (1st Dist., 2000).

Similarly, Plaintiff's citation to *Olinger v. Doe*, 163 F. Supp.2d 988 (N.D. Ill. 2001), is also inapposite to the claims against Matchett, and in fact directly supports Defendants' argument. The court in *Olinger* found that a defendant, who is alleged to have given false information to police, can be held liable for false arrest if that defendant goes beyond simply providing information leading to the arrest and instead actually requests and obtains the arrest. *Id.*, at 990. The Court explained that whether a false arrest claim against a private individual can survive a motion to dismiss depends upon that defendant's role in procuring an arrest ***where it is initially alleged that the defendant had provided information to the police*** to support probable cause for the arrest.

In the present matter, Plaintiff ignores this important prerequisite found in each of the cases he cites, and instead simply focuses on one partial statement, taken out of context in the cases cited, to argue that a person is liable for false arrest if he "otherwise instigated, assisted, or by some other means directed, countenanced or encouraged the arrest." Plaintiff, however, has not alleged that Matchett was a witness or otherwise provided any information to support Officer Hull's criminal complaint against Plaintiff. Plaintiff has simply identified Matchett as an individual who provided "encouragement" for Hull to present a criminal complaint against Plaintiff. Plaintiff's unreasonably broad reading of the case law he presents would conceivably entrap anyone who happens to talk with a potential criminal complainant and encourages the complainant to follow through with a criminal complaint. To its extreme, Plaintiff's interpretation would allow him to sue Hull's family and any friends whom Hull happened to discuss the January 1, 2006 incident with and whom Hull may identify as having provided similar encouragement to him. This simply is not the state of the law. Defendant Matchett is

thus entitled to dismissal of Plaintiff's claims contained in Counts I through IV of Plaintiff's Third Amended Complaint, with prejudice.

## CONCLUSION

For the foregoing reasons, and as more fully set forth in Defendants' opening memorandum of law, Defendants Ely, Burchard, and Matchett respectfully request that this Honorable Court enter an Order dismissing them from Plaintiff's Third Amended Complaint, with prejudice.

Date:  April 14, 2008

| | |
|---|---|
| s/James G. Sotos | s/Terry A. Ekl |
| James G. Sotos, One of the attorneys for Defendants | Terry A. Ekl, One of the attorneys for Defendants |
| JAMES G. SOTOS & ASSOCIATES, LTD. | EKL WILLIAMS PLLC |
| 550 East Devon, Suite 150 | Two Arboretum Lakes |
| Itasca, Illinois 60143 | 901 Warrenville Road, Suite 175 |
| (630) 735-3300 | Lisle, IL 60532 |
| (630) 773-0980 (fax) | (630) 654-0045 |
| jsotos@jsotoslaw.com | (630) 654-0150 |
| | tekl@eklwilliams.com |

## CERTIFICATE OF SERVICE

  The undersigned having first been duly sworn under oath, states that he electronically filed a complete copy of the foregoing **Defendants Margo Ely, Peter Burchard, and Joe Matchett's Reply in Support of Their Rule 12(b)(6) Motion to Dismiss Plaintiff's Third Amended Complaint** with the Clerk of the Court on **April 14, 2008,** using the CM/ECF system, which will send notification of such filing to the following counsel of record: see attached Service List.

            s/James G. Sotos
            James G. Sotos, Attorney No. 06191975
            One of the Attorneys for Defendants
            JAMES G. SOTOS & ASSOCIATES, LTD.
            550 East Devon, Suite 150
            Itasca, Illinois 60143
            630-735-3300
            630-773-0980 (fax)
            jsotos@jsotoslaw.com

# SERVICE LIST

**RICHARD FURSTENAU V. CITY OF NAPERVILLE, ET AL.
CASE NO.: 07-CV-6143**

| **ATTORNEYS FOR PLAINTIFF:** | **ATTORNEYS FOR DEFENDANTS:** |
|---|---|
| **John A. Sopuch III**<br>The Collins Law Firm<br>1770 N. Park Street, Suite 200<br>Naperville, IL 60563<br>(630) 527-1595<br>E-mail: jsopuch@collinslaw.com | **Richard Thomas Sikes, Jr.**<br>Freeborn & Peters<br>311 South Wacker Drive, Suite 300<br>Chicago, IL 60606<br>(312) 360-6000<br>E-mail: rsikes@freebornpeters.com |
| **Edward John Manzke**<br>The Collins Law Firm<br>1770 N. Park Street, Suite 200<br>Naperville, IL 60563<br>(630) 527-1595<br>E-mail: ejmanzke@collinslaw.com | **Terrence J. Sheahan**<br>Freeborn & Peters<br>311 South Wacker Drive, Suite 300<br>Chicago, IL 60606<br>(312) 360-6000<br>E-mail: tsheahan@freebornpeters.com |
| **Shawn Michael Collins**<br>The Collins Law Firm<br>1770 N. Park Street, Suite 200<br>Naperville, IL 60563<br>(630) 527-1595<br>E-mail: smc@collinslaw.com | **Terry A. Ekl and Vincent C. Mancini**<br>Ekl Williams PLLC<br>Two Arboretum Lakes<br>901 Warrenville Road, Suite 175<br>Lisle, IL 60532<br>(630) 654-0045<br>E-mail: tekl@eklwilliams.com |
| **Aaron W. Rapier**<br>The Collins Law Firm<br>177 N. Park Street, Suite 200<br>Naperville, IL 60563<br>(630) 527-1595<br>E-Mail: arapier@collinslaw.com | **Audrey Lane Brodick**<br>Freeborn & Peters<br>311 South Wacker Drive, Suite 300<br>Chicago, IL 60606<br>(312) 360-6000<br>E-mail: abrodrick@freebornpeters.com |