

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD R. FURSTENAU, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 6143 |
| v. ) | |
| ) | |
| CITY OF NAPERVILLE, a municipal ) | Honorable Charles R. Norgle |
| corporation; MICHAEL HULL, in his ) | |
| individual and official capacity; DAVID ) | |
| DIAL, in his individual and official ) | |
| capacity; MICHAEL CROSS, in his ) | |
| individual and official capacity; PETER ) | |
| BUCHARD, in his individual and ) | |
| official capacity; MARGO L. ELY, ) | |
| in her individual and official capacity; ) | |
| and JOE MATCHETT, in his individual ) | |
| and official capacity, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is the Defendant City of Naperville's Motion to Dismiss Plaintiff Richard R. Furstenau's ("Plaintiff") Third Amended Complaint, which alleges generally that the City of Naperville and several municipal actors engaged in a scheme to subject him to a false arrest and retaliate against him for taking part in various protected speech and activities. For the following reasons, the motion is granted with prejudice.

### I. BACKGROUND

#### A. FACTS

The City of Naperville ("City" or "Naperville") is a municipal corporation located approximately thirty miles west of Chicago. Naperville is home to approximately 137,000

residents. Plaintiff serves on Naperville's city council and has done so since 1999. Naperville's Municipal Code describes the city council as the City's "governing body," which is comprised of the mayor and eight elected officials. See Naperville Municipal Code § 1-5-1. The council serves as Naperville's legislative arm. The code provides that the city council shall, among other things, "select and appoint a city manager as the chief administrative officer of the city" and shall "adopt, amend, and repeal ordinances as allowed by statute." See id. § 1.1, 1.2.

In addition to his work in politics, Plaintiff is a self-proclaimed outspoken member of the community. According to the complaint, many of his statements and opinions targeted the Naperville Police Department. For instance, on many occasions he accused the City's police officers of abusing the department's overtime policy. He also criticized the officers' "double-dipping" practices, in which officers would allegedly retire from the job, take a pension and then immediately return to work so that they would receive both a salary and a pension. He opposed the methods used by the police department in handling cases of police misconduct and criticized the department's use of taser guns, its position on the City's seat belt laws and, as alleged, the department's position with regard to "the City's towing contract." Inferentially, some of these statements are made during city council public meetings, when there is a free-flowing discussion on issues of policy and public concern. Other statements could have been made, as alleged, abroad in Naperville. The City and its officers, according to Plaintiff, disapproved of his criticisms.

In 2005 the Plaintiff declared his candidacy for the office of Illinois State Senator. Thus, in light of the alleged risk that his opinions would reach a larger audience, Plaintiff asserts that the City and various Naperville police officers concocted a scheme to investigate him as though he had committed a crime, to eventually arrest him without probable cause and to prosecute him

without a reasonable basis to do so. In line with this conspiracy, Plaintiff alleges that on January 18, 2006 the City, acting through its police officers, arrested him and accused him of randomly striking a police officer in downtown Naperville. Plaintiff denies that he struck anyone, but nevertheless he alleges that the City and its officers conducted a staged investigation of the incident, ignored evidence that proved Plaintiff's innocence and kept only enough evidence to justify Plaintiff's false arrest. The incident on January 18, 2006 is the only discreet act of which Plaintiff complains.

Defendant David Dial ("Chief Dial"), Naperville's Chief of Police, allegedly directed and encouraged Plaintiff's arrest and thereafter insisted that prosecutors bring charges against him. The Plaintiff does not identify the prosecutors involved, nor does he name them as parties to this suit. Plaintiff cites to the City of Naperville's Municipal Code Section 1-8A-2 to support the allegation that Chief Dial is the City's final policymaking authority with respect to the department's sham investigation and false arrest. In May 2007 Plaintiff was acquitted[1] of all charges, which again involved an allegation by a police officer that the Plaintiff struck the uniformed officer, in the open, while on a public street in downtown Naperville. Thereafter Plaintiff demanded an investigation of the conspiratorial nature of the public incident and that anyone connected with the matter be disciplined.

As alleged, between June and November 2007 Plaintiff requested that the officers involved in his investigation and arrest be reprimanded and that the department issue to Plaintiff an apology for its actions and a reimbursement of $129,500.00. When the City took no action,

---

[1] The complaint specifically alleges an acquittal, see Compl. ¶ 21, although "[e]vidence of acquittal in a criminal action is generally irrelevant and inadmissible in a civil case involving the same incident" because "it constitutes a negative sort of conclusion lodged in a finding of failure of the prosecution to sustain the burden of proof beyond a reasonable doubt." Estate of Christopher A. Moreland v. Dieter, 395 F.3d 747, 755 (7th Cir. 2005) (affirming summary judgment on § 1983 claims against the sheriff of St. Joseph County and others).

3

the Plaintiff filed this lawsuit, held a press conference to announce the filing of this lawsuit and otherwise criticized the officers' and City's conduct with respect to the alleged conspiracy.

In response to Plaintiff's actions, Plaintiff alleges that the City and others took retaliatory steps to intimidate, threaten, punish and discredit Plaintiff. These actions, among others, included: participating in meetings of "public importance" while excluding Plaintiff; investigating Plaintiff's personal and official conduct, hoping that the investigation would produce disparaging information; searching police records for complaints against Plaintiff with the intent to publicly disseminate them; making false accusations that Plaintiff was using his position on Naperville's City Council for personal gain; and taking steps to recall Plaintiff from public office. According to the complaint, the City undertook these actions maliciously and in bad faith, so that it could deprive Plaintiff of his First Amendment rights to speak on matters of public significance.

### B. PROCEDURAL HISTORY

Plaintiff originally filed his complaint in this Court on October 31, 2007, which he amended on two occasions. Count I of the Third Amended Complaint – the operative complaint thus far – alleges a violation of 42 U.S.C. § 1983, which is supported by the Defendants' arrest and detention of Plaintiff without probable cause and in violation of his Fourth Amendment rights. Count II alleges a separate § 1983 claim for Defendants' alleged violation of the Equal Protection Clause of the Fourteenth Amendment. For this Plaintiff alleges that his investigation and arrest illustrated that the Defendants, acting under color of state law, treated him differently from others similarly situated. Count III is also brought pursuant to § 1983 and alleges that the Defendants violated Plaintiff's First Amendment rights when they allegedly fabricated charges against him in an effort to curb his exercise of protected speech. Count IV is a pendant state-law

claim for malicious prosecution. On March 4, 2008 the City moved to dismiss Counts I through III of Plaintiff's Third Amended Complaint. The motion is fully briefed and currently before the Court.

## II. DISCUSSION

### A. STANDARD OF REVIEW

#### 1. *Motion to Dismiss*

As always, we take the allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff for purposes of determining whether it states a claim for relief under Rule 12(b)(6). See, e.g., Sprint Spectrum L.P. v. City of Carmel, Ind., 361 F.3d 998, 1001 (7th Cir. 2004). When reviewing a motion to dismiss under Rule 12(b)(6), the court merely looks at the sufficiency of the complaint, Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 508 (2002); Johnson v. Rivera, 272 F.3d 519, 520-21 (7th Cir. 2001), it does not decide whether the plaintiff has a winning claim. See McCormick v. City of Chi., 230 F.3d 319, 323-26 (7th Cir. 2000) (citing Leatherman v. Tarrant County, 507 U.S. 163 (1993)). Rule 8(a) requires that a complaint contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). This short plain statement, however, must be enough to give the defendant fair notice of what the claim is and the grounds upon which it rests. Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614, 618 (7th Cir. 2007); see Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007). The complaint must contain sufficient allegations based on more than speculation to state a claim to relief that is plausible on its face. E.E.O.C. v. Concentra Health Serv., Inc., 496 F.3d 773, 776 (7th Cir. 2007).

### 2. Section 1983 Violations

To prove a violation of 42 U.S.C. § 1983, Plaintiff must show that the Defendants "deprived him of a right secured by the Constitution or laws of the United States," and that the Defendants "acted under color of state law." Lekas v. Briley, 405 F.3d 602, 606 (7th Cir. 2005). To state a § 1983 claim against a municipality, a plaintiff must show that the deprivation of his constitutional rights was caused by some official custom or policy of the municipality. Monell v. Dep't of Social Services, 436 U.S. 658, 690-91 (1978). In other words, governmental entities cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy. Grieveson v. Anderson, 538 F.3d 763, 771 (7th Cir. 2008). This rule distinguishes the municipality's acts from its employees' acts, and thereby makes clear that municipal liability is limited to action for which the municipality is actually responsible. Estate of Sims ex rel. Sims v. County of Bureau, 506 F.3d 509, 515 (7th Cir. 2007).

Moreover, there must be a causal connection between the municipal policy and plaintiff's injuries, as it is well-established that there can be no municipal liability based on an official policy under Monell if the policy did not result in a violation of plaintiff's constitutional rights. King ex rel. King v. E. St. Louis Sch. Dist. 189, 496 F.3d 812, 817 (7th Cir. 2007) (citing Windle v. City of Marion, Indiana, 321 F.3d 658, 663 (7th Cir. 2003)). In the Seventh Circuit, to allege municipal liability under § 1983, a plaintiff must allege: (1) the defendant had an express policy that, when enforced, causes a constitutional deprivation; (2) the defendant had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority.

6

McCormick v. City of Chicago, 230 F.3d 319, 323-24 (7th Cir. 2000 (citing McTigue v. City of Chicago, 60 F.3d 381, 382 (7th cir. 1995)). There is no heightened pleading standard for § 1983 claims. Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 167 (1993).

### B. MUNICIPAL LIABILITY

In support of the motion to dismiss, the City first argues that Plaintiff failed to allege that the constitutional deprivations he suffered resulted from any express policy of the City, which warrants dismissal because Plaintiff did not provide the City with sufficient notice of the grounds upon which his § 1983 claims rest. Plaintiff, in response, merely asserts that he has no obligation to "allege any more than he has." In essence, Plaintiff maintains that his bare allegation regarding the existence of an unstated policy is enough to survive a Rule 12(b)(6) motion and that, in fact, it is unnecessary for § 1983 plaintiffs to plead either an express policy, custom or final policymaking authority when seeking to hold a municipality liable for a constitutional violation. The Plaintiff, however, is mistaken.

The Court agrees with the City that although Plaintiff should not be held to a heightened pleading standard, he must plead enough facts to state a claim that is plausible on its face. Bell Atlantic, 127 S.Ct. at 1964. For a § 1983 claim to be plausible, the policy to which Plaintiff refers in support of his claim must be the driving force behind the alleged constitutional violations. Sims, 506 F.3d at 514. In this light, to properly allege a § 1983 violation on behalf of the City, the Plaintiff must put the City on notice of the policy it invoked when it violated his constitutional rights. According to the City, this is precisely what Plaintiff failed to do.

Indeed, Plaintiff alleged only that some unstated policy exists and otherwise failed to allege that the City set into a motion an affirmative policy that ultimately caused his constitutional injuries. For example, Plaintiff states in support of Counts I through III that:

7

> "Defendant City of Naperville acted pursuant to an official policy, custom, or decision of an individual with final policy-making authority, and proximately caused the deprivation of [Plaintiff's Constitutional] rights."

See Compl. ¶¶ 36, 44, 53. Aside from this general allegation, Plaintiff neither alleges that the City has an affirmative policy to arrest individuals without probable cause, nor does he allege that the City has an affirmative policy to treat others differently than the Plaintiff in order to suppress his constitutionally protected statements and opinions. Plaintiff merely alleges that some supposed, unstated policy exists, and nothing more. According to the complaint, there is no express policy or widespread practice under which the Defendants acted, and thus the City and this Court are left to contemplate the scope and nature of Plaintiff's unspecified policy. Without a policy, there is no way of knowing what exactly caused Plaintiff's constitutional deprivation. See Oklahoma City v. Tuttle, 471 U.S. 808, 824-25 n.8 (1985) (requiring "affirmative link" between municipal policy and constitutional violation); see also Polk County v. Dodson, 454 U.S. 312, 326 (1981) (holding that municipal policy must be "moving force" behind constitutional deprivation); Holmes v. Sheahan, 930 F.2d 1196, 1199 (7th Cir. 1991) (citing the above cases and affirming that to maintain a § 1983 claim a plaintiff "must demonstrate that the [municipality's] official policy or custom was the cause of his constitutional injury."). Such a bare and conclusory allegation is not enough to survive a Rule 12(b)(6) motion that seeks to dismiss a complaint against a municipality. Accordingly, Plaintiff must proceed under one of the remaining two prongs for municipal liability.

The Plaintiff does not argue that a widespread practice or custom exists as to the City, and thus proceeds under the third prong for municipal liability. In support, Plaintiff asserts that he identified in the complaint two individuals with final policymaking authority – Chief Dial and City Manager Burchard ("Burchard") – who ordered the officers to undertake the alleged sham

8

investigation and false arrest. Thus, at this point in the proceedings, the Court must determine whether these allegations state a plausible claim for municipal liability given the operative language of the City's Municipal Code, which Plaintiff cites in support of his theory that Chief Dial and Burchard are final policymakers. The Court finds that they do not.

In its motion, the City emphasizes that it operates under "the council-manager form of government." By this it means that the city council, of which Plaintiff is a member, is the City's governing body that holds final policymaking authority for the City of Naperville. And while the City has the power to delegate its authority, it did not delegate policymaking authority to Chief Dial. This is confirmed, says the City, in Section 1-8A-2(2) of the Municipal Code, which states:

> The chief of police shall develop standard operating procedures and establish rules and regulations for the conduct and guidance of police department personnel as he deems advisable; such procedures and rules, when approved by the city manager, shall be binding on such personnel.

Naperville Municipal Code at 1-8A-2(2). This language is significant. According to this portion of the Municipal Code, there are two layers of authority with respect to the development of the police department's rules and regulations. Under a literal reading, Chief Dial develops procedures and establishes rules, and once the City Manager approves of those procedures and rules, only then do they become binding on City personnel. So much is clear. The buck does not stop with Chief Dial. Rather, this language confirms that Chief Dial is an agent of the City that administers, supervises and takes action according to the operating procedures of the Naperville police department. This power, as it were, does not make Chief Dial an agent with final policymaking authority for the City. Chief Dial's day-to-day decisions do not, as a matter of course, govern the decisions that he or others will make in the future, and thus cannot be said to serve as the City's policy. Chief Dial is an agent who manages the police department in a manner consistent with the City's policies; he does not, on the other hand, make those policies.

9

See St. Louis v. Praprotnik, 485 U.S. 112, 130 (1988) (noting that an agent with the authority to make a final decision "is equally consistent with a presumption that the subordinates are faithfully attempting to comply with the policies that are supposed to guide them."); Fiorenzo v. Nolan, 965 F.2d 348, 350-51 (7th Cir. 1992) (affirming that police chief was not a policymaker, since "a municipality is not liable merely because the official who inflicted the alleged constitutional injury had the *discretion* to act on its behalf") [emphasis supplied]. This realization is fatal to the Plaintiff's claim, and a closer look at the Seventh Circuit's decision in Auriemma v. Rice confirms this point.

In Auriemma, the Seventh Circuit decided what it meant to be a municipal policymaker under Monell and its progeny. 957 F.2d 397, 399 (7th Cir. 1992). There the complaint alleged municipal liability against the City of Chicago because of certain hiring decisions made by the Superintendent of the Police Department. In determining whether the Superintendent served as the City's policymaker, the appellate court observed that a plaintiff must lose "[u]nless an entirely executive decision establishes municipal policy because it is final" and that Monell should not "be sabotaged by calling the chief bureaucrat who signs off on a particular action the city's 'policymaker' for that action." Auriemma, 957 F.2d at 400. In making these observations, the appellate court sought to confirm the long-standing tenet that a unit of municipal government may be held liable under § 1983 only for its own policies, not for the improper acts of its agents and employees. Nisenbaum v. Milwaukee County, 333 F.3d 804, 808 (7th Cir. 2003) (citing Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978)). With this in mind, the appellate court affirmed the district court's dismissal of plaintiff's complaint against the City of Chicago, finding that the Superintendent had only the authority to act consistent with city ordinances, and because the allegations stated that the Superintendent violated (as opposed to

implemented) the policy of the City of Chicago, plaintiffs' own complaint defeated their claim. Auriemma, 957 F.2d at 401. This decision is controlling.

The City correctly states that pursuant to Auriemma Chief Dial is not a policymaker for the City. Instead, Plaintiff asserts that he was an agent for the City and went beyond what was expected of him, by orchestrating a sham investigation and false arrest of the Plaintiff, and by acting outside the policies that Naperville's city council set forth. Plaintiff conflates the authority of a decision-maker with that of a final policymaker, which is insufficient to state a claim against a municipality under § 1983. Through these allegations, Plaintiff failed to state a plausible action, Knox v. Metro. Water Reclamation Dist. of Greater Chi., No. 06 C 1158, 2007 WL 1805334, at *3 (N.D. Ill. June 20, 2007) ("Just because an official has complete authority to *administer* a unit of local government does not mean he has final *policymaking* authority.") (citing Auriemma, 957 F.2d at 401), and, in the end, defeated his own Monell claims against the City of Naperville.

As an alternative to Chief Dial, Plaintiff asserts that he identified Naperville's City Manager, Burchard, as the City's final policymaking authority. Burchard's involvement with the Plaintiff is outlined in Count III of the complaint – Plaintiff's retaliation claim – in which Plaintiff alleges that Burchard and others undertook various actions to harass and discredit Plaintiff in retaliation for his expressing what he calls "protected speech." But these allegations fare no better.

Burchard, even as City Manager, is not the final policymaking authority for the City. Naperville's Municipal Code, section 1-6A-5, describes the City Manager as "the chief administrative officer of the City" who is responsible for the "proper administration of all affairs of the City." Within these confines, Burchard is simply an administrative *decision*-maker for the

11

City, who executes the policies established by the city council. This limited, decision-making authority does not somehow catapult Burchard to the status of *policy*maker for the City and its relevant departments. See Rache v. Village of Beecher, 336 F.3d 588, 601 (7th Cir. 2003) ("Generally, a person holding only executive power does not have policymaking authority for purposes of § 1983; rather, the policymaking authority in the city structure will be the city council, or [] the Board of Trustees.") (citing Auriemma, 957 F.2d at 399-400); Gernetzke v. Kenosha Unified Sch. Dist. No. 1, 274 F.3d 464, 469 (7th Cir. 2001) ("An executive official who rather than making policy merely implements legislative policy acts merely as a delegate to the legislature, and his act is therefore not the act of the municipality itself for purposes of liability under section 1983."); see also Mendoza v. Chi. Park Dist., No. 00 C 2825, 2002 WL 31155078, at *4 (N.D. Ill. Sept. 26, 2002) (denying municipal liability where defendants possessed only authority to make decisions, not to make binding policy).

Burchard does not serve in a legislative capacity and, like Chief Dial, his day-to-day decisions do not have the force of law. Burchard, like other decision-makers, must answer to the city council and its elected officials, which happen to include the Plaintiff. By harassing and discrediting the Plaintiff, as alleged, Burchard operated independently of and in contravention to the City's policies, unless harassing elected officials is the City's official policy, which Plaintiff obviously does not allege. Burchard's conduct alone strips him of any final policymaking authority. Again, he is only a decision-maker. See Killinger v. Johnson, 389 F.3d 765, 772 (7th Cir. 2004) (finding that municipal liability fails because the plaintiff did not identify any local law giving the chief or mayor the authority to adopt rules, but only to act on the city's behalf); Gernetzke, 274 F.3d at 469 (holding that "cases limit municipal liability under section 1983 to situations in which the official who commits the alleged violation of plaintiff's rights has

authority that is final in the special sense that there is no higher authority."); Lopez v. Shines, No. 93 C 1243, 1993 WL 437450, at *2 (N.D. Ill. Oct. 27, 1993) ("While an executive official granted final decision making authority by state or local law may be a "policymaker," [citation omitted], the key inquiry is whether the executive official has the larger authority to establish rules versus the authority merely to make final decisions consistent with rules established by the legislature."). Accordingly, because Plaintiff fails to sufficiently allege that an official policy of the City caused his constitutional injuries, municipal liability is unavailable under § 1983. Counts I, II and III must be dismissed against the City.

## III. CONCLUSION

For the reasons stated above, Defendant City of Naperville's Motion to Dismiss Counts I, II and III of Plaintiff Richard R. Furstenau's Third Amended Complaint is granted, with prejudice.

IT IS SO ORDERED.

ENTER:

_____
CHARLES R. NORGLE, Judge
United States District Court

DATED: December 23, 2008